RONALD A. McINTIRE (State Bar No. 127407)
**PERKINS COIE LLP**
1620 26th Street, Sixth Floor
Santa Monica, California 90404
Tel.: (310) 788-9900 / Fax: (310) 788-3399
Email: RMcIntire@perkinscoie.com

JOHN D. DILLOW (State Bar No. 50403)
BRUCE D. CAMPBELL (Admitted *Pro Hac Vice*)
ALLISON KENDRICK (Application for *Pro Hac Vice* Admission Pending)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101
Tel.: (206) 359-8000 / Fax: (206) 359-9000
Email: JDillow@perkinscoie.com
Email: BCampbell@perkinscoie.com
Email: AKendrick@perkinscoie.com

Attorneys for Defendant THE BOEING COMPANY

FILED
CLERK, U.S. DISTRICT COURT
FEB 2 4 2005
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAIN GAMBRA, individually, and as personal representative of the Estate of STEPHANIE GAMBRA, deceased; MADELEINE GAMBRA,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL LEASE FINANCE CORPORATION, a California corporation; THE BOEING COMPANY, an Illinois corporation; HONEYWELL INTERNATIONAL, INC., a Delaware corporation,<br><br>Defendants. | CASE NO. CV 04 10129 CAS (AJWx)<br><br>This Document Relates to: *See* List of Affected Cases attached to Joint Motion<br><br>**NOTICE OF JOINT MOTION AND JOINT MOTION OF DEFENDANTS THE BOEING COMPANY, INTERNATIONAL LEASE FINANCE CORPORATION, AND HONEYWELL INTERNATIONAL INC. TO DISMISS ON THE GROUNDS OF FORUM NON CONVENIENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   April 25, 2005  Time: 10:00 a.m.<br>Crtrm:  5<br>Judge:  Hon. Christina A. Snyder |

DOCKETED ON CM

022405/1321[SL050530.297] 01038-4522

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 25, 2005, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California 90012, defendants The Boeing Company, International Lease Finance Corporation, and Honeywell International Inc. will, and hereby do, move the Court for an order dismissing plaintiffs' actions on forum non conveniens grounds (the "Motion"). This Motion relates to the 55 cases identified on the List of Affected Cases that is attached hereto as Exhibit A.

The Motion is brought on the ground that this Court is an inconvenient forum for the trial of plaintiffs' claims against Boeing, ILFC, and Honeywell. France is an available and adequate alternative forum, and the private- and public-interest factors favor dismissal. The Motion will be based on:

(1)     This Notice of Motion and Motion and the attached Memorandum of Points and Authorities;

(2)     The Declarations of Allison Kendrick, Don G. Rushing, Julie I. Sackman, Richard Breuhaus, Karl Pfitzer, Professor Ahmed Kesmat El Geddawy, and Professor Philippe Delebecque, and all exhibits attached to each declaration; and

(3)     The pleadings and papers on file in this action, and such other and further evidence and argument as may be permitted at the hearing on the Motion.

This Motion is made as a result of, and following, a conference of counsel and the Court at the status hearing on January 10, 2005. This conference satisfies the requirements of Local Rule 7-3.

DATED:  February 24, 2005.

PERKINS COIE LLP

By _____

RONALD A. McINTIRE
Attorneys for Defendant
THE BOEING COMPANY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MORRISON & FOERSTER LLP**

By _for_ _____
DON G. RUSHING
Attorneys for Defendant
HONEYWELL INTERNATIONAL INC.

**LORD BISSEL & BROOK LLP**

By _for_ _____
GARY W. WESTERBERG
Attorneys for Defendant
INTERNATIONAL LEASE FINANCE
CORPORATION

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

I. INTRODUCTION AND SUMMARY OF ARGUMENT ...............................1

II. STATEMENT OF FACTS ...................................................................................3

    A.    The Accident and Egyptian Accident Investigation. .......................3

    B.    The U.S. Litigation. ..................................................................................5

    C.    Civil and Criminal Proceedings in Bobigny, France. .....................6

III. ARGUMENT ........................................................................................................8

    A.    France Is an Available and Adequate Alternative Forum. ..............9

        1.    France Is an Available Alternative Forum. ........................ 10

        2.    France Is an Adequate Alternative Forum.......................... 11

    B.    The Private- and Public-Interest Factors Favor Dismissal. .......... 12

        1.    The Private-Interest Factors Clearly Favor Dismissal. ....... 12

            a)    A French Court Has the Best Access to Evidence... 13

            b)    Critical Witnesses Are Beyond the Reach of
                  Compulsory Process. ................................................... 16

            c)    Allowing Plaintiffs to Split Their Cause of Action
                  and Sue Defendants in the United States While
                  Suing Flash Airlines in France Would Be
                  Prejudicial and Wasteful. .......................................... 17

        2.    The Public-Interest Factors Clearly Favor Dismissal. ....... 20

            a)    France Has the Greatest Interest in the Outcome of
                  This Controversy; the United States' Interest Is
                  Minimal................................................................................ 20

            b)    There Is No Reason to Burden a California Court
                  and a California Jury with Deciding Litigation that
                  Has Virtually No Connection to California. ............ 23

c) This Court Need Not Become Embroiled in the Complexities of Choice-of-Law and the Application of Foreign Law. ....................................................... 24

IV. CONCLUSION.......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d 749 (N.D. Cal. 2004) ............................................................... 11, 19

*Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir. 1993) ........... 9, 21

*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041 (N.D. Cal. 1993) .......................................................... 21

*Carney v. Singapore Airlines*, 940 F. Supp. 1496 (D. Ariz. 1996) .................. 17

*Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983) .................................... 2, 9

*Chhawchharia v. Boeing Co.*, 657 F. Supp. 1157 (S.D.N.Y. 1987) ........... 13, 21

*Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446 (9th Cir. 1990) .................................................................................. passim

*Creative Tech., Ltd. v. Aztech Sys. Pte.*, 61 F.3d 696 (9th Cir. 1995) .... 9, 10, 11

*Dahl v. United Techs. Corp.*, 632 F.2d 1027 (3d Cir. 1980) ............................ 17

*Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117 (S.D.N.Y. 1992) ........... 25

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088 (9th Cir. 1998) ................................................................................. 19, 21, 24

*Grodinsky v. Fairchild Indus., Inc.*, 507 F. Supp. 1245 (D. Md. 1981) ........... 22

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ....................................... passim

*In re Air Crash at Taipei, Taiwan, on Oct. 31, 2000*, No. MDL 01-1394 GAF (RCX), 2004 WL 1234131 (C.D. Cal. Feb. 6, 2004), *appeal filed*, No. 04-55787 (9th Cir.) ..................................................... passim

*In re Air Crash Disaster Near Bombay, India on Jan. 1, 1978*, 531 F. Supp. 1175 (W.D. Wash. 1982) ...................................................... 17, 24, 25

*In re Air Crash Off Long Island, N.Y., on July 17, 1996*, 65 F. Supp. 2d 207 (S.D.N.Y. 1999) ...................................................................... 10

*In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176 (C.D. Cal. 2004), *appeal filed*, No. 04-56434 (9th Cir.) .............. passim

*In re Disaster at Riyadh Airport, Saudi Arabia on Aug. 19, 1980*, 540 F. Supp. 1141 (D.D.C. 1982) ........................................................ 13

*In re Korean Air Lines Disaster*, 117 F.3d 1477 (D.C. Cir. 1997), *aff'd*, 524 U.S. 116 (1998) ................................................................. 25

*Jennings v. Boeing Co.*, 660 F. Supp. 796 (E.D. Pa. 1987) ............................. 25

*Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514 (6th Cir. 1986) .............. 9

*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir. 1991)................................................................. 11, 18, 24

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001)..................... passim

*Macedo v. Boeing Co.*, 693 F.2d 683 (7th Cir. 1982) ..................................... 23

*Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424 (11th Cir. 1996)................... 9

*Miskow v. Boeing Co.*, 664 F.2d 205 (9th Cir. 1981) ...................................... 2

*Nai-Chao v. Boeing Co.*, 555 F. Supp. 9 (N.D. Cal. 1982), *aff'd sub nom. Cheng v. Boeing Co.*, 708 F.2d 1406, (9th Cir. 1983) .......................... 20

*Nolan v. Boeing Co.*, 762 F. Supp. 680 (E.D. La. 1989), *aff'd*, 919 F.2d 1058 (5th Cir. 1990) ......................................................... 14, 20

*Pain v. United Techs. Corp.*, 637 F.2d 775 (D.C. Cir. 1980) ........... 9, 17, 19, 23

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ...................................... passim

*Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140 (S.D.N.Y. 2004) ................ 21

*Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279 (11th Cir. 2001) ........... 9, 20

*Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817 (9th Cir. 1995)................................................................................... 7

*Tannis v. Concordia-Maritime A.B.*, No. 95 Civ. 3089 (CSH), 1997 WL 189049 (S.D.N.Y. Apr. 17, 1997)......................................... 24

*Torreblanca de Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993).................... 9

*Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139 (E.D. Tex. 1992), *aff'd*, 11 F.3d 55 (5th Cir. 1993) ........................................ 16

*Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243 (5th Cir. 1983) ................. 10

*Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646 (S.D. Tex. 2003) ........................................................................9

*Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996) ................................8

**Rules**

Fed. R. Civ. P. 45(c)(3)(A)(ii) ........................................................... 16

**Statutes**

46 U.S.C. app. § 764 ...................................................................... 25

Death on the High Seas Act, 46 U.S.C. app. §§ 761-767 ("DOHSA") ...... 24, 25

**Treaties and Other International Agreements**

Article 1382, French Civil Code ....................................................... 12

Article 1384(1), French Civil Code.................................................... 12

Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in* 49 U.S.C. § 40105 (note) (1997), as amended by the Protocol done at The Hague on Sept. 28, 1955, and by Montreal Protocol Nos. 1-2, and 4, signed at Montreal on September 25, 1975 ........................................ 7, 8, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants The Boeing Company, International Lease Finance Corporation ("ILFC"), and Honeywell International Inc. (hereafter collectively "Defendants") move this Court for an order dismissing 55 wrongful death actions on the grounds of forum non conveniens. France is the appropriate forum to resolve these claims, which arise from the January 3, 2004 crash of Flash Airlines Flight 604 en route from Sharm el-Sheikh, Egypt, to Paris, France, with a stopover in Cairo, Egypt. Flight 604 was a charter flight carrying 135 passengers and 13 Flash crew and other personnel as part of tour packages marketed to French tourists by French travel agencies. The overwhelming majority of people bringing claims related to the accident are French: 143 of the 148 plaintiffs here are French residents, as were 118 of the 120 decedents for whom claims are brought.

French courts are already fully engaged in determining fault for the accident. A French court is overseeing a criminal investigation into the accident's cause. Even more importantly, almost 500 claimants—including 138 of the 148 plaintiffs here—initiated civil proceedings in the same French court against Flash Airlines and its insurer.[1]

This civil action in France will be massive. Nearly 500 claimants collectively seek more than €200 million (euros) in damages, alleging that the Flash flight crew committed willful misconduct in causing the accident. While plaintiffs are barred under the Warsaw Convention from asserting their claims against Flash Airlines in the United States, their claims against Defendants can be joined in a French action. Plaintiffs opted instead to sue Defendants in the United States, alleging that the

_____

[1] On February 22, 2005, pursuant to court order, the summons in the French civil proceeding lapsed due to a technical problem associated with the timeliness of service. The French proceedings will be reinitiated when the summons is refiled.

accident was caused by a defect or malfunction in the aircraft.

Now, through their strategic venue choices, plaintiffs will ask courts on two continents to engage in duplicative fact-finding to determine the accident's cause, resulting liability, and the quantum of each plaintiff's damages. Duplicative proceedings such as these will be inefficient, expensive, and burdensome for the parties and the court systems. They could also lead to inconsistent results. Moreover, Flash's absence from the U.S. proceeding is prejudicial and will preclude a complete adjudication of the potentially responsible parties' relative degrees of fault. This is exactly what the doctrine of forum non conveniens is intended to prevent, as the Ninth Circuit has held under nearly identical facts. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1140 (9th Cir. 2001). Here, the convenience of the parties and the courts require that all of the plaintiffs' claims arising from the loss of Flight 604 be determined *once*, in France, where all parties and claims can be joined in one efficient proceeding.

This case fits squarely within the uninterrupted line of U.S. Supreme Court and Ninth Circuit precedent that affirms dismissal of cases arising from foreign aviation accidents brought by foreign plaintiffs in the U.S. against U.S. product manufacturers. In those cases, as here, the foreign contacts overwhelmed in significance the fact that the product was designed, manufactured, and sold in the United States. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981); *Lueck*, 236 F.3d at 1140; *Cheng v. Boeing Co.*, 708 F.2d 1406, 1409 (9th Cir. 1983); *Miskow v. Boeing Co.*, 664 F.2d 205, 208 (9th Cir. 1981). Recognizing this authority, The Honorable Margaret Morrow and The Honorable Gary Feess of this district recently issued forum non conveniens dismissal orders in multiple, consolidated cases brought by foreign plaintiffs against Boeing as a result of foreign aviation accidents. *See In re Air Crash Over Taiwan Straits on May 25, 2002 ("Taiwan Straits")*, 331 F. Supp. 2d 1176, 1213-14 (C.D. Cal. 2004), *appeal filed*, No. 04-56434 (9th Cir.); *In re Air Crash at Taipei, Taiwan, on Oct. 31, 2000 ("Taipei")*,

No. MDL 01-1394 GAF (RCX), 2004 WL 1234131, at *7 (C.D. Cal. Feb. 6, 2004), *appeal filed*, No. 04-55787 (9th Cir.). The same result is warranted here.

As shown below, France is an adequate alternative forum in which to adjudicate plaintiffs' claims. Plaintiffs' actions in initiating massive litigation in France confirms this fact. Further, the applicable private- and public-interest factors weigh heavily in favor of dismissal. Moreover, it would be far more convenient and less prejudicial to the court systems, the parties, and the witnesses for plaintiffs to pursue their claims against all parties from whom they seek recovery in a single forum. To facilitate this process, Defendants will agree, as conditions of dismissal, to (1) consent to a French court's jurisdiction in actions refiled by these plaintiffs, (2) toll any statute of limitations that might apply to such refiled claims for 120 days after forum non conveniens dismissal by this Court, (3) make available in actions refiled by these plaintiffs in the courts of France any evidence or witnesses in their possession, custody, or control in the United States that the French court may deem relevant, and (4) pay any final, post-appeal judgment awarded against them by a French court in such refiled actions. Decl. of Allison Kendrick in Support of Defendants' Motion to Dismiss ("Kendrick") ¶ 8; Decl. of Don G. Rushing in Support of Defendants' Motion to Dismiss ("Rushing") ¶ 2; Decl. of Julie I. Sackman in Support of Motion to Dismiss ("Sackman") ¶ 6.

## II. STATEMENT OF FACTS

**A.     The Accident and Egyptian Accident Investigation.**

Shortly after takeoff on January 3, 2004, Flash Airlines Flight 604 crashed in the Red Sea off the coast of Egypt. Decl. of Richard Breuhaus in Support of Joint Motion to Dismiss ("Breuhaus") ¶ 2. The accident aircraft was a Boeing 737-300 equipped with some Honeywell-manufactured components. *Gambra* Complaint ¶ 16. Boeing sold the accident aircraft to ILFC in 1992. Breuhaus ¶ 7(h). ILFC leased the aircraft to Flash in 2001. Sackman ¶ 2.

Flight 604 was part of low-cost tour packages organized and offered by

French travel agents to French tourists.  *See* Kendrick Exh. A at 3; Prof. Philippe Delebecque's Decl. in Support of a Motion to Dismiss on the Basis of the Forum Non Conveniens Theory ("Delebecque") ¶ 2.  The tour location, Sharm el-Sheikh, is a resort on the Red Sea popular with French tourists.  All 148 persons on the aircraft perished.  Breuhaus ¶ 2.  Almost every one of the 135 passengers was a French citizen and resident.  Breuhaus ¶ 4 (134 passengers were French); *Gambra* Complaint ¶ 10 (majority of 135 passengers onboard were citizens of France); Kendrick Exh. A at 3 (133 French tourists on Flight 604).[2]  Approximately 13 Flash crew and other personnel were also aboard the aircraft.  *See* Breuhaus ¶ 4; *Gambra* Complaint ¶ 10.

At the time of the accident, Flash Airlines was a charter airline licensed by Egyptian civil aviation authorities with its headquarters and base of maintenance operations in Cairo.  *Id.* ¶ 3; Sackman ¶ 3; *see Gambra* Complaint ¶ 10.  Flash had only two aircraft in its operating fleet and generally provided charter air services to fly tourists between points in Europe or the Middle East and Egypt.  Sackman ¶ 3.  Flash Airlines' records concerning operations, training of flight crews, and governmental oversight that are relevant to the question of whether Flash or its flight crew was negligent, caused the accident, or (as plaintiffs have claimed in France) failed to respond properly to recover the aircraft after an initial upset are located in Egypt.  Breuhaus ¶ 7(c) & (d); Sackman ¶ 5(B).  Witnesses with relevant knowledge also are located there.  Breuhaus ¶ 7(e).

Flash flew in French airspace.  *See* Breuhaus ¶ 3; Decl. of Karl Pfitzer in Support of Defendants' Joint Motion to Dismiss ("Pfitzer") ¶ 3.  It was not authorized to, and consequently did not, fly to the United States.  Sackman ¶ 3.

---

[2] Plaintiffs allege that there were four U.S. citizens on the aircraft.  Press reports indicate that these decedents were members of a family that lived in France and had dual U.S.-French citizenship.  Claims have been brought in France on behalf of these decedents.  Kendrick ¶ 5(f) & Exh. A at 58-59, 108-09.

Although Flash leased the accident aircraft from defendant ILFC in 2001, ILFC did not oversee Flash's day-to-day operations, maintenance of the aircraft, or the training and assignment of Flash's flight crews. *See id.*

Because the accident occurred off the Egyptian coast, that country's Ministry of Civil Aviation ("MCA") is leading the accident investigation in accordance with Annex 13 of the Convention on International Civil Aviation. Breuhaus ¶ 4. All but one aircraft component from the limited amount of wreckage that has been recovered is in the possession of the MCA in Egypt. *Id.* ¶ 7(a). As provided by Annex 13, accredited representatives from the French Bureau d'Enquêtes et d'Analyses ("BEA") and the U.S. National Transportation Safety Board ("NTSB") are also participating in this accident investigation. *Id.* ¶ 4. Boeing and Honeywell serve as technical advisors to the U.S. accredited representative and provide technical assistance to the investigation when requested. *Id.*; Pfitzer ¶ 4. Boeing and Honeywell serve at the pleasure of the MCA and the NTSB. Breuhaus ¶¶ 4, 6; Pfitzer ¶¶ 4-5. Although most of the MCA investigative activities have occurred in Egypt, certain discrete activities have occurred in France and the United States. *See* Breuhaus ¶¶ 4-7; Pfitzer ¶¶ 4-6.

**B.     The U.S. Litigation.**

A set of 55 multi-plaintiff, multi-defendant lawsuits arising from the loss of Flight 604 are now pending in the Central District of California. No plaintiff, decedent, or beneficiary that is now the subject of a suit in the United States is or was an American citizen or resident. Kendrick ¶ 5(i). For the Court's convenience, a brief review of the parties and claims is provided here. In these lawsuits, 148 plaintiffs sue on behalf of themselves, 120 decedents' estates, and/or 138 individuals who plaintiffs say are decedents' "potential heirs and beneficiaries." Kendrick ¶ 5(a). 143 of the 148 plaintiffs are French residents (142 are also French

citizens). *Id.* ¶ 5(c). 118 of the 120 decedents were French residents. *Id.*[3] At least 116 of the 138 "potential heirs and beneficiaries" appear to be citizens or residents of France. *Id.* ¶ 5(e). All of the plaintiffs are represented by the same counsel, and all have asserted virtually identical pleadings against Defendants. *Id.* ¶ 5(b). Plaintiffs assert product-liability, negligence, failure-to-warn, and breach-of-warranty claims against all three defendants. *Id.*; *Gambra* Complaint ¶¶ 19-37. ILFC's documents and witnesses relating to its lease to Flash Airlines are located at its principal place of business in Los Angeles, but the relevant documents and witnesses in Boeing's or Honeywell's possession or control are located outside of California. Breuhaus ¶ 7(g); Pfitzer ¶ 6(f); Sackman ¶ 5(A).

This litigation is just beginning. Boeing and Honeywell filed Answers in late February 2005. Each Answer asserts that the acts of third parties (including Flash Airlines) proximately caused or contributed to cause the accident. *See, e.g.*, Boeing's Answer in *Gambra* ¶¶ 40-44. ILFC's answers are due in early March.

## C.    Civil and Criminal Proceedings in Bobigny, France.

Legal proceedings related to the loss of Flight 604 have already been initiated in France. *See* Delebecque ¶¶ 15, 21. Nearly 500 French claimants, including 138 of the 148 plaintiffs here, initiated a civil action against Flash Airlines and its insurer by lodging a summons with the court in Bobigny, France (the "French Civil Action"). *Id.* ¶ 15; Kendrick ¶ 4 & Exh. A at 39-79. Defendants understand that this summons lapsed due to a procedural defect in service and that the French Civil Action will be restarted when the summons is refiled. These claimants have at their disposal an international legal "task force"; their lead lawyer in the French Civil

---

[3] The story behind the numbers shows an even more complete connection to France. Three of the non-French plaintiffs bring suit on behalf of seven decedents who resided in France. Kendrick ¶ 5(g) & Exh. C. Claims have already been brought on behalf of these same decedents in France. *Id.* & Exh. A at 58-59, 108-09. Further, one of the decedents who reportedly resided in Egypt is survived by French relatives and appears to have been of French origin. *Id.* ¶ 5(h) & Exh. D.

Action is Maître Michel Pitron.  Delebecque ¶ 15.  Maître Pitron is a partner in Gide Loyrette Nouel, one of France's largest and most renowned law firms.  *Id.*

The claimants did not bring claims against Boeing, Honeywell, or ILFC in the French Civil Action, although no procedural proscription prevented them from doing so.  *Id.* ¶¶ 22-23, 28.  The Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, Oct. 12, 1929 ("Warsaw Convention"),[4] as amended by various protocols entered into in The Hague in 1955 and in Montreal, Canada in 1975, governs Flash's liability for the loss of Flight 604.  *Id.* ¶ 16.  The Warsaw Convention mandates that jurisdiction over Flash is proper only in France or Egypt.  *Id.* ¶ 17.[5]  The claimants cannot sue Flash in the United States.  *Id.* ¶¶ 17, 33.

The differing legal positions taken by claimants in the U.S. actions and the French Civil Action are telling.  In the U.S. actions, plaintiffs assert generally that the accident was caused by a defect in the aircraft or its components.  By contrast, in France, the claimants alleged that the Flash Airlines flight crew engaged in willful misconduct and caused the accident when its members "sat back as passive observers and let the airplane bank and nosedive, only taking recovery action when the airplane was already irrecoverable."  *Id.* ¶ 19; Kendrick Exh. A at 8.  To avoid

---

[4] 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in* 49 U.S.C. § 40105 (note).

[5] Article 28 of the Warsaw Convention requires that suits against an air carrier arising out of international air transportation be brought in one of only four locations:  (1) the carrier's domicile; (2) the carrier's principal place of business; (3) the forum in which the carrier has a place of business through which the contract has been made; or (4) the place of destination.  Delebecque ¶ 17.  Here, Flash's domicile and principal place of business is Egypt.  The tickets (or contracts) were apparently made in France.  *See id.*  The destination was France.  *Id.*  Accordingly, plaintiffs' suits against Flash can be brought only in Egypt or France, not the United States.  *Id.*; *see Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818-19 (9th Cir. 1995).

liability in France, Flash must prove that it took all necessary measures to avoid the damage or that such measures were impossible. *Id.* ¶ 18. As part of this showing, Flash must demonstrate the accident's cause; if it does not, it will be found liable. *Id.*

The claimants have sought to recover their full compensatory damages from Flash. *Id.* ¶ 19 (describing claimants' arguments to avoid the liability limits contained in the Warsaw Convention), ¶ 33. Because the Convention is silent on certain issues related to damages, the French court will look to national law for guidance on the types of recoverable damages. *Id.* ¶ 20.[6] Claimants rely on French damages law and allege unquantified economic losses and more than €200 million in non-economic losses as a result of the accident. *Id.* ¶¶ 20, 15. The French court will thus have to evaluate the accident's cause, liability therefor, and compensatory damages recoverable in the French Civil Action. *See id.* ¶¶ 15-20, 33.

The loss of Flight 604 is the subject of a second French legal proceeding. The Bobigny public prosecutor initiated a criminal investigation to determine the accident's cause. *Id.* ¶ 21. The judge supervising the investigation has broad authority to collect relevant evidence. *Id.* ¶¶ 21, 34. For instance, he has visited the accident scene, met with Egyptian investigators, and issued requests for technical information to Boeing, the MCA, and French air transport police. *Id.* ¶ 21; Breuhaus ¶ 8.

## III. ARGUMENT

When foreign plaintiffs sue in the United States for damages sustained in foreign aviation accidents, their claims are routinely dismissed on forum non conveniens grounds. The seminal U.S. Supreme Court forum non conveniens decision involves just these facts. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235

---

[6] *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217 (1996) (describing interplay between the Warsaw Convention and national damages law).

(1981).  The Ninth Circuit and other federal courts have consistently applied the doctrine to dismiss foreign plaintiffs' claims arising from foreign aviation accidents.  *See, e.g., supra* pp. 2-3 (collecting Ninth Circuit and Central District of California cases); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1284 (11th Cir. 2001); *Torreblanca de Aguilar v. Boeing Co.*, 11 F.3d 55, 58-59 (5th Cir. 1993); *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 836-37 (5th Cir. 1993); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516-18 (6th Cir. 1986); *Pain v. United Techs. Corp.*, 637 F.2d 775, 788-99 (D.C. Cir. 1980); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 651-52 (S.D. Tex. 2003).  These 55 cases at issue here present nearly identical facts to those in *Piper Aircraft* and its progeny, and thus they, too, should be dismissed.

     In conducting the forum non conveniens analysis, courts initially determine whether an available and adequate alternative forum exists.  *Lueck*, 236 F.3d at 1143; *Creative Tech., Ltd. v. Aztech Sys. Pte.*, 61 F.3d 696, 701 (9th Cir. 1995).  If such a forum exists, the next step is to weigh relevant private-interest factors affecting the convenience of the litigants and public-interest factors affecting the convenience of the forum.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-12 (1947); *Cheng*, 708 F.2d at 1411.  In this case, plaintiffs' forum choice does not weigh heavily in the Court's analysis because plaintiffs do not reside in the United States and because they chose to file other claims in France.  The purpose of the forum non conveniens inquiry is to ensure that the trial is convenient, but a foreign plaintiff's decision to file suit far from his or her home forum cannot be presumed to be based on convenience and therefore receives less deference.  *Piper Aircraft*, 454 U.S. at 256; *Creative Tech.*, 61 F.3d at 703.

## A.    France Is an Available and Adequate Alternative Forum.

     Federal courts have consistently recognized that France is an available and adequate alternative forum for aircrash litigation.  *See, e.g., Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996).; *In re Air Crash Off Long*

*Island, N.Y., on July 17, 1996*, 65 F. Supp. 2d 207, 211-15 (S.D.N.Y. 1999).[7]  In this case, France is an available forum because defendants have agreed to submit to the jurisdiction of the French courts if these cases are refiled in France.  France is an adequate forum because it provides a remedy for plaintiffs' claimed wrong.  Plaintiffs themselves have already demonstrated the adequacy of the French forum by initiating proceedings against Flash there.

### 1.   France Is an Available Alternative Forum.

An alternative forum is available when the defendant is amenable to service of process in that jurisdiction.  *Lueck*, 236 F.3d at 1143; *Creative Tech.*, 61 F.3d at 701.  A defendant's consent to the jurisdiction of another forum satisfies this requirement.  *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446, 1450 (9th Cir. 1990) (holding that the Philippines was an available forum because defendant agreed to submit to its jurisdiction); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1246 (5th Cir. 1983) (holding that when such consent is given, "there 'exists' an alternative forum in which the defendant 'is' amenable to process").  Here, defendants are willing to submit, as a condition to forum non conveniens dismissal of these actions, to the jurisdiction of a French court in actions refiled by plaintiffs there and to toll any statute of limitations that might apply to such refiled actions for 120 days after dismissal by this Court.  *E.g.,* Kendrick ¶ 8.

French law permits defendants to consent to the jurisdiction of a particular French court either through an express agreement or implicitly by participating in the proceedings without objection.  Delebecque ¶¶ 22, 28-29.  When a defendant

---

[7] The district court in *In re Air Crash Off Long Island* found France to be an adequate and available alternative forum for air crash litigation against Boeing, but nevertheless declined to dismiss because that accident occurred within U.S. territory, involved a U.S. carrier and predominantly U.S. passengers, and was investigated by the United States government.  65 F. Supp. 2d at 217.

voluntarily appears before a French court and participates in the proceedings, that tribunal has no power to decline to exercise its jurisdiction where, as here, no other country's courts have exclusive jurisdiction over the case. *Id.* This is true regardless of whether the action was instituted by a French citizen or a citizen of another country. *Id.* ¶¶ 22, 28. Accordingly, under settled Ninth Circuit precedent, France is an available alternative forum. *See Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991); *Contact Lumber*, 918 F.2d at 1450; *Taipei*, 2004 WL 1234131, at *5.[8]

### 2.    France Is an Adequate Alternative Forum.

France is also an adequate forum for litigation of plaintiffs' claims. Having already initiated the French Civil Action against Flash Airlines, plaintiffs cannot argue that France is an inadequate forum for litigation arising out of the loss of Flight 604. *See Taipei*, 2004 WL 1234131, at *5 ("[M]ost of these plaintiffs have already filed suit against Singapore Airlines in Singapore and Canada, which reveals that such fora are adequate and available."); *Am. Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F. Supp. 2d 749, 766 (N.D. Cal. 2004) (holding that an English forum that had to decide cargo-damage claims pending before it that were similar to the U.S. action and involved the rights and liabilities of the same parties was an adequate forum).

A foreign forum is inadequate only in those rare circumstances when "'the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.'" *Creative Tech.*, 61 F.3d at 701 (quoting *Piper Aircraft*, 454 U.S. at 254); *Lueck*, 236 F.3d at 1143. This would be true, for example, "where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 254 n.22. This is not the case in France. The claimants

---

[8] Even without Defendants' consent, there are other grounds that would support French jurisdiction over plaintiffs' claims against Defendants. *See* Delebecque ¶¶ 23, 28.

in France have sought recovery of damages against Flash pursuant to French law principles. Delebecque ¶¶ 20, 33. French law provides a remedy for negligence and product liability claims against Defendants under Article 1382 or 1384(1) of the French Civil Code. *Id.* ¶¶ 25, 31. Such actions may be brought to recover losses suffered by the decedent as well as certain losses that the plaintiffs themselves suffered as "indirect victims." *Id.* ¶¶ 26, 31. Recoverable losses of the "indirect victims" include economic and non-economic losses. *Id.*

France is, moreover, an adequate forum because the fundamental principles of French civil proceedings would insure the fairness, honesty, and thoroughness of the legal debate. *Id.* ¶¶ 4-8, 32 (describing litigation process in the French courts). Plaintiffs can bring their claims in a French *Tribunal de Grande Instance* ("TGI"), which is the trial-level court. *Id.* ¶¶ 4, 23(iii), 24, 28. They can appeal the TGI's decision to an intermediate appellate court and, ultimately, to the highest court in France, the *Cour de Cassation. Id.* ¶ 5; *see also id.* ¶ 32.

Because France provides plaintiffs with a forum in which to litigate the subject matter of this dispute and a remedy for the alleged wrong, it is an available and adequate alternative forum.

**B.    The Private- and Public-Interest Factors Favor Dismissal.**

The second step in the forum non conveniens analysis requires the Court to balance both the private interests of the litigants and the public interests of the forum. *Piper Aircraft*, 454 U.S. at 257. Both the private and public interests weigh heavily in favor of dismissal.

**1.    The Private-Interest Factors Clearly Favor Dismissal.**

The private interest factors to be considered relate primarily to the convenience of the litigants and include the "ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and all other problems that interfere with an

1    expeditious trial." *Contact Lumber*, 918 F.2d at 1451.

2              a)      **A French Court Has the Best Access to Evidence.**

3         Although relevant evidence is located in France, Egypt, and the United

4    States, only a French court will likely have access to all of it.

5         ***Damages Evidence in France.*** France is the home of the overwhelming

6    majority of plaintiffs, beneficiaries, and decedents in this case. *See* Kendrick ¶ 5(c),

7    (e). As a result, almost all of the damages evidence and witnesses are located there.

8    This includes, for example, documents necessary to establish financial loss (e.g., tax

9    returns, pay stubs, employment records, and documents relating to funeral,

10   mortuary, or burial expenses), as well as witnesses with knowledge regarding the

11   health and life expectancy of the decedents and the intangible losses suffered by

12   their families. This weighs heavily in favor of dismissal. *Chhawchharia v. Boeing*

13   *Co.*, 657 F. Supp. 1157, 1161 (S.D.N.Y. 1987) ("[I]t is well-established that ease of

14   access to proof of loss in the jurisdiction where decedent was domiciled weighs

15   heavily in favor of dismissal."); *In re Disaster at Riyadh Airport, Saudi Arabia on*

16   *Aug. 19, 1980*, 540 F. Supp. 1141, 1147 (D.D.C. 1982) (stating that it is "beyond

17   dispute" that "vast majority" of damages evidence is in "domicile of each foreign

18   decedent" and thus dismissal to foreign forum would "facilitate the ease of access to

19   [this] evidence").

20        Indeed, Judge Morrow of this district recently recognized that, in an air crash

21   case involving more than 100 decedents, the voluminous amount of damages

22   material in the foreign forum, ***standing alone***, makes the ***overall*** ease of access to

23   evidence greater in the foreign forum:

24                   While the parties dispute the location of the relevant
25              liability proof, there is no question that damages proof is
                overwhelmingly located in Taiwan. Given the number of
26              decedents, the volume of this evidence is substantial. Even if
                there were significant liability evidence both in the United States
27              and Taiwan, therefore, a Taiwan forum would offer greater ease
28

1  of access to sources of proof overall.

2  *Taiwan Straits*, 331 F. Supp. 2d at 1196.  This conclusion is equally applicable here

3  where claims are brought on behalf of 120 decedents, all but two of whom resided

4  in France.

5    **Liability Evidence in Egypt.**  As outlined above, critical witnesses and

6  documents regarding Flash Airlines, civilian aviation oversight, and the MCA

7  investigation are located in Egypt.  *Supra* pp. 4-5.  This evidence would be

8  accessible by a French court, but likely not by a U.S. court.  Specifically, because

9  Flash Airlines will be a party to a French proceeding, it will be subject to the

10  French court's jurisdiction and obligated to produce its evidence there.  Delebecque

11  ¶¶ 9, 32; *see also Lueck*, 236 F.3d at 1147 (evidence within non-party air carrier's

12  possession available in lawsuit in foreign forum where it has been sued).  In this

13  situation, the French court can compel testimonial and documentary evidence from

14  Flash Airlines at the parties' request or on its own volition.  Delebecque ¶¶ 9-10.

15  Failure to comply with the French court's orders could subject Flash Airlines to

16  financial penalties or adverse presumptions.  *Id.* ¶¶ 9-10, 32.  Neither this Court nor

17  the defendants can similarly access Flash's evidence in the United States because

18  Flash is neither a party to this proceeding nor does it conduct flight operations in

19  the United States.  *See Nolan v. Boeing Co.*, 762 F. Supp. 680, 683 (E.D. La. 1989)

20  ("Since most witnesses and evidence are in the United Kingdom, they are beyond

21  the compulsory process of this Court."), *aff'd*, 919 F.2d 1058 (5th Cir. 1990).

22    Egyptian evidence that is not within Flash's control (for example, evidence

23  regarding the MCA's investigation, the wreckage, the flight recorders, the Egyptian

24  civil aviation authority's oversight of Flash Airlines, and the flight crew's

25  background) also is more accessible in France than in the United States.  Although

26  a U.S. court could issue an international letter rogatory asking the Egyptian court

27  for judicial assistance, it is unlikely that an Egyptian court would enforce it.  Decl.

28  of Prof. Ahmed Kesmat El Geddawy in Support of Motion to Dismiss on the

Grounds of Forum Non Conveniens Cases Arising From the Loss of Flash Airlines Flight 604 ("Geddawy") ¶ C(4).  In contrast, Egypt and France are parties to a bilateral convention that allows French courts to issue international Letters of Request seeking the collection of documentary, physical, and testimonial evidence located in Egypt.  *Id.* ¶¶ C(5)-(9); Delebecque ¶¶ 12-13, 32.  Egyptian courts have previously enforced French Letters of Request in a wide range of proceedings.  Geddawy ¶ C(6).  While there are two limited circumstances in which an Egyptian court can refuse to execute a Letter of Request, they do not apply here, *id.* ¶ C(7), and an Egyptian court should honor such requests from a French court, *id.* ¶¶ C(7)-(9).  It therefore is far more likely that litigants in France will have greater access to Egyptian evidence than would litigants in the United States.  *Id.* ¶ C(9); *see also* Delebecque ¶¶ 12-13, 32.

**Liability Evidence in the United States.**  Defendants' evidence in the United States does not outweigh the factors favoring dismissal because that evidence is equally accessible in France.  As the Ninth Circuit has recognized, plaintiffs in a foreign court will have access to documentary evidence held by a U.S. defendant and to the testimony of witnesses employed by that defendant.  *Lueck*, 236 F.3d at 1146 ("The documents and witnesses in the United States are all under the control of . . . Defendants, so they can be brought to court, no matter the forum.").  Defendants agree, as a condition of dismissal, to produce any evidence and employees deemed relevant to liability by the French court in deciding cases refiled there by plaintiffs.  *E.g.*, Kendrick ¶ 8.  This factor, therefore, favors dismissal.  *Taiwan Straits*, 331 F. Supp. 2d at 1196; *Taipei*, 2004 WL 1234131, at *5.[9]

---

[9] In any event, only a small portion of that evidence is located in California.  Boeing's and Honeywell's evidence—which relate to the bulk of plaintiffs' claims relevant to the improper and negligent design and manufacture of the aircraft and its components—is located outside of California.  Breuhaus ¶ 7(g); Pfitzer ¶ 6(f).  *See Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 144 (E.D. Tex. 1992) ("The fact that some evidence concerning the aircraft's design and manufacture may

### b)    Critical Witnesses Are Beyond the Reach of Compulsory Process.

The Supreme Court in *Gulf Oil* recognized the importance of choosing a forum in which unwilling witnesses can be compelled to appear and testify. 330 U.S. at 511. In this case, many of the critical witnesses are located abroad and, therefore, are beyond the reach of compulsory process to compel their attendance or the production of documents in their control. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). Significantly, as previously noted, the plaintiffs have identified 138 individuals who may be entitled to damages, but who are not themselves plaintiffs. None of these individuals are within the subpoena power of this Court. Most of these individuals, however, would be subject to a French court's jurisdiction because they reside in France and have brought claims against Flash there.[10]  Delebecque ¶¶ 9-10, 32.

Moreover, other important witnesses are beyond this Court's subpoena power but could be compelled to provide testimony in France either by the French court directly or through a Letter of Request issued pursuant to the bilateral convention between France and Egypt. *Id.* ¶¶ 9-10, 12-13, 32; Geddawy ¶¶ C(5)-(9). These include witnesses regarding damages (e.g., family members, friends, employers, and health care providers for the claimants and decedents); former Flash Airlines employees; MCA investigators and other persons involved with the investigation in Egypt; and other Egyptian witnesses with knowledge of either the flight crew's background and abilities or Flash's operations as an air charter carrier. This is a

---

be located elsewhere in the United States does not make the Eastern District of Texas a convenient forum."), *aff'd*, 11 F.3d 55 (5th Cir. 1993). Only the relatively minimal evidence within ILFC's possession is located in the district. *See* Sackman ¶ 5(a) (identifying 600-700 pages of documents relating to the accident aircraft and 4-6 individuals with knowledge regarding the accident or accident aircraft).

[10] Even if these individuals do not have standing to recover, they are family members or close friends of the decedents or their survivors and therefore likely are in a position to provide damages evidence.

significant factor in the forum non conveniens analysis. *See Pain*, 637 F.2d at 787 ("Documents such as the helicopter's service record and accident reports prepared by Norwegian authorities cannot be obtained by mandatory process outside the United States."); *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1030 (3d Cir. 1980) ("Nor could [the aircraft manufacturer] compel production here of any real or documentary evidence located in Norway . . . ." (citations and emphasis omitted)); *Carney v. Singapore Airlines*, 940 F. Supp. 1496, 1503 (D. Ariz. 1996) (finding that Indonesian witnesses could not be compelled to testify in the United States); *In re Air Crash Disaster Near Bombay, India on Jan. 1, 1978 ("Bombay")*, 531 F. Supp. 1175, 1177-78 (W.D. Wash. 1982) (noting that "[s]erious problems have been encountered in efforts to obtain evidence from Indian government agencies regarding the official investigation into the crash and the preparation of the official government report concerning the accident").[11]

As already noted, witnesses and documents within Defendants' control will be subject to compulsory process in France if this motion is granted, Delebecque ¶¶ 9-10, 32, and Defendants have agreed, as a condition of dismissal, to produce any evidence and employees deemed relevant by the French court, *e.g.*, Kendrick ¶ 8; *Taiwan Straits*, 331 F. Supp. 2d at 1196, 1213; *Taipei*, 2004 WL 1234131, at *5, *7; *Carney,* 940 F. Supp. at 1505. This Court's lack of compulsory process for critical witnesses and evidence located in Egypt and France favors dismissal.

### c) Allowing Plaintiffs to Split Their Cause of Action and Sue Defendants in the United States While Suing Flash Airlines in France Would Be Prejudicial and Wasteful.

Virtually all of the plaintiffs in the United States have sought recovery

---

[11] Even if some or all of these witnesses volunteer to come to the United States to testify, the expense associated with transporting the witnesses here to testify would be significant given the number of potential foreign witnesses. That fact favors dismissal, too. *Taiwan Straits*, 331 F. Supp. 2d at 1199 (court must consider the cost of obtaining the witnesses' voluntary participation).

against Flash Airlines in the French Civil Action. Dismissal is warranted to avoid the possibility of inefficient and duplicative proceedings, inconsistent results, and prejudice to Defendants of litigating the accident's cause without Flash's presence.

Allowing the United States actions to proceed concurrently with French proceedings will result in inefficient duplicate proceedings in the United States and France. It bears repeating that the plaintiffs' claims against Flash Airlines cannot go forward in the United States because of the Warsaw Convention's jurisdictional constraints, but claims against Defendants can go forward in France. This fact, alone, favors dismissal. *See Lockman Found.*, 930 F.2d at 770 (dismissal warranted because Japan was the only forum in which all of the claims could be tried); *Contact Lumber*, 918 F.2d at 1452-53 (Philippines being only forum with jurisdiction over all related cases counseled in favor of dismissal).

Moreover, unless this Court dismisses the actions against the defendants so they can be refiled in France, courts in two countries will have to engage in inefficient and duplicative fact-finding to determine the accident's cause, resulting liability, and damages. Both courts will first have to address whether the flight crew's conduct, Flash's operations, training, and maintenance, and/or a mechanical or design defect caused or contributed to the accident. They will also have to review the evidence about the same claimants' economic and non-economic losses, which likely will be voluminous. For example, at the introductory stage of the French Civil Action, the claimants had submitted at least 1,650 exhibits to support their claims for compensatory damages. Delebecque ¶ 15. The risk that the U.S. and French courts will reach inconsistent conclusions on these issues is heightened here where the U.S. court will likely not have access to critical liability and damages evidence and where the U.S. court may have to apply foreign law. *See supra* pp. 13-15; *infra* pp. 24-25.

The Ninth Circuit recently addressed this same situation where foreign plaintiffs sued an air carrier in a foreign forum for crew negligence and, at the same

time, sued products manufacturers in the United States for strict liability.  In that case, the court held that because both actions "revolve[d] around the causes of the accident," forum non conveniens dismissal of the American claims was proper:

> [A] significant number of the same witnesses will be needed in both proceedings and much the same evidence will have to be presented to both courts.  Currently, the main difference is that Defendants [American product manufacturers] are not parties to the Ansett [New Zealand air carrier] suit. If they are brought into that suit, all the evidence under their control would have to be produced in New Zealand.  Defendants, who have brought this motion, are willing to cooperate in the production of evidence.  Given the existence of the related proceedings, it is all the more clear that the private interest factors weigh in favor of dismissal.

*Lueck*, 236 F.3d at 1147; *see Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1094 (9th Cir. 1998) (actions proceeding in foreign forum are "relevant to an analysis of the interest in avoiding a multiplicity of actions"); *Contact Lumber*, 918 F.2d at 1451 (forum non conveniens dismissal granted to avoid inconsistent factual findings in the U.S. and Filipino actions, and also to spare the litigants the additional costs of duplicate lawsuits).  "Avoiding such duplicative proceedings is precisely the sort of 'practical problem' in the adjudication of a case that the doctrine of forum non conveniens is designed to avoid." *Am. Home Assurance*, 347 F. Supp. 2d at 767 (forum non conveniens granted when English court would address the same factual and legal questions as the U.S. court).

In addition, the absence of Flash—a party that plaintiffs themselves have alleged committed willful misconduct—creates a number of difficulties in the U.S. litigation.  First, after lengthy and costly litigation, plaintiffs might obtain incomplete relief, and perhaps no relief, in the United States.  The Court's inability to provide a complete adjudication of the dispute favors dismissal. *See Pain*, 637 F.2d at 791.  Second, Defendants would be prejudiced by a trial in California without the presence of a party responsible—in whole or in part—for the accident.

*See Piper Aircraft*, 454 U.S. at 259 ("Joinder of the pilot's estate, Air Navigation, and McDonald is crucial to the presentation of petitioners' defense."); *Satz*, 244 F.3d at 1284 n.4 (noting the ineffectiveness of the "empty chair [ ]" defense because the trier of fact "would have available only one, rather than several, defendants to bear the brunt of its verdict and damage award"); *Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 19 (N.D. Cal. 1982) ("[T]he trier of fact cannot be expected to evaluate fairly the relative responsibility of parties not present at the trial."), *aff'd sub nom. Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983); *Taipei*, 2004 WL 1234131, at *6 ("[A]ll of these plaintiffs have sued Singapore Airlines in other jurisdictions, thus a forum exists in which the claims can be resolved in a single action against all defendants. This fact provides a compelling reason not to put Boeing in the position of having to defend against claims where the principally liable defendants are not present."). Third, resolution of defendants' liability in this country and Flash's liability in France could lead to conflicting results. *See Nolan*, 762 F. Supp. at 684. These serious and practical problems weigh heavily in favor of dismissal.

### 2.    The Public-Interest Factors Clearly Favor Dismissal.

The public-interest factors to be considered include:  the administrative difficulties flowing from court congestion; the unfairness of burdening citizens in an unrelated forum with jury duty; the local interest in having localized controversies decided at home; the interest in having a diversity case tried in a forum familiar with the law that must govern the action; and the avoidance of unnecessary problems in conflicts of law or in application of foreign law. *Gulf Oil*, 330 U.S. at 508. These factors also weigh heavily in favor of trial in France.

### a)    France Has the Greatest Interest in the Outcome of This Controversy; the United States' Interest Is Minimal.

There can be no dispute that France has a compelling local interest in an accident that killed more than 100 of its residents. "There is a local interest in

having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 509.

Flight 604 was a charter flight transporting French tourists as part of low-cost tour packages offered by French travel agencies to French tourists. Kendrick Exh. A at 3; Delebecque ¶ 2. The tours originated and were scheduled to conclude in France. *See* Kendrick Exh. A at 3; Delebecque ¶ 2. Flash was to fly through French air space. Breuhaus ¶ 3. Nearly 500 French claimants, including 138 of the 148 plaintiffs here, availed themselves of the French courts. Kendrick ¶¶ 4, 5(d); *see Chhawchharia*, 657 F. Supp. at 1162 ("The domiciliary state has the strongest interest in providing for prompt and adequate compensation of a decedent's survivors."); *Baumgart*, 981 F.2d at 837 n.15 (noting "strong interest" Germany has in ensuring that its citizens are compensated for harms); *Lueck*, 236 F.3d at 1147 (crash involved New Zealand airline carrying New Zealanders).

France has demonstrated its understandable interest in this matter in a myriad of ways. A French Public Prosecutor instituted a criminal investigation into the accident's cause. Delebecque ¶ 21; Breuhaus ¶ 8; *see Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 160 (S.D.N.Y. 2004) (France's "active interest" demonstrated by criminal investigation into the accident); *Lueck*, 236 F.3d at 1147; *Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1045-46 (N.D. Cal. 1993). A French court will preside over a massive civil action arising from the accident. Delebecque ¶¶ 15-20, 33; *see Gemini Capital Group*, 150 F.3d at 1094 (receivership proceeding in Yap significant to public-interest factors). The BEA has played a significant role in all aspects of the official accident investigation. Breuhaus ¶ 5. It also coordinated all of the search and recovery operations using French vessels and equipment. *Id.* Further, news of the accident and its aftermath received extensive coverage in the French media, and the main French newspapers and TV channels still publish and broadcast news regarding the criminal and civil proceedings. *See* Kendrick ¶¶ 6-7 & Exh. E. French governmental authorities have met with, and provided assistance to, the decedents'

families. *Id.* ¶ 7 & Exh. E.

By contrast, California has little interest in or relation to this action. *See Taiwan Straits*, 331 F. Supp. 2d at 1203 ("[I]t is not improper for a court to consider contacts with the actual forum—i.e., California—when evaluating a motion to dismiss on *forum non conveniens* grounds."). The plaintiffs are not residents or citizens of California. The accident did not occur here. Flight 604 did not originate from and was not bound for a California airport. The official investigation is being conducted by Egyptian authorities. Breuhaus ¶ 4. The only connection with California is that the airplane was leased to Flash approximately two years before the accident by ILFC. Sackman ¶ 2. However, the presence of an in-state defendant is not sufficient to overcome France's paramount interest in this action. *See Lueck*, 236 F.3d at 1147 (although Honeywell's home forum had interest in case alleging that the company manufactured defective aircraft avionics, that interest is "slight" when compared to the interest of New Zealand, which was plaintiffs' home forum, the accident site, and the location of criminal and civil proceedings arising from accident).

Any interest California may have due to ILFC's in-state presence is not compelling given ILFC's limited connection with the accident. ILFC did not have any involvement in the day-to-day operation of the aircraft and had no oversight over Flash Airlines' operations. *See* Sackman ¶ 3. The accident aircraft was leased to foreign airlines that operated the aircraft outside of the United States during the entire time that ILFC owned it. *Id.* ¶ 2. In comparison to France, any interest that California may have in this controversy is minimal. *See Lueck*, 236 F.3d at 1147; *Grodinsky v. Fairchild Indus., Inc.*, 507 F. Supp. 1245, 1252 (D. Md. 1981).

That the accident aircraft and certain components were manufactured and designed by United States companies does not change this analysis. Boeing and Honeywell's activities with respect to the subject aircraft occurred in Washington, Arizona, and Minnesota—not California. Breuhaus ¶ 7(g); Pfitzer ¶ 6(f). This

connection to the United States generally does not outweigh the overwhelming connection that these cases have to France. *See Macedo v. Boeing Co.*, 693 F.2d 683, 686 (7th Cir. 1982) ("The fact that the aircraft was manufactured in the United States does not make the accident, involving a Portuguese airline, an airport in Portugal, predominantly Portuguese plaintiffs and Portuguese witnesses, any less a matter of local Portuguese interest."); *Pain*, 637 F.2d at 792-93 (neither District of Columbia nor United States has an interest in resolving claims even though accident helicopter manufactured in Connecticut).

Moreover, the Supreme Court in *Piper Aircraft* expressly held that any U.S. interest in deterring the production of defective products does not require a U.S. court to retain jurisdiction when another country has a greater interest in the litigation. 454 U.S. at 260-61; *see Taiwan Straits*, 331 F. Supp. 2d at 1205 ("[P]laintiffs cannot obscure the strength of the connection between their actions and Taiwan by characterizing the cases as products liability suits against Boeing."). Under these facts, any interest California may have "in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper Aircraft*, 454 U.S. at 261; *Lueck*, 236 F.3d at 1147.

### b) There Is No Reason to Burden a California Court and a California Jury with Deciding Litigation that Has Virtually No Connection to California.

Retaining this action would impose a considerable and unwarranted burden on this Court and on the citizens of this jurisdiction, whose tax dollars would have to support the expense of trying this case and whose time would be taken up by sitting as jurors. This is especially so when the French court must also evaluate the accident's cause and the damages sustained by nearly every plaintiff in these actions. There is no reason why this Court or California juries should duplicate those efforts, especially when doing so will involve the burdensome chore of

evaluating the individual damages claims (both economic and non-economic) of 143 French plaintiffs. It will also require the Court and jury to delve into complex issues of flight operations, crew training, and engineering questions regarding the proper design, manufacture and operation of a 737-300 aircraft and its components, among other issues. Given California's minimal interest in this litigation, there is no reason to impose that burden on this forum.[12] *See Gulf Oil*, 330 U.S. at 508-09; *Piper Aircraft*, 454 U.S. at 252; *Lueck*, 236 F.3d at 1147. This factor weighs heavily in favor of dismissal.

### c) This Court Need Not Become Embroiled in the Complexities of Choice-of-Law and the Application of Foreign Law.

Although the Court must engage in an initial choice-of-law analysis, that analysis is "only determinative when the case involves a United States statute requiring venue in the United States." *Lueck*, 236 F.3d at 1148. No such statute is implicated here. If U.S. law applies to these actions, that law must be the Death on the High Seas Act, 46 U.S.C. app. §§ 761-767 ("DOHSA"). Flight 604 crashed on the high seas (i.e., the Red Sea off the Egyptian coast) and thus falls within DOHSA's exclusive scope. *See Tannis v. Concordia-Maritime A.B.*, No. 95 Civ. 3089 (CSH), 1997 WL 189049, at *4 n.5 (S.D.N.Y. Apr. 17, 1997) ("Red Sea falls within the high seas under DOHSA."); *Bombay*, 531 F. Supp. at 1182-91 (DOHSA governs air crash into Indian Ocean off India's coast). DOHSA, however, does not mandate venue in the United States. *Taiwan Straits*, 331 F. Supp. 2d at 1207. Therefore, "'no potentially dispositive choice of law determination need [be] made.'" *Lueck*, 236 F.3d at 1148 (quoting *Lockman Found.*, 930 F.2d at 771); *Gemini Capital Group*, 150 F.3d at 1092.

---

[12] Given California's limited interest, there is no justification for imposing the burden of 55 complex product liability cases on what "is one of the busiest [courts] in the country." *Taiwan Straits*, 331 F. Supp. 2d at 1202 (discussing court congestion in the Central District of California).

Were the Court to do a full choice-of-law analysis—which it need not do here—that analysis would require the Court to undertake a complicated task. Even though plaintiffs' claims fall within DOHSA's scope, DOHSA preserves the applicability of foreign law in appropriate cases. *See* 46 U.S.C. app. § 764; *In re Korean Air Lines Disaster*, 117 F.3d 1477, 1485 (D.C. Cir. 1997), *aff'd*, 524 U.S. 116 (1998); *Bombay*, 531 F. Supp. at 1184-86. To determine whether in this case U.S. or foreign law applies, the Court would have to use the multi-factor *Lauritzen/Rhoditis* admiralty choice-of-law test, *Bombay*, 531 F. Supp. at 1188-91, which involves a delicate weighing of international interests. The forum non conveniens doctrine was intended to avoid just this type of choice-of-law analysis. *Piper Aircraft*, 454 U.S. at 251. Where, as here, the other private- and public-interest factors point convincingly in favor of dismissal, there is no need for the Court to engage in a complicated choice-of-law determination. *See Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1130 (S.D.N.Y. 1992); *Jennings v. Boeing Co.*, 660 F. Supp. 796, 809 n.12 (E.D. Pa. 1987).

## IV. CONCLUSION

France is an available and adequate alternative forum that these plaintiffs are already utilizing for claims arising out of the loss of Flight 604. The private- and public-interest factors strongly favor dismissal. For the foregoing reasons, Boeing, ILFC, and Honeywell respectfully request that the Court dismiss plaintiffs' claims on the grounds of forum non conveniens.

DATED: February 24, 2005

PERKINS COIE LLP

By _____

RONALD A. McINTIRE
Attorneys for Defendant
THE BOEING COMPANY

1

2    **MORRISON & FOERSTER LLP**

3    By _____

4    *for*   DON G. RUSHING

      Attorneys for Defendant

5    HONEYWELL INTERNATIONAL INC.

6    **LORD BISSEL & BROOK LLP**

7

8    By _____

9    *for*   GARY W. WESTERBERG

      Attorneys for Defendant

10    INTERNATIONAL LEASE FINANCE

11    CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**Ex. A**

**AFFECTED CASES**

|  | Total | French Citizens or Residents |
|---|---|---|
| **Plaintiffs:** | 148 | 143 |
| **Decedents:** | 120 | 118 |
| **"Potential Heirs and Beneficiaries"** | 138 | At least 116 |

|  | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 1 | CV 04 10129 CAS (AJWx) | Alain Gambra (Fr/Fr)<br><br>Madeleine Gambra (Fr/Fr) | Stephanie Gambra (Fr) |
| 2 | CV 04 10132 CAS (AJWx) | Marguerite Decreux (Fr/Fr)<br><br>Michele Piron (Fr/Fr)<br><br>Aurelie Thil (Fr/Fr) | Philippe Marcel Eugene Decreux (Fr)<br><br>Geraldine Piron Decreux (Fr)<br><br>Charline Decreux (Fr) |
| 3 | CV 04 10133 CAS (AJWx) | Danielle Panaiota (Fr/Fr)<br><br>Henri Garrigue (Fr/Fr)<br><br>Yves Jean Laururie (Fr/Fr)<br><br>Jacqueline Garrigue (Fr/Fr) | Christine Joelle Laururie Garrigue (Fr)<br><br>Simon Garrigue (Fr)<br><br>Alain Garrigue (Fr)<br><br>Marjorie Garrigue (Fr) |
| 4 | CV 04 10134 CAS (AJWx) | Celine Emmanuelle Rotella-Toledo (Fr/Fr) | Danielle Prieto Ferriere (Fr)<br><br>Marie Ferriere (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 5 | CV 04 10135 CAS (AJWx) | Georges Vialet (Fr/Fr)<br><br>Claudette Douay (Fr/Fr)<br><br>Antoinette Vialet (Fr/Fr) | Eric Vialet (Fr)<br><br>Valerie Douay Vialet (Fr)<br><br>Pauline Vialet (Fr)<br><br>Antoine Vialet (Fr)<br><br>Laura Vialet (Fr) |
| 6 | CV 04 10136 CAS (AJWx) | Sebastien Halley (Fr/Fr)<br><br>Arnaud Halley (Fr/Fr) | Etienne Halley (Fr)<br><br>Nicole Beaugrand Halley (Fr) |
| 7 | CV 04 10137 CAS (AJWx) | Michel Emile Alexis Ammerich (Fr/Fr)<br><br>Sandrine Marie-Louise Aymain (Fr/Fr)<br><br>Anthony John Aymain (Fr/Fr)<br><br>Marine Micheline Aymain (Fr/Fr) | Franck Ammerich (Fr) |
| 8 | CV 04 10139 CAS (AJWx) | Dominique Degout (Fr/Fr)<br><br>Jerome Degout (Fr/Fr)<br><br>Karine Degout (Fr/Fr)<br><br>André Charles Degout (Fr/Fr)<br><br>Anna Angelique Marie Degout (Fr/Fr) | Jack Degout (Fr)<br><br>Jonathan Degout (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 9 | CV 04 10140 CAS (AJWx) | Caroline Dubois (Fr/Fr)<br><br>Emmanuelle Wallaert (Fr/Fr)<br><br>Jeanne Jamois (Fr/Fr)<br><br>Paul Jamois (Fr/Fr)<br><br>Jeanne Goillandeau (Fr/Fr) | Philippe Goillandeau (Fr)<br><br>Martine Jamois Goillandeau (Fr) |
| 10 | CV 04 10151 CAS (AJWx) | Francois Ozerai (Fr/Fr) | Raymond Ozerai (Fr)<br><br>Colette Lhomme Ozerai (Fr) |
| 11 | CV 04 10152 CAS (AJWx) | Josiane Georgette Simone Coquin (Fr/Fr)<br><br>Raymond Turpault (Fr/Fr)<br><br>Huguette Turpault (Fr/Fr)<br><br>Michèle Angéle Claudine Coquin (Fr/Fr)<br><br>Laurent Thuillier (Fr/Fr) | Francis Thuillier (Fr)<br><br>Veronique Jeanne-Marie Augstine Thuillier (Fr)<br><br>William Thuillier (Fr)<br><br>Raphael Thuillier (Fr)<br><br>Micheline Thuillier (Fr) |
| 12 | CV 04 10153 CAS (AJWx) | Antoinette Lamy (Fr/Fr)<br><br>Louis Ledevin (Fr/Fr)<br><br>Jacqueline Ledevin (Fr/Fr) | Michel Lamy (Fr)<br><br>Maud Lamy (Fr)<br><br>Claire Lamy (Fr)<br><br>Francoise Ledevin Lamy (Fr)<br><br>Pierre-Louis Lamy (Fr) |
| 13 | CV 04 10154 CAS (AJWx) | Barbara Tahar (Fr/Fr)<br><br>Michaël Tahar (Fr/Fr) | Jeanne Cherigui (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 14 | CV 04 10155 CAS (AJWx) | Matthieu Kern (Fr/Fr)<br><br>Sebastien Lionel Kern (Fr/Fr)<br><br>Gaelle Kaerne Djouri (Fr/Fr) | Jean-Marc Kern (Fr) |
| 15 | CV 04 10156 CAS (AJWx) | Olivier Thechi (Fr/Fr)<br><br>Joël Laurent Coleta (Fr/Fr)<br><br>Chantal Duchesnay (Fr/Fr) | Michel Thechi (Fr) |
| 16 | CV 04 10157 CAS (AJWx) | Jean Chable (Fr/Fr)<br><br>Jean-Michel Chemin (Fr/Fr)<br><br>Denise Chable (Fr/Fr) | Jean-Luc Chable (Fr)<br><br>Antoine Chable (Fr)<br><br>Chloe Chable (Fr)<br><br>Catherine Chemin Chable (Fr) |
| 17 | CV 04 10158 CAS (AJWx) | Mathieu Chotard (Fr/Fr)<br><br>Thomas Georges Joseph Chotard (Fr/Fr)<br><br>Colette Jacqueline Roudil (Fr/Fr) | Yvon Chotard (Fr)<br><br>Pascale Roudil Chotard (Fr) |
| 18 | CV 04 10159 CAS (AJWx) | André Rollet (Fr/Fr)<br><br>Geneviéve Pechart Ethevenin (Fr/Fr)<br><br>Liliane Pechart Gerelle (Fr/Fr) | Lucien Rollet (Fr)<br><br>Monique Pechart Rollet (Fr)<br><br>Catherine Rollet (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 19 | CV 04 10160 CAS (AJWx) | Claude Cohüet (Fr/Fr)<br><br>Margaret Cohüet (Fr/Fr)<br><br>Gregory Cohüe (Fr/Fr) | Celine Cohüet (Fr) |
| 20 | CV 04 10161 CAS (AJWx) | Virgine Lombard (Fr/Fr)<br><br>Nicolas Lombard (Fr/Fr)<br><br>Sophie Lombard (Fr/Fr) | Michel Lombard (Fr)<br><br>Martine Macquoy Lombard (Fr) |
| 21 | CV 04 10162 CAS (AJWx) | Jacqueline Siddi (Fr/Fr) | Ernest Siddi (Fr)<br><br>Renee Siddi (Fr) |
| 22 | CV 04 10163 CAS (AJWx) | Hélène Delahousse (Fr/Fr)<br><br>Marie Haverbeke (Fr/Fr) | Bernadette Iseler (Fr) |
| 23 | CV 04 10164 CAS (AJWx) | Marie-Jeanne Dailleau (Fr/Fr) | Sylviane Dailleau (Fr) |
| 24 | CV 04 10165 CAS (AJWx) | Armelle Balavoine (Fr/Fr)<br><br>Thomas Balavoine (Fr/Fr)<br><br>Rached Ben Abdallah (Fr/Fr)<br><br>Jacqueline Devoir-Balavoine (Fr/Fr)<br><br>Fernand Balavoine (Fr/Fr) | Patrice Balavoine (Fr)<br><br>Annick Goussin Balavoine (Fr) |

|  | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 25 | CV 04 10166 CAS (AJWx) | William Georges Marc Jolicoeur (Fr/Fr)<br><br>Colette Jolicoeur Huguet (Fr/Fr)<br><br>Catherine Baty-Jolicoeur (Fr/Fr) | Philippe Jolicoeur (Fr)<br><br>Julie Romanoff Jolicoeur (Fr) |
| 26 | CV 04 10167 CAS (AJWx) | Genevieve Chollet (Fr/Fr) | Francine Brutin (Fr) |
| 27 | CV 04 10168 CAS (AJWx) | Simone Mateos (Fr/Fr)<br><br>Jean-Jacques Baudry (Fr/Fr) | Patricia Baudry (Fr)<br><br>Sarah Baudry (Fr) |
| 28 | CV 04 10169 CAS (AJWx) | Louis Turcan (Fr/Fr)<br><br>Henri Guillot (Fr/Fr)<br><br>Marie Louise Guillot (Fr/Fr)<br><br>Colette Turcan (Fr/Fr) | Christian Turcan (Fr)<br><br>Nicole Guillot Turcan (Fr) |
| 29 | CV 04 10170 CAS (AJWx) | Sylvie Malterre (Fr/Fr)<br><br>Alain Barbou (Fr/Fr)<br><br>Catherine Clergeaud (Fr/Fr) | Micheline Marot Barbou (Fr) |
| 30 | CV 04 10171 CAS (AJWx) | Christian Hilaire Chaboy (Fr/Fr)<br><br>Huguette Marie Marguerite Chaboy (Fr/Fr)<br><br>Corinne Dujourd'Hui (Fr/Fr) | Jean-Christophe Chaboy (Fr) |

|  | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 31 | CV 04 10172 CAS (AJWx) | Georgette Legros (Fr/Fr)<br><br>Mathieu Benoit Fabian Roux (Fr/Fr)<br><br>Eric Legros (Fr/Fr)<br><br>Yann Legros (Fr/Fr)<br><br>Jordan Legros (Fr/Fr) | Daniel Legros (Fr)<br><br>Genevieve Sabarthes Legros (Fr) |
| 32 | CV 04 10173 CAS (AJWx) | Marie-Thérèse Andrée Duchatelle (Fr/Fr)<br><br>Jean-Claude Georges Marie Duchatelle (Fr/Fr) | Bruno Duchatelle (Fr)<br><br>Marie-Christine Croize Duchatelle (Fr)<br><br>Jean Duchatelle (Fr) |
| 33 | CV 04 10174 CAS (AJWx) | Sebastien Geoffroy Zins (Fr/Fr)<br><br>Jeanne Dona (Fr/Fr) | Colette Raymonde Chernet (Fr) |
| 34 | CV 04 10175 CAS (AJWx) | Alain Babault (Fr/Fr)<br><br>Catherine Brunias (Fr/Fr) | Janine Babault (Fr)<br><br>Carloe Babault (Fr) |
| 35 | CV 04 10176 CAS (AJWx) | Brigitte Coquin Delamaire (Fr/Fr)<br><br>Valerie Coquin Maury (Fr/Fr) | Jean-Louis Coquin (Fr)<br><br>Marie-Claude Belloeil Coquin (Fr) |
| 36 | CV 04 10177 CAS (AJWx) | Plamen Stöitchkov (Fr/Fr)<br><br>Gueorgui Stöitchkov (Fr/Bulgaria) | Lubka Iordanova (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 37 | CV 04 10178 CAS (AJWx) | Jordan Ales (Fr/Fr)<br><br>Caroline Ales Batifol (Fr/Fr)<br><br>Josiane Marie Marthe Ales (Fr/Fr)<br><br>Marthe Madeleine Verdeil (Fr/Fr) | Stephane Ales (Fr)<br><br>Christiane Verdeil Ales (Fr) |
| 38 | CV 04 10179 CAS (AJWx) | Colette Petat-Godard (Fr/Fr)<br><br>Alexandre Jules Evlakhoff (Fr/Fr) | Dominique Norbert Evlakhoff (Fr)<br><br>Nadia Evlakhoff (Fr) |
| 39 | CV 04 10181 CAS (AJWx) | Odette Georgette Emile Adrienne Duret (Fr/Fr) | Michel Pentecote (Fr)<br><br>Evelyne Duret Pentecote (Fr) |
| 40 | CV 04 10182 CAS (AJWx) | Vincent Courtois (Fr/Fr)<br><br>Béatrice Desplanque (Fr/Fr)<br><br>Sabine Courtois (Fr/Fr) | Francis Demeestere (Fr) |
| 41 | CV 04 10183 CAS (AJWx) | Damien Chatagner (Fr/Fr)<br><br>Jacques Petit (Fr/Fr)<br><br>Alexandra Chatagner (Fr/Fr)<br><br>Suzanne Petit (Fr/Fr) | Alain Chatagner (Fr)<br><br>Florence Petit Chatagner (Fr)<br><br>Adrien Chatagner (Fr)<br><br>Dorian Chatagner (Fr)<br><br>Yann Chatagner (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 42 | CV 04 10184 CAS (AJWx) | Marie-Reine Alary (Fr/Fr)<br><br>Ronald Bisson (Fr/Fr) | Marie-Danielle Alary Bisson (Fr)<br><br>Romain Bisson (Fr)<br><br>Antony Bisson (Fr)<br><br>Suzy Bisson (Fr)<br><br>Sarah Bisson (Fr)<br><br>Daniel Bisson (Fr)<br><br>Jean-Marie Bisson (Fr) |
| 43 | CV 04 10185 CAS (AJWx) | Madeline Sersiron (Fr/Fr)<br><br>Marcel Raffier (Fr/Fr)<br><br>Pierrette-Josette Guinot-Raffier (Fr/Fr) | Nathalie Boiseau Abonnel (Fr) |
| 44 | CV 04 10186 CAS (AJWx) | Francis Courchia (Fr/Fr) | Lauren Courchia (Fr)<br><br>Annie Babu Courchia (Fr) |
| 45 | CV 04 10187 CAS (AJWx) | Jean-Marie Benjamin Berzolla (Fr/Fr)<br><br>Francois-Xavier Liard (Fr/Fr)<br><br>Mathieu Baumier (Fr/Fr)<br><br>Laurence Baumier (Fr/Fr)<br><br>Julien Leroy (Fr/Fr)<br><br>Jeanne Henriette Andree Baumier (Fr/Fr) | Bernard Baumier (Fr)<br><br>Marie Flament (Fr) |
| 46 | CV 04 10188 CAS (AJWx) | Cedric Arzile (Fr/Fr) | Jean-Claude Arzile (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 47 | CV 04 10189 CAS (AJWx) | Violette Delarue (Fr/Fr) | Jacqueline Delarue Bar (Fr) |
| 48 | CV 04 10190 CAS (AJWx) | Jacqueline Lucienne Freville Rannou (Fr/Fr) | Patrice Jean-Marie Rannou (Fr)<br><br>Laurence Therese Marguerite Vavasseur Rannou (Fr)<br><br>Antoine Louis Andre Rannou (Fr)<br><br>Julia Cammille Esther Rannou (Fr) |
| 49 | CV 04 10191 CAS (AJWx) | Jeanine Lorcet (Fr/Fr)<br><br>Watfa Kallas (Fr/Fr)<br><br>Armelle Lorcet (Fr/Fr)<br><br>Richard Lorcet (Fr/Fr) | Didier Lorcet (Fr)<br><br>Noura Kallas Lorcet (Fr) |
| 50 | CV 04 10192 CAS (AJWx) | David Fouchard (Fr/Fr)<br><br>Denis Fouchard, minor, through his guardian David Fouchard (Fr/Fr)<br><br>Itsuko Chiya (Japan/Unknown)<br><br>Yasuo Chiya (Japan/Unknown)<br><br>Erika Caroline Correia Fouchard, minor, through her guardian Simone Correia Oliveira (Brazil/Unknown) | Philippe Fouchard (Fr)<br><br>Annie Cotillon (Fr)<br><br>Isabelle Fouchard (Fr)<br><br>Jean-Yves Fouchard (Fr)<br><br>Megumi Chiya (Fr)<br><br>Ichiro Fouchard (Fr)<br><br>Natsuo Fouchard (Fr) |

| | Case Number | Plaintiffs' Names and Residency/Citizenship | Decedents' Names and Residency |
|---|---|---|---|
| 51 | CV 04 10193 CAS (AJWx) | Roger Alphazan (Fr/Fr)<br><br>Michele Marcelle Menard Alphazan (Fr/Fr)<br><br>Phillippe Alphazan (Fr/Fr) | Eric Alphazan (Fr) |
| 52 | CV 04 10616 CAS (AJWx) | Enas Essam Hamouda (Egypt/Egypt)<br><br>Jana Mahmoud Darwesh, a minor, through her mother and guardian Enas Essam Hamouda (Egypt/Egypt) | Mahmoud Hanafy Darwesh (Egypt) |
| 53 | CV 05 0056 CAS (AJWx) | Colette Ferreol (Fr/Fr) | Herve Ferreol (Fr) |
| 54 | CV 05 0104 CAS (AJWx) | Jeanine Chalons (Fr/Fr) | Francois Guenezan a/k/a Lalandre (Egypt) |
| 55 | CV 05 0105 CAS (AJWx) | Annabelle Poiron (Fr/Fr)<br><br>Florian Poiron (Fr/Fr) | Gilles Poiron (Fr)<br><br>Marie-Odile Fourage Poiron (Fr) |