RONALD A. McINTIRE (State Bar No. 127407)
**PERKINS COIE LLP**
1620 26th Street, Sixth Floor
Santa Monica, California 90404
Tel.: (310) 788-9900 / Fax: (310) 788-3399
Email: RMcIntire@perkinscoie.com

JOHN D. DILLOW (State Bar No. 50403)
BRUCE D. CAMPBELL (Admitted *Pro Hac Vice*)
ALLISON KENDRICK (Application for *Pro Hac Vice* Admission Pending)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101
Tel.: (206) 359-8000 / Fax: (206) 359-9000
Email: JDillow@perkinscoie.com
Email: BCampbell@perkinscoie.com
Email: AKendrick@perkinscoie.com

Attorneys for Defendant THE BOEING COMPANY

FILED
CLERK, U.S. DISTRICT COURT
FEB 24 2005
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

ALAIN GAMBRA, individually, and as personal representative of the Estate of STEPHANIE GAMBRA, deceased; MADELEINE GAMBRA,

Plaintiffs,

v.

INTERNATIONAL LEASE FINANCE CORPORATION, a California corporation; THE BOEING COMPANY, an Illinois corporation; HONEYWELL INTERNATIONAL, INC., a Delaware corporation,

Defendants.

CASE NO. CV 04 10129 CAS (AJWx)

This Document Relates to: *See* List of Affected Cases attached to Joint Motion

**DECLARATION OF ALLISON KENDRICK IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ON THE GROUNDS OF FORUM NON CONVENIENS**

Date: April 25, 2005
Time: 10:00 a.m.
Crtrm: 5
Judge: Hon. Christina A. Snyder

DOCKETED ON CM
MAR - 2 2005

I, Allison Kendrick, declare and state as follows:

1.     I am partner with the law firm of Perkins Coie LLP, which is counsel of record for The Boeing Company ("Boeing") in this matter. I am licensed to practice law in the states of Washington and Texas. On behalf of Boeing, I am one of the attorneys responsible for monitoring the status of litigation arising out of the loss of Flash Airlines Flight 604 on January 3, 2004 ("the Accident"). My application to appear of record and participate pro hac vice in connection with this matter is pending before the Court. I have personal knowledge of the matters stated below (except as otherwise stated) and, if called as a witness, could and would testify thereto.

2.     This declaration is being submitted in support of the joint motion of Defendants Boeing, Honeywell International Inc. ("Honeywell"), and International Lease Finance Corporation ("ILFC") to dismiss on the grounds of forum non conveniens 55 wrongful death actions pending in the United States District Court for the Central District of California (the "Motion"). These 55 actions arise from the Accident. Although these cases have not yet been consolidated, they are all related cases and, pursuant to Local Rule 83-1.3 and General Order 224 §§ 5.1–5.6.6, have all been transferred to the docket of The Honorable Christina A. Snyder. The 55 actions that are subject to the Motion are identified in the List of Affected Cases attached to the Motion.

3.     As one of the lawyers representing Boeing in connection with these actions, I have reviewed the 55 subject complaints filed by plaintiffs and am familiar with the allegations contained therein. The allegations against the Defendants in the complaint filed by Alain Gambra and Madeleine Gambra in this case are essentially identical to those in the other 54 complaints.

4. As a lawyer representing Boeing, I have also become aware of a civil action initiated by approximately 500 claimants against Flash Airlines and its insurer Al Chark Insurance in France (the "French Civil Action"). This action was initiated in the *Tribunal de Grande Instance* of Bobigny, France, and the claimants have sought to recover damages caused by the deaths of their family members in the Accident. I have reviewed an English translation of the summons and untranslated supporting documents, which, upon information and belief, were served on the public prosecution department in Bobigny, France, in connection with the French Civil Action. I am therefore familiar with the allegations contained therein. Attached hereto as **EXHIBIT A** is a true and correct copy of an English translation of the summons as well as an untranslated copy of the supporting documents referenced above (collectively the "French Summons"). For the Court's convenience, the French Summons has been numbered 1-216. Pages 39-79 of the French Summons appear to identify each claimant by name, provide a birth date and an address for each claimant, and further describe each claimant as "*de nationalité française*."

5. Based on my review of the 55 complaints filed in the Central District of California and the French Summons, I am informed and believe the following:

a. 148 plaintiffs have filed claims in the cases in the United States District Court for the Central District of California, which are now pending before this Court. These 148 plaintiffs sue on behalf of themselves, the estates of 120 decedents, and 138 individuals who plaintiffs identify as decedents' "potential heirs and beneficiaries." The "potential heirs and beneficiaries" are not named plaintiffs.

b. All of the plaintiffs in the U.S. actions are represented by the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP, and all have asserted

virtually identical pleadings against Boeing, Honeywell, and ILFC. Plaintiffs assert product-liability, negligence, failure-to-warn, and breach-of-warranty claims against all three Defendants.

c. Plaintiffs' complaints contain allegations regarding plaintiffs' nationalities, plaintiffs' residences, and decedents' domiciles. From this information contained in the complaints and the French Summons, it appears that 143 of the 148 plaintiffs are French residents (142 are also French citizens). It further appears that 118 of the 120 decedents were French residents.

d. Based on a comparison of the French Summons and the complaints filed in the 55 civil actions filed in the Central District of California, it appears that 138 of the 148 plaintiffs who have filed actions in the United States have also made claims in the French Civil Action.

e. Although the complaints do not state the nationality or residence of the alleged "potential heirs and beneficiaries," most of these individuals have also made claims in the French Civil Action, and certain information regarding their nationality and residence is set forth in the French Summons. From that information, it appears that at least 116 of the 138 "potential heirs and beneficiaries" that are identified in the actions filed in the United States are citizens or residents of France. It may be true that the other 22 "potential heirs and beneficiaries" are also citizens or residents of France, but that information is not alleged in the French Summons.

f.   Plaintiffs allege in their Complaints that there were four U.S. citizens on the aircraft at the time of the accident.  Press reports indicate plaintiffs are referring to Edward, David, Paul, and Thomas Zalaznick and that these decedents were members of a family that lived in France and that they were dual citizens of the United States and France.  Attached hereto as **EXHIBIT B** is a news article from the New York Times that describes these decedents.  Based on the French Summons, it appears that claims on behalf of these decedents have been brought in France.

g.   Three of the non-French plaintiffs in the U.S. actions (Itsuko Chiya, Yasuo Chica, and Erika Caroline Correia Fouchard) bring suit on behalf of seven decedents (Philippe Fouchard, Annie Cotillon, Isabelle Fouchard, Jean-Yves Fouchard, Megumi Chiya, Ichiro Fouchard, and Natsuo Fouchard).  According to the Complaint filed in the U.S. and the French Summons, these decedents resided in France.  Attached hereto as **EXHIBIT C** is a true and correct copy of the First Amended Complaint in the case arising from the death of these decedents.  Further, according to the French Summons, it appears that claims on behalf of these decedents have been brought in France.

h.   One of the decedents in the U.S. actions (Francoise Guenezan a/k/a Lalandre) reportedly resided in Egypt.  Attached hereto as **EXHIBIT D** is a true and correct copy of the Complaint in the case arising from the death of this decedent.  According to the Complaint, this decedent is survived by French relatives (the sole plaintiff is decedent's sister who, according to the Complaint, is a French resident and citizen), and thus the decedent appears to have been of French origin.

i.   To the best of my knowledge, based on my review of the records described herein, no plaintiff, decedent, or beneficiary that is now the subject of a suit in the United States is or was an American citizen or resident.

j.   The List of Cases Affected by the Motion (which is attached as Exhibit A to the Motion) summarizes the information contained in this declaration regarding the numbers of plaintiffs and decedents at issue in the 55 cases as well as the residency and/or citizenship of the plaintiffs and decedents.

6.   As counsel for Boeing, Perkins Coie has collected or caused to be collected French media accounts relating to the Accident and its aftermath. To date, more than 100 news articles or reports have been collected. I have reviewed most, if not all, of these articles. The most recent article that we have collected regarding the Accident is dated February 10, 2005.

7.   Moreover, these press reports indicate that French governmental authorities have met with, and provided assistance to, the decedents' families. For example, according to these press reports, on September 28, 2004, a delegation of the Association for the Defense of the Victims of the Sharm El-Sheikh Accident met with the French Deputy Minister of Foreign Affairs to discuss the progress of the Accident investigation. On November 20, 2004, the victims' families met with officials of the French Bureau d'Enquete et d'Analyses ("BEA"), which is participating in the official Egyptian investigation of the Accident on France's behalf. The BEA provided an update on the progress of the accident investigation. That same day the victims' families met with Judge Andre Dando, who is heading the French criminal investigation into the Accident's cause. Judge Dando provided an update on the

status of that investigation. Finally, a number of high-ranking French officials (including the French Deputy Minister for the Rights of Victims, the Deputy Minister of Foreign Affairs, and the Mayor of Paris) attended the one-year anniversary memorial ceremony for the accident in Paris on January 3, 2005. Translations of the press reports describing these meetings are attached as **EXHIBIT E.**

8. Boeing has given me, as its counsel, permission to represent to this Court that Boeing is willing to submit, as a condition to a forum non conveniens dismissal of these actions, to personal jurisdiction in France in actions refiled by these plaintiffs, and to toll any statute of limitations that might be applicable to such refiled actions for 120 days after dismissal by this Court. Boeing is also willing, as conditions to a forum non conveniens dismissal of these actions, to make available in actions refiled by these plaintiffs in the courts of France any evidence and witnesses in its possession, custody, or control in the United States that the French courts deem relevant to the resolution of any issue before them, and to pay or cause to be paid on Boeing's behalf any damages awarded by the French courts in such refiled actions, subject to any right of appeal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Seattle, Washington this 24th day of February, 2005.

Allison Kendrick

Allison Kendrick

# Exhibit A



CABINET DE TRADUCTION BONNEFOUS
TRAVAUX D'EXPERTS TRADUCTEURS JURÉS

**PERKINS COIE LLP**
Att: Ronald A. McIntire
Allison R. Kendrick

**Case:** Gambra Family / International Lease Corporation, The Boeing company, Honeywell International Inc.

**CERTIFICATE**

**I,** the Undersigned **P. BONNEFOUS**, Passport N° 78-04-91-013547, domiciled 30 bis rue Emile Menier, 75116 PARIS, hereby certify that:

- I have been admitted as an official Translator, sworn before the Paris Court of Appeals, in 1975, in compliance with French law.
- The enclosed document bearing my seal is a true and accurate translation from French into English, to the best of my knowledge.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Drawn up in Paris,
On February 24, 2005.

OFFICIAL TRANSLATOR(H)
P. BONNEFOUS
30 bis, rue Émile-Menier
75116 PARIS FRANCE
01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

S.A.R.L. AU CAPITAL DE 111 600 €
30 BIS, RUE EMILE MENIER - 75116 PARIS - TÉL. : 01 45 53 23 13 - FAX : 01 45 53 34 19
E-MAIL : bonnefous@bonnefous.com - SIRET : 402 195 945 00017 - N° TVA FR 94 402 195 945



*Translated from the French*

Case : Flash Airlines/General File

REQUEST TO SUMMON ON A FIXED DATE

The undersigned Counsel requests from the Presiding Judge the authorisation to serve the summons hereinafter transcribed on a fixed date.

BOBIGNY, 9 December 2004
[signature]

**ORDER**

We, the Presiding Judge, *Christian Byk*
Authorize the summons on *18 January 2005 at 2pm*
Before Section 7 of the Court
*The summons should be served by the 3rd January 2005 at the latest. Signature*
[Seal of the TGI of Bobigny, France]

**SECOND ORIGINAL**

[Seal : **C.Ochoa and M.-H. Trojani**
Professional Partnership of Court Bailiffs
2 Avenue Paul Eluard
SCP C. OCHOA and M.-H. TROJANI
93000 BOBIGNY
FRANCE
Tel (33) 1 48 30 33 27
Fax (33) 1 48 30 43 28]

**SUMMONS ON A FIXED DATE**

**Before The Presiding Judge**
**Of the TGI of Bobigny**

**IN THE YEAR TWO THOUSAND AND FOUR**

[Seal of the TGI of Bobigny
Dec 10, 2004
Civil Court Registry]

**ON THE TENTH OF DECEMBER**

**AT THE REQUEST OF**

Four Copies received at the Public Prosecution Office
On DEC10, 2004
**On behalf of the Public Prosecutor**
[Seal of the Public Prosecution Office of Bobigny]
Signature



You are hereby summoned to appear on:

*January 18, 2005* At *2pm* *Section 7*

before the Tribunal de Grande Instance of Bobigny, located at 173, Avenue Paul Vaillant-Courturier, 93008 Bobigny.

You should promptly retain a member of the bar to represent you at the hearing.

If you fail to do so, you risk having judgment given against you based solely on the evidence adduced by your opponent.

The documents on which the claim is based are listed at the end of this document and have been filed at the Court Registry.

ADRESSEES of this writ of summons:

I,

The undersigned, a member of
Charles Ochoa and Marie-Helène Trojani SCP,
a professional partnership of Court Bailiffs, at the
Tribunal de Grande instance of Bobigny,
Sitting in the said Town at 2 Avenue Paul Eluard

**HAVE TRE HONOR OF INFORMING YOU:**

1. **FLASH AIRLINES COMPANY**, having its registered office and residence at 166b El Hegaz Street, Heliopolis, Cairo, Egypt, taken in the person of its legal representatives residing in such capacity at the said registered office,

2. **AL CHARK INSURANCE COMPANY,** having its registered office and residence at 15, KASR El-NIL STREET, CAIRO, EGYPT, TAKEN IN THE PERSON OF ITS LEGAL REPRESENTATIVES RESIDING IN SUCH CAPACITY AT THE SAID REGISTERED OFFICE,

**where attending and speaking to**

As stated in the record of Service



## SUBJECT-MATTER OF THE CLAIM

## 1. FACTS

On January 3rd, 2004, at 02:45:06 UTC, i.e., 04:45:06 local time, Flash Airlines flight FSH604, a Boeing 737-300, registration SU-ZCF, crashed into the Red Sea a few minutes after takeoff from Sharm-El-Sheikh International Airport in Egypt, killing the 148 persons on board, namely, 133 French tourists, including 2 with dual French and U.S. citizenship, one Moroccan national and one Japanese woman, as well as 13 Egyptian crew members, i.e., 2 pilots (the Captain and the First Officer), one observer, 4 cabin attendants and 6 off-duty crew members.

The flight was a charter flight to Roissy Charles de Gaulle Airport (CDG), France with an exclusively technical stopover at Cairo International Airport, Egypt for refuelling.

The flight was comprised in low-cost package holidays offered by the French travel agencies FRAM, JET TOURS and ZIG ZAG.

### 1.1 Flight Conditions and Progress

#### 1.1.1 Geographic and Weather Conditions of the Flight

Sharm el-Sheikh International Airport is situated at edge of the Red Sea and has two runways (22R and 22L).

The usual procedure requires that the aircraft should reach a safety altitude of at least 10,500 feet in order to clear the higher terrain located on the flight path to Cairo.

In the night of January 2-3, 2004, the weather conditions were good: temperature of 17'C, land visibility of more than 10 kilometres and a light breeze.

#### 1.1.2 Flight Progress

The First Officer was in the cockpit at 02:14:30 UTC and the Captain was in the cockpit at 02:18:14 UTC, for takeoff initially scheduled for 02:30 UTC.

The pilots did the checklists.

The Boeing 737-300 took off, from runway 22R, at 02:41:59 UTC with the standard call outs.

At about 400 feet, the landing gear and then the flaps were brought in.

At 02:42:59 UTC, at about 1,000 feet, the aircraft began a left turn at 140' in accordance with the clearance issued by the Control Tower.



At 02:43:55 UTC, the Captain asked for the autopilot to be connected.

There was no audible response from the First Officer.

At 02:43:58 UTC, the words "Not *yet,*" allegedly pronounced by the Captain or the Observer, were heard on the Cockpit Voice Recorder (CVR) - an instrument that records conversations between the pilots and the control tower as well as all sounds in the cockpit.

At 02:43:59 UTC, the autopilot, manufactured by the U.S. Company Honeywell, was engaged. This was confirmed by the First Officer.

At 02:44:01 UTC, the Captain expressed surprise while aileron movements to the right were being recorded on the Flight Data Recorder (FDR) - an instrument that records a certain number of technical parameters related to the operation of the aircraft; the airplane involved in the accident was equipped with a recent model of FDR that records 200 different parameters, including the position of the elevators, ailerons and rudder and the position of the pilot-activated flap levers, control columns and rudder-bar controls.

One second later, the autopilot disconnected and the corresponding alarm worked normally for 2.136 seconds.

The aircraft's left bank decreased slowly until the aircraft was briefly wings level before beginning an unscheduled right turn following a series of aileron movements to the right.

At 02:44:18 UTC, the aircraft's bank angle to the right was approximately 12'.

Twelve seconds later, the aircraft's bank angle was 17'.

At 02:44.41 UTC, the aircraft's bank angle was 40'.

The First Officer told the Captain three times that the aircraft was turning right. The Captain seemed surprised, according to the CVR.

At 02:44:41.5 UTC, the First Officer said *"Overbank"* At that time, the aircraft's bank angle was 50' to the right. The aircraft had reached its maximum altitude of just over 5,460 feet.

The Captain constantly repeated "Autopilot", while the First Officer reiterated his warnings concerning the overbank of the aircraft, which was accelerating.

At 02:44:58 UTC, the aircraft reached its maximum bank angle of 111' to the right.

At the same time, the FDR recorded a very large aileron movement to the left, and the aircraft began rolling back to wings level.



The Observer recommended reducing power.

The recovery handling proved inadequate.

The GPWS alarm ("Pull up, Pull up") went off just before impact.

At 02:45:05 UTC, the aircraft hit the water at 416 kt (741 Km per hour) from a pitch angle of 24', killing all on board and destroying the aircraft.

From the information available, it appears that the cockpit crew did not attempt any timely action to save the aircraft, but, on the contrary, remained inactive.

## 1.2 Post-Accident Searches

The impact was extremely violent: the body remains found are difficult to identify.

All the aircraft debris is lying 1,000 metres down.

On January 17, 2004, a first black box, the FDR, was recovered by the French aircraft-accident investigation board, Bureau Enquête Analyse (BEA), and subsequently handed over to the President of the Egyptian Investigation Committee, Mr. Quelada.

On the following day, January 18, 2004, the second black box, the CVR, was recovered by the BEA 1,037 meters down and was handed over to the Egyptian authorities in the same manner as the FDR.

The search for aircraft debris continued until the end of January 2004.

## 1.3 Opening of a Judicial Investigation

A judicial investigation was opened by Judge André Dando, Vice President in charge of judicial investigations at Bobigny, at the initiative of the Public Prosecutor.

## 1.4 History of the Aircraft

The aircraft involved in the accident was a Boeing 737-300, which at the time of the accident had accumulated 17,976 flight hours and 25,603 cycles (a cycle corresponds to a takeoff and a landing).

It was put into service on October 9, 1992, for a first inaugural flight.

The aircraft was purchased on October 22, 1992 by the U.S. Company International Lease Finance Corporation (ILFC), a subsidiary of American International Group (AIG), one of the world's leading aircraft reinsurers, and remained the property of ILFC until the accident.

Flash Airlines had been leasing the aircraft from May 14, 2001.



**1.5 Background of Cockpit Crew**

The crew on duty had flown from Venice, Italy to Sharm-El-Sheikh on January 2, 2004, and had then had 24 hours' rest at Sharm-El-Sheik.

(a) The Captain

The Captain of the aircraft involved in the accident, Abdallah Khedr, was a former general in the Egyptian air force.

He was hired by Flash Airlines on February 16, 2003.

He was trained on a ROYAL AIR MAROC simulator at Casablanca. During this training course he did 20 hours of "Fixed Based Simulator" training, i.e., sessions on a computerized fixed simulator in order to learn the circuits of the aircraft and 32 hours of "Full Flight Simulator," i.e., a full-scale simulator that reproduces the movements of an aircraft.

After a series of flights (number unknown) with an instructor at his side in the cockpit, Mr Khedr became a qualified "Captain" without prior experience as a co-pilot.

At the time of the accident, Captain Abdallah Khedr had a total flight time of 474 hours on B737.

(b) The First Officer

The young First Officer Shafee Anr had taken a training course in the United States, where he obtained his ATPL (Airline Transport Pilot Licence) on propeller aircraft.

At the time of the accident, he had a total flight time of only 242 hours on B737.

(c) The Observer

The observer was apparently either a young FLASH AIRLINES trainee pilot taking an aircraft familiarization flight, or a pilot instructor with the airline.



## 2. DISCUSSION

### 2.1 The Unlimited Liability of the Air Carrier, Flash Airlines

#### 2.1.1 Applicable Law

The liability rules defined in the following instruments (forming the so-called *"Warsaw I"* system), as opposed to the 1999 Montreal Convention - which was not in force on the date of the accident (the so-called *"Warsaw II"* system), are applicable:

- The Warsaw Convention for *"the unification of certain rules relating to international carriage,* " dated October 12, 1929, which entered into force on February 13, 1933 and was ratified by France on November 15, 1932 and by Egypt on September 6, 1955;

- The Additional Protocol of The Hague, dated September 28, 1955, which was ratified by France on May 19, 1959 and by Egypt on April 26, 1956 and which entered into force in those two countries on August 1, 1963.

- European Regulation No. 2027/97 of October 9, 1997 on air carrier liability in the event of accidents, which adapts the Warsaw Convention to the European Union.

The Warsaw I system applies to international carriage of persons, whether for reward or free of charge, regardless of the nationality of the parties, where *"the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two High Contracting Parties or within the territory of a single High Contracting Party if there is an agreed stopping place within the territory of another State, even if that State is not a High Contracting Party, " pursuant* to Article 1(2) of the Warsaw Convention as amended by the Hague Protocol.

In the present case, the carriage was indeed international, the places of departure (Egypt) and destination (France) being situated within the territories of two Contracting States.

The liability of FLASH AIRLINES is therefore governed by the Warsaw Convention and its additional protocols and, as will be specified later, by the above-mentioned 1997 European Regulation.

The application of this system is exclusive of any other text for all claims for compensation directed against an international air carrier, no matter who brings the claim or by what right it is bought.

#### 2.1.2 The system of unlimited liability of the air carrier FLASH AIRLINES

- Article 17 of the Warsaw Convention states:

  *"The carrier is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft."*

  In the present case, all 148 passengers and crew on board the aircraft are dead.

  FLASH AIRLINES is therefore liable for their death.



- The carrier cannot avail itself of the provisions of Article 22 of the Warsaw Convention as amended by the Hague Protocol and by Additional Protocol No. 2 of Montreal dated September 25, 1975, which establish the principle of liability limited to an amount corresponding to 16,600 SDRs per seat, i.e., **19.340 euros** per seat.

Indeed, there are two alternative cases in which the limit of liability is removed:

- Absence of a passenger ticket or irregularity of the ticket with respect, e.g., to the information to be provide to the passenger (Article 3 of the Warsaw Convention as amended and Article 6 of the European Regulation);

- Wilful misconduct (Article 25 of the Warsaw Convention as amended).

Only one of the two cases needs to occur for the carrier to be prevented from relying on the limitation of liability under Article 22 of the Warsaw Convention.

In the present case, there is no need to expand on the wilful misconduct of FLASH AIRLINES, which is already likely to be established even though the information available is not yet exhaustive. Indeed, the factual report shows that the pilots sat back as passive observers and let the airplane bank and nosedive, only taking recovery action when the airplane was already irrecoverable.

All the Court has to do to find Flash Airlines entirely liable without limitation is to observe that FLASH AIRLINES did not provide the airplane's passengers with the information required by law.

- As a preliminary remark, it should be recalled that, as stated in the recitals of the above-mentioned 1997 Regulation, the limitation of liability established by the Warsaw Convention is not only unfair but also obsolete for many years on an international level.

Thus, well before the entry into force of the Warsaw II system, which removes all limits of liability except in cases where the air carrier proves that it was not responsible for the accident, the world's biggest carriers had, pursuant to a recommendation by the European Parliament, as part of the IATA accords, waived from as early as 1995 the limits of liability established by the Warsaw 1 system.

By so doing, there were merely taking official notice of the case-law of most western countries, which, on different grounds, excluded any limitation air carrier liability in cases involving fatalities.

In France, the Court of Cassation excluded the limitation of liability laid down by the Warsaw Convention, in cases involving fatalities, by using the concept of wilful misconduct *in abstracto,* which, in fact, implies a duty of safety: under this concept, the pilots' behaviour is assessed in relation to the standards of behaviour of *a bon père de famille* (reasonable man), in other words, those of a careful pilot who anticipates and avoids al] risk situations.



In Germany and Italy, the limitation bas been deemed to be unconstitutional. Spain has followed the French system. The United States has used several methods to refuse to give effect to limitations of liability.

This avenue was also taken by the European legislature in the above-mentioned 1997 Regulation.

The European legislature legislated along these lines both directly for European airlines and indirectly for non-EU operating to or from the European Union.

Lastly, the recent Montreal Convention, which came into force after the Sharm El Sheikh accident, definitively removed all limitation of air carrier liability.

- Inadequate information given by FLASH AIRLINES to the airplane's passengers:

Article 3.1.(c) of the Warsaw Convention as amended by the Hague Protocol requires air carriers to include in the tickets they issue to passengers:

*"a notice to the effect that, if the passengers' journey involves an ultimate destination or stop in a country other than the country of departure, the Warsaw Convention may be applicable and that the Convention governs and in most cases limits the liability of carriers for death or bodily injury and in respect of loss of or damage to baggage."*

The above passenger information, required by the Warsaw Convention, is imposed under penalty of the carrier's being unable to avail itself of the limit of compensation set by the Convention.

Indeed, Article 3(2) of the Warsaw Convention as amended by the Hague Protocol provides: *"if the ticket does not include the notice required by paragraph 1(c) of this Article, the carrier shall not be entitled* Io *avail itself of the provisions of Article 22."*

That provision rightly appeared inadequate and imprecise.

That is why Article 6 of the 1997 European Regulation requires non-European air carries operating to or from an EU country and purporting to benefit from any limitation of liability to provide every passenger with not only a ticket but also a form setting out the legal and quantitative elements of such limitation - the clauses, if any, printed on the actual ticket not being sufficient to satisfy the requirement.

Hence, if a foreign carrier fails to satisfy the duty to inform, it finds itself in the same situation as European carriers and is not entitled to avail itself of any limitation of liability.



The duty to inform was not satisfied by FLASH AIRLINES and, consequently, this carrier, operating to the European Union, cannot, pursuant to the provisions of the Warsaw Convention and/or the 1997 European Regulation, validly rely on any limitation of liability.

Accordingly, FLASH AIRLINES must compensate the whole of the damage suffered by the plaintiffs.

## 2.2 COMPENSATION - INDEMNIFICATION

All the heads of damage and compensation described below are addressed subject to further details which will be the subject of subsequent submissions.

It is specified in particular that the table of claims appended to the operative part [of this summons] will be completed.

### 2.2.1 The right for the families of victims of the Sharm-El-Sheikh crash to recover full compensation

(a) Compensation for bodily and mental harm in the case of unintentional duress

The right to protection from physical and mental injury through intentional or unintentional duress is a basic human right.

This right is affirmed and guaranteed both by the European Convention for the Protection of Human Rights and Fundamental Freedoms of November 4, 1950 and by the Universal Declaration of Human Rights.

The compensation requirement recognized by positive law is put into perspective by progressive case-law involving the necessity to compensate in full all the heads of damage suffered by direct and indirect victims.

(b) Specificity of the right to full compensation in cases of collective air accidents

The lives of the passengers on the flight were suddenly unjustly curtailed at a time of individual and family happiness in returning from Christmas holidays.

The passengers' families had their lives shattered: they went through a time of absolute anguish and dread as they waited for news of the crash. They are now in a collective horrific situation, since they cannot even start a mourning process because the bodies have not been identified and returned and the causes of the accident have not been determined.

Fair and necessary compensation in full involves an in *concreto* approach.



It is accepted that compensation in matters relating to collective air accidents requires a specific approach different from the usual compensation methods under the ordinary rules of law in matters relating to individual intentional or unintentional duress.

The specific approaches used after serial dramas in connection with compensation funds or in cases of collective accidents of any kind in connection with specific devices will be mentioned for the record.

The indemnification of victims of air accidents must take account of all these developments, both judicial and extrajudicial, as well as settlement compensation standards on a national and international level.

This objective legal analysis is strengthened insofar as need be by the political positions taken by France on victims' rights as conveyed by the *Secrétariat au droit des victimes* (Secretariat for Victims' Rights), which highlighted the weaknesses of French indemnification and suggested *"placing the bar very high. " (See,* in particular: Interview given by Nicole GUEDJ in the July-August 2004 issue *of Turbulences; Secretariat d'Etat au droit des victimes, premier programme d'action,* September 29, 2004, press file, pages 8 and 17, annexes; « Victimes par ricochet : de nouveaux préjudices non économiques réparables, » C. LIENHARD - MF STEINLE-FEUERBACH, AJ *Famille,* Sept. 2004, dossier « La Famille face aux accidents de la vie, » page 9 *et seq.)*

(c) Regarding the methodology for compensating damages suffered by beneficiaries of passengers killed in the crash

For the sake of clarity, the heads of damage are set out below based on the nomenclature of heads of damage used in the 2003 report on compensation for bodily injury *(Conseil National de l'Aide aux Victimes,* Paris, Ministry of Justice, 2003), in taking into account, of course, the specificity of the collective aspect and the aim of full compensation.



### 2.2.2 Presentation of the nomenclature of heads of damage of victims of the Sharm-El Sheikh air accident

(a) Economic losses

*(i) Funeral and burial expenses*

The right to compensation for all funeral and burial expenses is not disputable.

The compensation must be paid on the basis of the amounts actually incurred corresponding to the family tradition and the family's religious practices.

To the extent that the bodies have not been identified and returned, account should also be taken of future expenses to be incurred.

*(ii) Price of the holiday*

The heirs are entitled to claim a full refund of the price of the holiday, since the contract was not performed.

It should be observed that for reasons *of force majeure* and, in any event, beyond the heirs' control, it is physically impossible, in view of the particular circumstances of the air accident and its extreme violence, for the heirs to prove [the price of the holiday] by producing the evidentiary contractual instrument.

The Court is therefore requested to fix the value of the non-performance of the tour operator's obligation at €1,000 per deceased person.

*(iii) Miscellaneous losses*

The heirs are also entitled to claim compensation for loss of clothes, jewellery and personal effects, such as cameras, holiday notes, and baggage.

For the reasons set out above, the value of all such chattels and personal effects will be fixed at €4,000 per deceased person.

*(iv) Miscellaneous expenses*

The heirs had to meet expenses resulting from. the death [of the deceased persons], comprising not only funeral expenses but also all expenses relating to the attempt to find and identify the bodies, the contacts that had to be made in order to, obtain information, the documentary searches linked with administrative requirements at a time of great suffering and anguish in order to sort out, to the extent possible, the administrative situation of the deceased persons.



These are unquestionable material losses, which we hope will not be meanly challenged, since they so clearly come within the realm of the obvious.

In respect of the value of the initial expenses necessitated by the death and linked with its sudden occurrence, the Court is requested to award an amount *of €20,000.*

This amount has been assessed on the basis of the statutory lump-sum set by the above-mentioned 1997 Regulation.

It should be pointed out that Article 5 of the *1997* Regulation requires the carrier to make an advance payment of not less than 15,000 SDRs, i.e., about €20,000, to the next of kin in the days following the accident, in order to allow the family to meet the initial expenses.

Those initial expenses constitute material losses for the heirs.

It is therefore necessary to specify the rules governing such advance payments.

The advance payment is deductible from material losses only; it is not deductible from "moral damage" [pain and suffering, mental distress or emotional injury]. In no event is it refundable, to the extent that lump-sum material losses are to be considered an established fact.

The amount so awarded comes in addition to losses and damage other than initial expenses.

The legal basis for awarding the initial expenses borne by the families, estimated on a lump-sum basis, is an immediately applicable Community provision: it must therefore be awarded in full to the heirs.

We shall also cite in support of this analysis the judgment given by the Court of first instance of Madrid on 3 July 2002, in the wake of an air accident in Sweden:

Court of first instance No. 67 of Madrid, Case No. 19/2002, Judgment dated July 3, 2002; seventh ground: "*...without it being appropriate to make any deduction whatsoever for the 22,010 euros that the defendant maintains were already received by the plaintiff* on *January 13, 2000, given that,* on *the one hand, she claims that CROSSAIR paid the cost of the funeral, which took place* in *Zurich, requiring the family to travel there, as well as the cost of incinerating the victim, and, on the other hand, the amount, if any, exceeding such expenses should be allocated also* to *moral damages, in addition to or apart from those which are assessed here in that respect.* "



*(v) Annual commemorative ceremonies*

It is normal and essential that the bereaved families should have the possibly of getting together once a year for a commemorative ceremony at Sharm el Sheikh.

This concerns the immediate family (parents, children, brothers and sisters), for one generation.

A lump-sum of €50,000 (€2,000 x 25 years) per beneficiary is therefore requested.

*(vi) Inheritance expenses*

Because of the death of the deceased person, his or her heirs and legatees are confronted with inheritance expenses that would have been avoided if the deceased person had been able to make other financial arrangements for his or her estate.

Depending on the financial circumstances of the families, this head of damage should be compensated *in concreto* based on the lost-opportunity doctrine and in taking into account the fact that air carriage is statistically presented as a particularly safe way of travelling.

*(vii) Loss of earnings, resources and income*

The spouses or partners, irrespective of the nature of the consortium, the adult or minor children, or anyone else who can prove a maintenance obligation or a natural obligation already fulfilled or promised or a potentiality to be assessed as loss of a chance are entitled, within the framework of full compensation, to indemnification for this economic loss.

The assessment will be presented in concreto.

In order to comply with the indemnificatory principle of full compensation, the capitalization rate should be current and the 1986 table cannot be referred to.

The actuarial tables are those published by INSEE.

The obsolescence of reference to the 1986 table has been affirmed by the courts in recent appellate judgments:

- CA Rennes, May 31, 200, Jurisdata No. 1205611
- CA Paris, Division 17 Section A, October 17, 2002, RG 2001/08845
- CA Bordeaux, Misdemeanour Division 5, March 17, 2003, RG 02/00760
- CA Aix-en-Provence, Division 10, April 10, 2003, RG No. 18469, No. 99 07969, No. 1/18545



- CA Paris, 1 B, June 10, 2004, No. 2002/04090.

It will further be pointed out that in the proposals made by the Secrétariat d'Etat au droit des victimes, Council of Ministers announcement dated 29 September 2004, it is stated on page 17, under the heading "Improvement of the manner of indemnifying victims," "the scale currently being used to convert a loss of income into capital is based on actuarial tables and on an obsolete rate of interest that are prejudicial to victims (thus the life expectancy taken into account is the one applying in the 1960s)."

The formal inter-ministerial consultations that have already begun with the MINEFI [Ministry of Finance, Economy and Industry] and the Health Ministry will therefore continue with a view to a decree in Council of State determining a scale of capitalization and the parameters for re-updating it.

*(viii) Economic loss of non-dependent beneficiaries*

As part of their full compensation, beneficiaries holding an indemnificatory debt claim against the deceased person will be led to seek compensation for the impoverishment caused by the responsible party to the assets of the deceased person [and], possibly, compensation for loss of growth of the assets.

The claims will be made *in concreto.*

*(ix) Compensation and indemnification for the financial consequences of functional mental disorder of indirect victims*

A certain number of indirect victims are suffering from a post-traumatic stress syndrome involving a functional mental disorder with economic repercussions linked with temporary or permanent unfitness for work or loss of employment, difficulties in keeping their jobs or inability to sit exams or progress in their careers.

This head of damage resulting from post-traumatic stress will be established by means of expert opinion.

*(x) Economic loss concerning family firms or certain employers*

Some deceased victims were in charge of, and the intellectual driving force behind, family firms that have been weakened or are even doomed to disappear.

Sometimes the employer of a victim has sustained damage through loss of his recruitment and/or training investment.

The factors involved in this head of damage will be shown *in concreto.*



(b) Non-economic losses

(i) *Moral damage*

The extent of the "moral damage" suffered by the beneficiaries is indisputable.

It is a matter of emotional distress, which brooks no possible discrimination based on nationality, residence, gender or religion.

It is accepted that the extent of this damage is greater in air disasters than it is in other circumstances. (TGI Colmar, CIVI, July 2, 2002, D., 1993, p. 208; C. LIENHARD, MF.STEILE-FEUERBACH, "Victimes par Ricochet: de nouveaux prejudices non-économiques," AJ Famille, Sept. 2004, dossier "La Famille face aux accidents de la vie," page 9 et seq.)

The beneficiaries are therefore entitled, depending on their relationship or closeness [to the deceased person], to request compensation and indemnification up to the amounts shown in the table appended to the operative part [of this summons].

(ii) Loss of affection

Loss of affection, known as "loss of assistance" in Europe, is a specific head of damage.

Compensation for loss of affection does not concern emotional shock, mourning the sudden loss of the deceased person, but the absence of the deceased person during the rest of a life expectancy.

It is not a matter of bereavement but of loss of affection, companionship, aid, advice and assistance during the life expectancy of the victim or the beneficiary, whichever is older.

The principle of full compensation requires that this head of damage be taken into account above and beyond the emotional shock, which lasts several months.

Loss of aid, companionship and affection lasts the entire expectancy of a normal life.

Apart from suffering emotional shock, the widow, widower or partner and children, grandparents and siblings, or other close relatives who have suffered damage, have been deprived of the daily departed and the companionship of the departed, of his or her company both for the actions of ordinary life and, more generally, for all actions that are basically carried out through **the social relationship** arising from the presence of the departed, if only, for example, organizing holidays and leisure activities, bringing up the child, etc.

It is in respect of this singular social relationship that the child, brother, etc. will find themselves deprived of the assistance of a father, sibling, etc.



This loss is not disputable as to its principle and, unlike "moral damage" which is of a psychological nature, lasts for a period of time linked with life expectancy and with the intensity of the social relationship.

Thus, for a minor child, the loss will be greater during his or her minority or during the time he or she might have lived with the deceased parent.

The criteria used by the beneficiaries are set out *in concreto* based on the family situation of each of them.

As far as the calculation of such loss is concerned, the following method is proposed:

Account should be taken of the age of the beneficiary and the age of the deceased person.

Account should then be taken of life expectancy according to the most relevant reference table.

The damage constituted by loss of affection is calculated by multiplying life expectancy by a yearly indemnity like the one accepted in positive law and bearing the most similarities to recognized judicial criteria, notably by taking account of the temporal and lifelong nature of the loss.

It is inspired by the amount of the indemnity generally granted for deprivation of the actions of ordinary life and loss of amenity during each month of total incapacity for work. This criterion and loss of affection have the same duration aspect.

In more concrete terms, the approach adopted in this matter is to use as a basis of calculation the value of the SMIC [index-linked guaranteed minimum wage] as at 1 January 2004, i.e., €545.25 per month, for the loss suffered by a spouse, a parent or an only sibling; a quarter of the SMIC, i.e., €272.62 (sic), for a non-only sibling or a grandparent or grandchild; and an eighth of the SMIC, i.e., €136.31 (sic), for any other close relative or next of kin.

*(iii) Non-economic post-traumatic functional mental disorder*

Owing to the psychological impact of the death of a close relative, particularly when several members of a family have died at the same time, it is impossible for some beneficiaries to continue a normal life as regards their present or future family and/or social relationships as a whole.

In those cases, there exists a functional mental disorder caused by post-traumatic stress, which will be established by means of expert opinion.



*(iv) Loss of lineage*

For some families, an entire family branch disappeared in the Sharm-El-Sheikh crash, leaving, as beneficiary, a spouse or parent totally and definitively alone, since he or she is no longer of an age to have children or is unable to have descendants because he or she has lost all his or her children or grandchildren.

This is a specific loss of family identity over several generations involving a possible loss of social identity though loss of passing on of the name.

These situations will be set out *in concreto.*

(c) Anguish and pain and suffering of the deceased person

All the passengers on flight FSH604 experienced a horrific and terror-stricken moment between the time they perceived the risk of crashing and the time of the actual crash.

That is indisputable.

The deceased passengers (sic) necessarily have a personal claim for damages for harm, including the physical pain and suffering and emotional distress suffered by the deceased victim.

The psychological sideration linked with the traumatic penetration of the anguish of death and of loss of one's family during a flight, which should have been completely safe, after happy times on the way back from the Christmas holidays, must necessarily be taken into account and gives rise to entitlement to compensation of the same intensity.

It is pointed out that according to rulings by the Court of Cassation that are now established precedents (Cass. Civ., 01/18/1943, DC 1943, p. 45; Cass. Civ., 01/09/1944, DA 1944, p. 106) affirmed by the Mixed Division [*ad hoc* bench consisting of a minimum of 13 judges from at least three divisions of the Court of Cassation, which hears cases that raise particularly important issues of law] (Cass.. Mixte, 04/30/1976, D. 1977, p. 1985), the principle that actions for damages for material and/or moral damage suffered by victims before their death pass to their heirs is now beyond dispute.

More specifically, the Court of Cassation considers that such actions pass to the heirs provided that a right to compensation entered the deceased person's assets before his or her death, regardless of whether the action is brought before or after his or her death (Cass. Crim., 10/06/1977, Gaz. Pal. 1978 1.33, Cass. Civ. 2, 03/11/1981, Gaz. PaL 1981 pan. 240).



The relevance of this position on the implementation of indemnificatory debt-claims is confirmed by legal authors (P. Letournau, Droit de la responsabilité et des contrats, Dalloz action 2004/2005, No. 984, F. Chabas, Leçons du droit civil, 9th edition, Monchrétien No. 607).

As previously stated, damage suffered during an air accident is necessarily no ordinary damage.

It is accepted at present that the quanta should rightly be increased in special circumstances involving serious malfunctions, especially in terms of safety.

The heirs are therefore entitled to request an award of €150,000 per deceased person.

The legal heirs who file that claim declare that they will take care of allocating the indemnities that come into the estate according to the rules of inheritance law.

### 2.2.3 Special Procedures for Inheritance Actions

The indemnities payable to the estate will be allocated, as an asset of the estate, jointly and severally to the heirs in their capacity as such. The heirs may recover them at any time from the persons liable, on proof of their status and rights.

### 2.2.4 Reservation of actions

Since the beneficiaries who are plaintiffs in the instant case are entitled to recover compensation for all economic losses, they hereby request to Court to place on the record that they reserve the right to bring another action for compensation for such losses. Any amount awarded as the case stands will be an interim award.

Exactly the same will apply to actions for damages that the beneficiaries are also entitled to recover for bodily injury and/or emotional distress.

### 2.2.5 Non-recoverable costs

The plaintiffs were obliged to incur considerable non-recoverable costs: fees to attorneys, avionic and economic specialists, and lawyers specialised in foreign law, travel expenses and translation fees for translating many documents in Arabic or English.

It would be unfair to leave them with the burden of such costs.

Consequently, the plaintiffs will be awarded the sum of €2,000 PER PLAINTIFF under Article 700 of the New Code of Civil Procedure.

It should be placed on the record that the plaintiffs reserve the right to bring any other actions against any third parties that are not parties to this case.



**ON THOSE GROUNDS,**

On the basis of (i) Articles 17 and 3.2 of the Warsaw Convention as amended by the Hague Protocol of 28 September 1955, and (ii) Articles 6(3), 3(l) (a) and (b), 3(2), 5(l), and 5(2) of Council Regulation (EC) No. 2027/97 of October 9,1997 on air carrier liability in the event of accidents,

The Court is requested to:

- FIND FLASH AIRLINES liable, as carrier, for the Boeing 737/300 air accident that occurred at Sharm El Sheikh on January 3, 2004 and resulted in the death of all on board;

- FIND THAT, having failed to show that it duly informed every passenger of its claim, if any, to the application of a limitation of liability under an international convention or Community regulation, FLASH AIRLINES cannot avail itself of any limitation of liability and shall be required to compensate all heads of damage claimed for in this action;

- Hold that the material and moral damage and pain and suffering of the deceased victims themselves, taken in the person of their legal heirs, are compensable and should be compensated, and that the amounts will enter into their respective estates;

- Hold and adjudge that the indemnities payable to the estate shall be allocated, as an asset of the estate, jointly and severally to the heirs in their capacity as such, and that the heirs may, on proof of their status and rights, recover them, at any time from the persons liable;

- Hold that the beneficiaries' personal loss of affection and assistance is compensable in proportion to the life expectancy of the victim or the beneficiary, whichever is older, as well as loss of lineage, as the case may be;

- Hold that, having regard to the nature and circumstances of the disaster and its consequences, especially in terms of media attention, the personal moral damage of the beneficiaries is of an exceptional nature;

- Hold that the economic losses will be calculated on the basis of tables updated in relation to the capitalization rate (i.e., not more than 3 per cent) and to life expectancy, in accordance with current case-law;

- Place on the record that since the beneficiaries who are plaintiffs in the instant case are entitled to recover compensation for all economic losses, they reserve the right to bring another action for damages in respect of such losses, and that any amount awarded as the case stands shall be an interim award;

- Place on the record that since the beneficiaries who are plaintiffs in the instant case are entitled to recover compensation for bodily injury and/or emotional distress, they reserve the right to bring another action for damages in respect of such injury and/or distress, and that any amount awarded as the case stands shall be an interim award.



- Consequently, ORDER FLASH AIRLINES and its insurer AL CHARK INSURANCE Company, jointly and severally, to pay the plaintiffs, as compensation for the heads of damage put forward, the sums shown in the table appended hereto, subject to supplementing them and bringing them up to their full amount;

MAKE THE AWARDS TO THE PLAINTIFFS IMMEDIATELY ENFORCEABLE NOTWITHSTANDING THE EXERCISE OF ANY LEGAL REMEDY AND WITHOUT SECURITY;

- ORDER FLASH AIRLINES and its insurer AL CHARK INSURANCE Company, jointly and severally, to pay each of the plaintiffs €2,000 in respect of non-recoverable costs, under Article 700 of the New Code of Civil Procedure; and

- ORDER FLASH AIRLINES and its insurer AL CHARK INSURANCE Company, jointly and severally, to pay the entire court costs, to Maître Michel PITRON, attorney at the PARIS Bar, pursuant to Article 699 of the New Code of Civil Procedure.

**WITHOUT PREJUDICE**



AFF. : FLASH AIRLINES / DOSSIER GENERAL

REQUETE AFIN D'ASSIGNER A JOUR FIXE

L'Avocat soussigné sollicite de Monsieur le Président du Tribunal l'autorisation de délivrer à jour fixe, en raison de l'urgence, l'assignation ci-après transcrite.

BOBIGNY, le 9 Décembre 2004

ORDONNANCE

Nous Président, Christian Ozyk
Autorisons à assigner pour le 18 janvier 2005 à 14 h
Devant la 7e Chambre du Tribunal
l'assignation devant être délivrée pour le 3 janvier 2005 au plus tard

TRIBUNAL de GRANDE INSTANCE de BOBIGNY

SECOND ORIGINAL

SCP C. OCHOA et M.-H. TROJANI
Huissiers de Justice
2 Avenue Paul Eluard
93000 BOBIGNY
Tél. : 01 48 30 33 27 - Fax : 01 48 30 43 28

***ASSIGNATION A JOUR FIXE***

Devant Monsieur le Président
du Tribunal de Grande Instance de BOBIGNY

L'AN DEUX MILLE QUATRE

T.G.I. BOBIGNY
10 DEC. 2004
GREFFE CENTRAL CIVIL

et le Dix Décembre

A LA REQUÊTE DE :

Reçu copie au Parquet
en...4.......exemplaires
Le......10 DEC. 2004........
P/Le Procureur de la République

PARQUET DE BOBIGNY



OFFICIAL TRANSLATOR(H)
P. BONNEFOUS
30 bis, rue Émile-Menier
75116 PARIS FRANCE
01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

Il vous est donné assignation à comparaître pour le :

18 Janvier 2005 A 14 HEURES 7ème chambre

devant le Tribunal de Grande Instance de BOBIGNY, sis 173, Avenue Paul Vaillant-Couturier, 93008 BOBIGNY.

Vous devez au plus tôt charger un avocat inscrit au Barreau de vous représenter à cette audience.

A défaut,, vous vous exposeriez à ce qu'un jugement soit rendu à votre encontre sur les seuls éléments fournis par votre adversaire.

Les pièces sur lesquelles la demande est fondée sont indiquées à la fin du présent acte, et sont déposées au greffe du Tribunal

DESTINATAIRES de la présente assignation :

**NOUS,** J'ai, SCP Charles OCHOA et Marie-Hélène TROJANI Huissiers de Justice Associés, près le Tribunal de Grande Instance de Bobigny, Séant dite Ville, 2 Avenue Paul Eluard, l'un d'eux soussigné,

**AVONS L'HONNEUR D'INFORMER :**

1. **LA COMPAGNIE FLASH AIRLINES,** ayant son siège social et résidence 166b El Hegaz Street Heliopolis, LE CAIRE, Egypte, prise en la personne de ses représentants légaux demeurant ès qualité audit siège social,

2. **LA COMPAGNIE AL CHARK INSURANCE , ayant son siège social et residence 15, KASR EL-NIL STREET , LE CAIRE, EGYPTE, PRISE EN LA PERSONNE DE SES REPRESENTANTS LEGAUX DEMEURANT ES QUALITE AUDIT SIEGE.**

où étant et parlant à Comme il est dit en l'acte de Signification



OFFICIAL TRANSLATOR(H)
P. BONNEFOUS
30 bis, rue Émile-Menier
75116 PARIS FRANCE
01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

# OBJET DE LA DEMANDE

## 1. FAITS

Le 3 janvier 2004, à 2h 45 min 06 s Temps universel (ci-après « *UTC* »), soit à 4 h 45 min 06 s heure locale, le Boeing 737-300, immatriculé SU-ZCF, vol FLASH AIRLINES FSH 604, s'est abîmé en Mer Rouge, quelques minutes après son décollage de l'aéroport international de Sharm-El-Sheikh (Egypte), causant la mort de ses 148 occupants, soit 133 touristes français - dont 2 bi-nationaux franco-américains - , une ressortissante marocaine et une japonaise ainsi que 13 membres d'équipage égyptiens, soit deux pilotes en service (le Commandant de bord et le copilote), un observateur, quatre personnels navigants de cabine et six membres de l'équipage relevé.

L'avion effectuait un vol charter à destination de l'aéroport Roissy Charles de Gaulle (France) avec une escale exclusivement technique à l'aéroport du Caire (Egypte) pour un avitaillement en kérosène.

Ce vol était inclus dans des formules de voyages à bas prix proposées par des agences de voyages françaises, FRAM, JET TOURS et ZIG ZAG.

### 1.1 Conditions et déroulement du vol

#### 1.1.1 Conditions géographiques et météorologiques de l'accident

L'aéroport international de Sharm-El-Sheikh est situé au bord de la Mer Rouge et dispose de deux pistes (22R et 22L).

La procédure habituelle implique que l'avion atteigne une altitude de sécurité d'au moins 10.500 pieds pour franchir le relief qu'il doit survoler pour rejoindre le Caire.

Dans la nuit du 2 au 3 janvier 2004, les conditions météorologiques étaient favorables : température de 17°c, visibilité de terrain de plus de 10 kilomètres et brise légère.

#### 1.1.2 Déroulement du vol

Le copilote était en poste à 2 h 14 min 30 s UTC, le Commandant de bord à 2 h 18 min 14 s UTC, pour un décollage initialement prévu à 2 h 30 min UTC.

Les « *check list* » ont été effectuées par les pilotes.

Le BOEING 737-300 a décollé, de la piste 22R, à 2 h 41 min et 59 s UTC avec les annonces standard.

Vers 400 pieds, le train puis les volets ont été rentrés.

A 2 h 42 min 59 s UTC, vers 1000 pieds, l'avion a commencé un virage à gauche au cap 140°conformément à la clairance délivrée par la Tour de contrôle.



A 2 h 43 min 55 s UTC, le Commandant de bord a demandé le branchement du pilote automatique.

Il n'y a pas eu de réponse audible du copilote.

A 2 h 43 min 58 s UTC, il a été entendu sur le *Cockpit Voice Recorder* (ci-après « *CVR* »: instrument enregistrant les conversations échangées entre les pilotes et la tour de contrôle ainsi que tous les bruits du cockpit) un « *pas encore* » qui aurait été prononcé par le Commandant de bord ou l'observateur présent dans le cockpit.

A 2 h 43 min 59 s UTC, le pilote automatique, fabriqué par l'américain HONEYWELL, a été activé ce qui a été confirmé par le copilote.

A 2 h 44 min 01 s UTC, le Commandant de bord a exprimé sa surprise alors que des mouvements d'ailerons vers la droite étaient enregistrés sur le *Flight Data Recorder* (ci-après « *FDR* » : instrument enregistrant un certain nombre de paramètres techniques liés au fonctionnement de l'avion. L'appareil accidenté disposait d'un modèle récent de FDR enregistrant environ 200 paramètres différents et notamment la position des gouvernes de profondeur, des ailerons et de la direction, ainsi que celle des commandes de palonniers, des manches et des volants actionnés par les pilotes.)

Une seconde plus tard, la déconnexion du pilote automatique s'est produite et l'alarme correspondante a normalement fonctionné pendant 2,136 secondes.

L'inclinaison à gauche de l'avion a diminué lentement jusqu'à ce que l'avion se retrouve les ailes horizontales pendant un court instant avant d'entamer un virage à droite non prévu par suite de mouvements d'ailerons successifs vers la droite.

A 2 h 44 min 18 s UTC, l'avion était incliné à droite de 12 ° environ. 12 secondes plus tard, l'inclinaison de l'avion était de 17 °.

A 2 h 44 min 41 s UTC, l'inclinaison de l'avion était de 40°.

Le copilote a indiqué à trois reprises au Commandant de bord que l'avion tournait à droite. Le Commandant de bord a semblé surpris ainsi qu'il résulte du CVR,

A 2 h 44 min 41,5 s UTC, le copilote a indiqué « *inclinaison excessive* ». A cet instant, l'inclinaison de l'avion était de 50° à droite. L'avion a atteint son altitude maximum légèrement supérieure à 5460 pieds.

Le Commandant de bord n'a cessé de répéter « *Pilote Automatique* » alors que le copilote réitérait ses avertissements sur une inclinaison excessive de l'avion qui s'accélérait.

A 2 h 44 58 s UTC, l'avion a atteint son seuil d'inclinaison maximum de 111° à droite.

Au même instant, le FDR a enregistré un très important mouvement d'ailerons vers la gauche et l'avion a commencé à revenir vers une position horizontale.



L'observateur a conseillé la réduction des gaz.

La manœuvre de récupération s'est avérée insuffisante.

L'alarme du GPWS ("*Pull up, Pull up*") s'est déclenchée juste avant l'impact.

A 2 h 45 min 05 s UTC, l'avion a percuté l'eau à 416 kt (741km/h) sous un angle de piqué de 24° causant la mort de tous les occupants et la destruction de l'appareil.

Il résulte des informations disponibles que l'équipage aux commandes n'a pas tenté une quelconque action de sauvetage de l'avion en temps utile, mais est resté au contraire inactif.

## 1.2    Recherches consécutives à l'accident

L'impact a été extrêmement violent : les restes de corps retrouvés sont difficilement identifiables.

L'ensemble des débris de l'appareil se trouve à 1000 mètres de fond.

Le 17 janvier 2004, une première boîte noire, le FDR a été récupérée par le BEA français (Bureau Enquête Analyse), puis remise à Monsieur Quelada, Président de la Commission d'enquête égyptienne.

Le lendemain, 18 janvier 2004, la seconde boîte noire, le CVR a été récupérée par le BEA par 1037 mètres de fond. Le BEA l'a ensuite remise aux autorités égyptiennes dans les mêmes conditions que le FDR.

Les recherches de débris de l'appareil se sont poursuivies jusqu'à la fin janvier 2004.

## 1.3    L'ouverture d'une information judiciaire

Une instruction a été ouverte devant le juge André Dando, Vice-président chargé de l'instruction de Bobigny, à l'initiative de Monsieur le Procureur de la République.

## 1.4    Historique de l'appareil

L'appareil accidenté est un Boeing 737-300 qui totalisait 17.976 heures de vol et 25.603 cycles au jour de l'accident (un cycle correspond à un décollage et un atterrissage).

Il a été mis en circulation le 9 octobre 1992 pour un premier vol inaugural.

Le 22 octobre 1992, la société américaine INTERNATIONAL LEASE FINANCE CORPORATION (ILFC), filiale de la société AMERICAN INTERNATIONAL GROUP (AIG), l'un des principaux réassureurs aéronautiques du monde, en a fait l'acquisition. Elle en est restée propriétaire jusqu'à l'accident.

FLASH AIRLINES louait cet appareil depuis le 14 mai 2001.



## 1.5 Historique de l'équipage présent dans le cockpit

L'équipage en fonction lors de l'accident avait assuré un vol Venise (Italie) – Sharm-El-Sheikh le 2 janvier 2004 puis avait bénéficié d'un repos de 24 heures à Sharm-El-Sheikh.

### (a) Le Commandant de bord

Le Commandant de bord du vol accidenté, Abdallah Khedr, était un ancien Général de l'armée de l'air égyptienne.

Il a été embauché par FLASH AIRLINES le 16 février 2003.

Il a suivi une qualification sur simulateur de la ROYAL AIR MAROC à Casablanca. Au cours de ce stage, il a effectué 20 heures de cours de « *Fixed Base Simulator* », c'est-à-dire des cours sur un simulateur fixe en ordinateur pour apprendre les circuits de l'avion et 32 heures de « *Full Flight Simulator* », c'est-à-dire un simulateur grandeur nature reproduisant les mouvements d'un avion.

Après une série de vols avec un instructeur à ses côtés dans le cockpit, dont le nombre n'est pas connu, Monsieur Khedr a été qualifié « *Commandant de bord* » sans expérience préalable en qualité de co-pilote.

Lors de l'accident, le Commandant de bord Abdallah Khedr totalisait 474 heures de vol sur B 737.

### (b) Le copilote

Le jeune copilote, Shafee Anr, avait suivi une formation aux Etats-Unis où il avait passé sa licence APTL ("*Airline transport pilot license*") sur des avions à hélices.

Au moment de l'accident, il ne totalisait que 242 heures de vol sur B 737.

### (c) L'observateur

Il s'agirait soit d'un jeune pilote stagiaire de la Compagnie FLASH AIRLINES effectuant un vol de familiarisation avec l'appareil, soit d'un pilote instructeur de la Compagnie.



## 2. DISCUSSION

### 2.1 La responsabilité illimitée du transporteur, FLASH AIRLINES

#### 2.1.1 Droit applicable

Le régime de responsabilité défini aux termes des textes suivants (formant le système dit « *Varsovie I* ») par opposition à la Convention de Montréal de 1999 qui n'était pas en vigueur au jour de l'accident (dit système « *Varsovie II* »), est applicable :

- La Convention de Varsovie pour "*l'unification de certaines règles relatives au transport international*" du 12 octobre 1929, entrée en vigueur le 13 février 1933, ratifiée par la France le 15 novembre 1932 et par l'Egypte le 6 septembre 1955 ;
- Le Protocole additionnel de La Haye, du 28 septembre 1955, ratifié par la France le 19 mai 1959 et par l'Egypte le 26 avril 1956, et entré en vigueur dans les deux Etats le 1er août 1963.
- Le Règlement Européen n° 2027/97 du 9 octobre 1997, relatif à la responsabilité des transporteurs aériens en cas d'accident, adaptant la Convention de Varsovie à l'Union européenne.

Le régime Varsovie I s'applique au transport international de personnes, à titre onéreux ou gratuit, peu important la nationalité des parties, lorsque "*le point de départ et le point de destination, qu'il y ait eu ou non interruption du transport ou transbordement, sont situés soit sur le territoire d'une seule Haute Partie Contractante, soit sur le territoire d'une seule Haute Partie Contractante si une escale est prévue sur le territoire d'un autre Etat, même si cet Etat n'est pas une Haute Partie Contractante* » ainsi qu'il résulte de l'article 1.2. de la Convention de Varsovie, telle qu'amendée par le Protocole de La Haye.

En l'espèce, il s'agit bien d'un transport international, les points de départ (Egypte) et d'arrivée (France) étant situés sur le territoire de deux Etats contractants.

La responsabilité de la Compagnie FLASH AIRLINES est donc régie par la Convention de Varsovie et ses protocoles additionnels ainsi que, comme il sera précisée plus loin, par le Règlement Européen précité de 1997.

L'application de ce système est exclusive de tout autre texte pour toutes les demandes de réparation dirigées contre le transporteur aérien international, quelle que soit la personne qui agit et à quelque titre que ce soit.

#### 2.1.2 Le régime de responsabilité illimitée du transporteur FLASH AIRLINES

- L'article 17 de la Convention de Varsovie énonce :

  "*Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lésion corporelle subie par un voyageur lorsque l'accident qui a causé le dommage s'est produit à bord de l'aéronef*".

  En l'espèce, les 148 occupants de l'appareil, passagers et membres d'équipages, sont tous décédés.

  La compagnie FLASH AIRLINES est donc responsable de leur décès.



- Le transporteur ne saurait se prévaloir des dispositions de l'article 22 de la Convention de Varsovie amendée par le Protocole de la Haye et le Protocole additionnel de Montréal n°2 du 25 septembre 1975, qui posent le principe d'une réparation limitée à un montant de 16.600 DTS par siège, soit à **19.340 euros** par siège.

  En effet, il existe deux cas de déplafonnement alternatifs :

  - l'absence ou l'irrégularité du billet de passage, concernant, notamment, l'information due à la personne transportée (article 3 de la Convention de Varsovie amendée et 6 du Règlement Européen) ;
  - la faute inexcusable (article 25 de la Convention de Varsovie amendée).

  Il est suffisant que l'un des deux cas se produise pour empêcher le transporteur d'invoquer la limitation de responsabilité de l'article 22 de la Convention de Varsovie.

  En l'espèce, il n'est pas nécessaire de développer les fautes inexcusables de FLASH AIRLINES lesquelles sont d'ores et déjà susceptibles d'être constatées bien que l'information disponible ne soit pas encore exhaustive. En effet, il ressort du rapport factuel que les pilotes ont laissé l'avion virer et piquer en observateurs inactifs, ne prenant de mesure de redressement que lorsque l'avion était déjà irrécupérable.

  Pour retenir la responsabilité pleine et sans limitation de FLASH AIRLINES, il suffit de constater que celle-ci n'a pas donné l'information légale requise aux passagers de l'avion.

- A titre préalable, il convient de rappeler, comme le fait dans son exposé de motifs le Règlement 1997 précité, que la limitation de responsabilité de la Convention de Varsovie est non seulement injuste, mais obsolète au niveau international depuis de nombreuses années.

  Ainsi, bien avant l'entrée en vigueur du système Varsovie II qui élimine toute limitation de responsabilité sauf dans le cas où le transporteur aérien rapporte la preuve que l'accident n'est pas de son fait, les plus importants transporteurs du monde avaient, sur recommandation du Parlement Européen, dans le cadre d'accords de l'IATA, renoncé, dès 1995, aux limitations de responsabilité du système Varsovie I.

  Ce n'était que prendre acte de la jurisprudence de la plupart des pays occidentaux, qui, avec des motifs différents, écartaient, toute limitation de responsabilité du transporteur en présence de victimes mortelles :
  En France, la Cour de Cassation a ainsi écarté le plafond de responsabilité édicté par la Convention de Varsovie, en présence de morts, en utilisant la conception de la faute inexcusable *in abstracto* qui implique, de fait, une obligation de sécurité : dans cette conception, le comportement des pilotes est apprécié par rapport à la notion du *bon père de famille*, autrement dit, du pilote attentif qui prévoit et évite toute situation de risque.



En Allemagne et en Italie, la limitation a été réputée inconstitutionnelle. L'Espagne a suivi le système français. Les USA ont refusé de plusieurs manières l'application de limitations de responsabilité.

Cette voie a également été empruntée par le législateur européen dans le Règlement 1997 précité.

Le législateur européen a légiféré en ce sens directement pour les Compagnies aériennes européennes, et également indirectement pour les compagnies extérieures à l'Union, dès lors que ces dernières opèrent à destination ou en provenance de l'Union européenne.

Finalement, la récente Convention de Montréal, entrée en vigueur postérieurement à l'accident de Sharm El Sheikh, a éliminé définitivement toute limitation de responsabilité du transporteur aérien.

- L'information insuffisante de FLASH AIRLINES aux passagers de l'avion :

L'article 3.1. c) de la Convention de Varsovie, amendée par le Protocole de La Haye, impose au transporteur de faire figurer sur le billet de passage qu'il remet au passager :

« *un avis indiquant que si les passagers entreprennent un voyage comportant une destination finale ou une escale dans un pays autre que le pays de départ, leur transport peut être régi par la convention de Varsovie qui, en général, limite la responsabilité du transporteur en cas de mort ou de lésion corporelle, ainsi qu'en cas de perte ou d'avarie de bagages.* »

Cette information des passagers, exigée par la Convention de Varsovie, est imposée à peine, pour le transporteur, de ne pas pouvoir se prévaloir du plafond d'indemnisation qu'elle édicte.

En effet, l'article 3.2. de la Convention de Varsovie, amendée par le Protocole de la Haye, dispose : « *si le billet ne comporte pas l'avis prescrit à l'alinéa 1 (c) du présent article, le transporteur n'aura pas le droit de se prévaloir des dispositions de l'article 22.* »

Cette disposition a paru, à juste titre, insuffisante et imprécise.

C'est pourquoi le Règlement Européen de 1997, dans son article 6, a établi, pour les Compagnies non européennes qui volent au départ ou à destination d'un pays de l'Union Européenne, et dans la mesure où elles prétendraient bénéficier d'une quelconque limitation de responsabilité, l'obligation de remettre à chaque personne transportée non seulement un billet, mais une notice expresse précisant les éléments légaux et quantitatifs de cette prétention, les clauses éventuellement présentes sur le billet lui-même n'étant pas suffisantes pour que l'obligation soit remplie.

Dès lors, si le transporteur étranger ne satisfait pas à cette obligation d'information, il se trouve dans la même situation que les transporteurs européens et ne peut se prévaloir d'une limitation de responsabilité.



OFFICIAL TRANSLATOR (H)
P. BONNEFOUS
30 bis, rue Émile-Menier
75116 PARIS FRANCE
☎ 01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

Cette obligation d'information n'a pas été remplie par FLASH AIRLINES et, en conséquence, ce transporteur, opérant à destination de l'Union Européenne, ne saurait, en application des dispositions de la Convention de Varsovie et/ou de celles du Règlement Européen de 1997, invoquer valablement une limitation quelconque de responsabilité.

En conséquence, FLASH AIRLINES doit être tenue à réparer l'intégralité du préjudice subi par les demandeurs.

## 2.2    REPARATIONS – INDEMNISATIONS

L'ensemble des préjudices et réparations ci-après décrit est évoqué sous réserve de précisions complémentaires qui feront l'objet de conclusions ultérieures.

Il est notamment précisé que le tableau de présentation des demandes annexé au dispositif sera complété.

### 2.2.1    Le droit pour les familles des victimes du crash de Sharm-El-Sheikh à obtenir une réparation intégrale

#### (a) La réparation des atteintes à l'intégrité physique et psychique en cas de violences involontaires

Le droit à l'intégrité physique et psychique est un droit fondamental de la personne qui protège la personne en cas de violences volontaires et involontaires.

Ce droit est affirmé et garanti aussi bien par la Convention Européenne des Droits de l'Homme et des Libertés Fondamentales du 4 novembre 1950 que par la Déclaration Universelle des Droits de l'Homme.

L'exigence de réparation reconnue par le droit positif est mise en perspective par une jurisprudence évolutive qui passe par l'impératif d'une indemnisation intégrale de tous les chefs de préjudice subis par les victimes directes et indirectes.

#### (b) La spécificité du droit à réparation intégrale en cas d'accident aérien collectif

Les passagers du vol ont vu, de façon injuste, leur vie brutalement abrégée à un moment de bonheur individuel et familial au retour de vacances de Noël.

Les familles des passagers ont vu leur vie bouleversée : elles ont vécu un moment de totale angoisse de mort et d'effroi dans l'attente de la nouvelle du crash. Elles vivent désormais dans une horreur collective avec l'impossibilité même d'entamer un travail de deuil en l'absence d'identification et de restitution des corps ainsi que de l'établissement des causes de cet accident.

La juste et nécessaire réparation intégrale passe par une approche *in concreto*.



OFFICIAL TRANSLATOR(H)
P. BONNEFOUS
30 bis, rue Emile-Menier
75116 PARIS FRANCE
☎ 01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

Il est acquis que la réparation et l'indemnisation en matière d'accident collectif doivent faire l'objet d'une approche spécifique distincte des modalités usuelles de l'indemnisation de droit commun en matière de violences volontaires ou involontaires individuelles.

Il sera rappelé pour mémoire les approches spécifiques mises en œuvre après les drames sériels dans le cadre de fonds d'indemnisation ou en cas d'accidents collectifs de toute nature dans le cadre de dispositifs spécifiques.

L'indemnisation des victimes d'accidents aériens doit prendre en compte l'intégralité de ces évolutions aussi bien extrajudiciaires que judiciaires ainsi que les normes d'indemnisation transactionnelles aussi bien au niveau national qu'international.

Cette analyse juridique objective est confortée en tant que besoin par les orientations politiques de l'Etat français en matière de droit des victimes portées par le Secrétariat au droit des victimes qui a mis en évidence la faiblesse des indemnisations françaises et qui a invité "*à placer la barre très haut*". (Voir notamment : Interview de Nicole GUEDJ, revue *Turbulences*, juillet août 2004 ; *Secrétariat d'Etat au droit des victimes, premier programme d'action*, 29 septembre 2004, dossier de presse, pages 8 et 17, annexes ; "Victimes par ricochet de nouveaux préjudices non économiques réparables", C. LIENHARD - MF STEINLE-FEUERBACH, *AJ Famille*, sept. 2004, dossier "La Famille face aux accidents de la vie", pages 9 et suivantes )

(c) <u>Sur la méthodologie de la réparation et de l'indemnisation des préjudices des ayant droits des passagers décédés lors du crash</u>

Dans un souci de clarté, les préjudices seront présentés ci-dessous en fonction de la nomenclature des chefs de préjudice actés par le rapport sur l'indemnisation du dommage corporel 2003 (*Conseil National de l'Aide aux Victimes*, Paris, Ministère de la Justice, 2003) en tenant compte, bien entendu, de la spécificité de l'aspect collectif et de l'objectif de réparation intégrale.

OFFICIAL TRANSLATOR(H)
P. BONNEFOUS
30 bis, rue Emile-Menier
75116 PARIS FRANCE
☎ 01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

**2.2.2   Présentation de la nomenclature des chefs de préjudice des victimes de l'accident aérien de Sharm-El-Sheikh**

**(a) Préjudices économiques**

    (i)    *Frais d'obsèques et de sépulture*

Le droit à indemnisation de l'intégralité des frais d'obsèques, de sépulture et de funérailles n'est pas contestable.

L'indemnisation doit être faite en fonction des montants réellement exposés correspondant à la tradition familiale et des pratiques cultuelles de la famille.

Dans la mesure où les corps n'ont pas été identifiés et restitués, il devra également être tenu compte des frais futurs à exposer.

    (ii)    *Le prix du voyage*

Les héritiers ont vocation à solliciter la restitution intégrale du prix du voyage dans la mesure où le contrat a été inexécuté.

Il convient de relever que les héritiers se trouvent, pour des raisons de force majeure et en tout cas indépendantes de leur volonté, dans l'impossibilité matérielle, compte tenu des circonstances particulières de l'accident aérien et de son extrême violence, de rapporter la preuve par la production de l'instrument probatoire contractuel.

Il est donc sollicité que la valeur de l'inexécution de l'obligation contractuelle du voyagiste soit fixée à 1 000,00 € par personne décédée.

    (iii)    *Pertes diverses*

Les héritiers ont également vocation à solliciter l'indemnisation liée à la perte des vêtements, bijoux, affaires personnelles, tel que caméra-photo, notes de voyages et bagages.

Pour les raisons ci-dessus exposées, la valeur de l'ensemble de ces effets mobiliers et personnels sera fixée à 4 000,00 € par personne décédée.

    (iv)    *Frais divers*

Les héritiers ont dû faire face à des frais consécutifs au décès parmi lesquels ceux des funérailles mais également tous ceux liés à la tentative de reconnaissance des corps, aux contacts qui ont dû être pris pour s'informer, aux démarches documentaires liées aux contraintes administratives dans un moment de grande douleur et de particulière angoisse afin de régulariser, autant que faire se pouvait, la situation administrative du *de cujus*.



Il s'agit là de préjudices matériels indiscutables et dont on espère qu'ils ne seront pas discutés petitement tant ils entrent dans le domaine de l'évidence.

Au titre de la valeur des premiers frais nécessités par le décès et liés aux conditions brusques de son occurrence, il est sollicité l'allocation d'un montant de 20 000,00 €.

Ce montant a été évalué par rapport au forfait légal édicté par le Règlement de 1997 précité.

Il convient de rappeler que le Règlement de 1997 prévoit dans son article 5 l'obligation du transporteur de fournir aux proches une avance dans les jours qui suivent l'accident d'au moins 15.000 DTS, soit environ 20 000,00 €, afin de permettre à la famille de faire face aux premiers frais.

Ces premiers frais constituent les préjudices matériels des héritiers.

Dès lors, il convient de préciser le régime de cette avance.

Cette avance n'est déductible que des préjudices matériels et non des préjudices moraux. Elle n'est, en aucun cas, remboursable, dans la mesure où les préjudices matériels forfaitaires sont à considérer comme acquis.

Le montant ainsi alloué s'ajoute aux préjudices autres que les premiers frais.

Le fondement juridique de l'allocation des premiers frais supportés par les familles, estimé forfaitairement, relève d'une disposition communautaire d'application directe : elle devra donc être allouée intégralement aux héritiers.

On rappellera également à l'appui de cette analyse la décision du Tribunal de première instance de Madrid en date du 3 juillet 2002 intervenu à la suite d'un accident aérien survenu en Suisse :

Tribunal de première Instance n° 67 de Madrid, procédure n° 19/2002, jugement du 3 juillet 2002 ; septième motif : *"(...) sans qu'il y ait lieu à quelque déduction que ce soit pour les 22.010 euros dont la défenderesse affirme qu'ils ont été déjà reçus par la partie demanderesse le 13 janvier 2000, étant donné que, d'une part, elle soutient que CROSSAIR a pris en charge les frais des obsèques, qui ont eu lieu à Zurich, avec obligation pour la famille de s'y déplacer, ainsi que les frais d'incinération de la victime, et que, d'autre part, la somme qui pourrait dépasser de tels frais doit être affectée également aux dommages moraux, en sus ou en dehors de ceux qui sont ici évalués à ce titre".*



(v)*Cérémonies annuelles commémoratives*

Il est normal et indispensable que les familles cruellement touchées puissent avoir la possibilité de se retrouver une fois par an pour une cérémonie commémorative à Sharm el Sheikh.

Cette démarche concerne le cercle familial rapproché (parents, enfants, frères et sœurs) et ce pendant une génération.

Il est donc sollicité un montant forfaitaire par ayant droit de 50 000,00 € (2 000,00 € x 25 ans).

(vi) *Frais successoraux*

Les héritiers et légataires ont été confrontés, en raison du décès subi du *de cujus*, à des frais de succession qui n'auraient pas eu lieu d'être si la personne décédée avait été à même de prendre des dispositions lui permettant d'assurer sa succession dans d'autres perspectives économiques.

En fonction de la situation patrimoniale des familles, ce chef de préjudice devra être indemnisé *in concreto* sur la base de la théorie de la perte d'une chance et en tenant compte du fait que le transport aérien est statistiquement présenté comme un mode de déplacement particulièrement sûr.

(vii) *Gains manqués, perte de ressources et de revenus*

Les conjoints (compagnons, compagnes), quelle que soit la nature de l'union, les enfants majeurs ou mineurs ou toute autre personne pouvant justifier d'une obligation d'entretien ou d'une obligation naturelle d'ores et déjà exécutée ou promise ou d'une potentialité à évaluer en perte de chance, ont droit, dans le cadre de la réparation intégrale, à l'indemnisation de ce préjudice économique.

L'évaluation sera présentée *in concreto*.

Pour être conforme au principe indemnitaire de réparation intégrale, le taux de capitalisation doit être actuel et il ne peut pas être fait référence à la table de 1986.

Les tables de mortalité sont celles publiées par l'INSEE.

L'obsolescence de la référence à la table de 1986 a été consacrée en jurisprudence par des arrêts récents :

- CA Rennes, 31 mai 2000, Jurisdata n° 1205611
- CA Paris, 17è. Ch. Section A, 17 octobre 2002, RG 2001/08845
- CA Bordeaux, 5ème Ch. Corr. 17 mars 2003, RG 02/00760
- CA Aix-en-Provence, 10ème Ch. 10 avril 2003. RG n°18469, n° 99 07969, n° 1/18545



- CA Paris 1ère B, 10 juin 2004, n° 2002/04090,

Il sera encore relevé que dans les propositions formulées par le Secrétariat d'Etat au droit des victimes, communication Conseil des Ministres 29 septembre 2004, il est indiqué page 17 dans la rubrique "*amélioration des conditions d'indemnisation des victimes*", "*le barème actuellement utilisé pour convertir en capital une perte de revenus repose sur des tables de mortalité et sur un taux d'intérêts obsolète qui lèsent les victimes (ainsi l'espérance de vie prise en compte est celle des années 1960)*".

La concertation interministérielle déjà engagée à ce jour en lien avec le MINEFI et le Ministère de la Santé va donc se poursuivre en vue de la fixation d'un barème de capitalisation et de ses paramètres de réactualisation par un décret en Conseil d'Etat.

(viii) *Préjudice économique des ayants droit hors dépendance*

Les ayants droit, dans le cadre de leur réparation intégrale, sont amenés à solliciter l'indemnisation de leur créance de réparation leur permettant de combler l'appauvrissement causé par le responsable au patrimoine du *de cujus*, éventuellement la réparation du préjudice de développement du patrimoine.

Les demandes seront formulées *in concreto*.

(ix) *Réparation et indemnisation des conséquences économiques d'un déficit fonctionnel psychique des victimes par ricochet*

Un certain nombre de victimes par ricochet sont atteintes d'un syndrome post-traumatique entraînant un déficit fonctionnel psychique ayant des répercussions économiques liées à des arrêts de travail temporaires ou définitifs ou des pertes d'emplois, des difficultés à se maintenir dans leur emploi ou encore une impossibilité de passer des examens ou de progresser dans leur carrière.

Ce chef de préjudice découlant du stress post-traumatique sera établi par voie d'expertise.

(x) *Préjudice économique concernant les entreprises familiales ou certains employeurs*

Certaines victimes décédées étaient le maître d'œuvre et à penser d'entreprises familiales qui ont été fragilisées, voire qui sont vouées à disparaître.

Parfois l'employeur d'une victime a subi un préjudice par la perte de ses investissements de recrutement et/ou de formation.

Les éléments liés à ce chef de préjudice seront démontrés *in concreto*.

(b) <u>Préjudices non économiques</u>

(i) *Préjudices moraux*

L'ampleur du préjudice moral subi par les ayants droit est incontestable.

Il s'agit d'une souffrance de l'âme ou du cœur n'autorisant aucune discrimination possible en fonction de la nationalité, de la résidence, du sexe ou de la religion.

Il est acquis qu'en matière de catastrophe aérienne, ce préjudice est d'une ampleur supérieure à d'autres circonstances. (TGI Colmar, CIVI, 2 juillet 2002, *D.*, 1993, p. 208 ; C. LIENHARD, MF. STEINLE-FEUERBACH, "Victimes par ricochet : de nouveaux préjudices non-économiques préalables", *AJ Famille*, sept. 2004, dossier "*La Famille face aux accidents de la vie*", pages 9 et suivantes)

Les ayants droit sont donc fondés, en fonction du lien de parenté ou de proximité, à solliciter réparation et indemnisation à hauteur des montants portés dans le tableau annexé au dispositif.

(ii) *Préjudice d'assistance*

Le préjudice d'assistance est un préjudice, appelé d'affection hors Europe, spécifique.

L'indemnisation du préjudice d'assistance et d'affectation ne concerne pas le choc moral, le deuil pour la perte brutale du défunt, mais l'absence de celui-ci durant le restant d'une espérance de vie.

Il ne s'agit pas du deuil mais de l'absence d'affection, de présence, de compagnie, d'aide, de conseils, d'assistance pendant l'espérance de vie du plus âgé de la victime ou de l'ayant droit.

Le principe de la réparation intégrale implique la prise en compte de ce chef de préjudice au-delà du choc moral qui dure quelques mois.

Le manque de l'aide, de la présence, de la compagnie, de l'assistance dure pendant toute l'espérance d'une vie normale.

La veuve, le veuf, le compagnon, la compagne, les enfants, les grands-parents, les parents et les frères et sœurs, ou tel autre proche ayant subi un préjudice, outre d'avoir subi un choc moral, ont été privés des conseils quotidiens de leur proche disparu, de sa compagnie aussi bien pour les actes de la vie courante que, plus généralement, tous actes s'accomplissant essentiellement au travers de **la relation sociale** découlant de la présence du proche disparu, serait-ce par exemple l'organisation des vacances et des loisirs, l'éducation des enfants etc.

C'est au titre de cette relation sociale singulière que l'enfant, le frère etc. se trouveront privés de l'assistance d'un père, d'un frère etc.



Ce préjudice n'est pas discutable dans son principe et présente, contrairement au préjudice moral qui est de nature psychologique, un caractère de durée lié à l'espérance de vie et à l'intensité de la relation sociale.

Ainsi, pour l'enfant mineur, il sera plus important pendant sa minorité ou pendant le temps où il avait vocation à vivre chez le parent décédé.

Les critères utilisés par les ayants droit sont exposés *in concreto* par rapport à la situation familiale de chacun d'entre eux.

Pour ce qui est du calcul dudit préjudice, la méthode suivante est proposée :

Il s'agit de prendre en compte l'âge de l'ayant droit ainsi que l'âge de la personne décédée.

Il s'agit ensuite de tenir compte de l'espérance de vie selon la table la plus pertinente de référence.

Le préjudice de perte d'assistance se calcule en multipliant l'espérance de vie par une indemnité annuelle comme celle admise par le droit positif et présentant le maximum de similitudes avec les critères jurisprudentiels reconnus notamment en tenant compte du caractère temporel et viager du préjudice.

Elle s'inspire du montant de l'indemnité généralement octroyée pour la privation des actes de la vie courante et d'agrément pendant chaque mois d'incapacité totale de travail, ce critère présentant avec le préjudice d'assistance le même aspect lié à la durée.

Plus concrètement, il a été retenu dans la présente affaire de prendre comme base de calcul la valeur de la moitié du SMIC au 1er janvier 2004, soit 545,25 €/mois, pour le préjudice d'un conjoint, d'un parent, d'un frère ou sœur unique ; d'un quart du SMIC, soir 272,62 €/mois, pour un frère ou sœur non unique, un grand-parent, un petit-enfant; d'un huitième de SMIC, soit 136,31 €,pour tout autre parent ou proche.

**(iii)** ***Déficit fonctionnel séquellaire psychique non-économique***

En raison de l'impact psychique du décès d'un proche et notamment lorsque plusieurs membres d'une famille sont décédés au même instant, certains ayants droit se trouvent dans l'impossibilité de continuer une vie normale au titre de l'ensemble de leurs relations familiales, existantes à venir et/ou sociales.

Il existe alors un déficit séquellaire psychique dû à un stress post-traumatique qui sera établi par voie d'expertise.



OFFICIAL TRANSLATOR(H)
P. BONNEFOUS
30 bis, rue Émile-Menier
75116 PARIS FRANCE
☎ 01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

(iv) *Perte de lignage*

Pour certaines familles, l'ensemble d'une branche de la famille a disparu dans le crash de Sharm-El-Sheikh, laissant comme ayant droit un conjoint ou un parent totalement et définitivement isolé car n'étant plus en âge ou en mesure d'avoir des descendants, ayant perdu tous ses enfants ou petits-enfants.

Il s'agit là d'une perte spécifique de l'identité familiale sur plusieurs générations impliquant une perte éventuelle de l'identité sociale par la perte de la transmission du nom.

Ces situations seront exposées *in concreto*.

(c) <u>Préjudice d'angoisse et pretium doloris de la personne décédée</u>

L'ensemble des passagers du vol FSH604 a vécu un moment d'horreur et d'effroi pendant le temps de l'attente qui s'est écoulé entre la perception du danger du crash et le crash lui-même.

Ceci est incontestable.

Les passagers décédés sont nécessairement titulaires d'une créance personnelle de réparation du préjudice incluant la douleur physique et morale subie par la victime décédée.

La sidération psychique liée à la pénétration traumatisante de l'angoisse de la mort et de la perte des siens au cours d'un vol qui devait être assuré en pleine sécurité après des moments de bonheur au retour des vacances de Noël, doit nécessairement être prise en compte et ouvre droit à une réparation de la même intensité.

Il est rappelé que selon une jurisprudence désormais constante de la Cour de Cassation (Cass. Civ. 18/01/1943, *DC*, 1943 p. 45 ; Cass. Civ. 09/01/1944, *DA*, 1944, p. 106) consacrée par la Chambre Mixte (Cass. Mixte. 30/04/1976 *D.* 1977, p. 1985), le principe de la transmission de l'action en réparation d'un dommage matériel et/ou moral éprouvé par la victime avant décès à ses héritiers ne fait plus discussion.

De façon plus précise, la Cour de Cassation considère que l'action se transmet aux héritiers dès lors qu'un droit à réparation est entré dans le patrimoine du *de cujus* avant sa mort peu important qu'il est mis en œuvre l'action avant son décès ou non (Cass. Crim, 06/10/1977, *Gaz. Pal.*, 1978 1.33, Cass. Civ. 2, 11/03/1981, *Gaz Pal.*, 1981 pan. 240).



La pertinence de cette position concernant la mise en œuvre de la créance indemnitaire est confirmée par la doctrine (P. Letournau, *Droit de la responsabilité et des contrats*, Dalloz action 2004/2005, n° 984, F. Chabas *Leçons du droit civil*, 9ème édition Monchrétien n° 607).

Il sera encore rappelé que le préjudice subi au cours d'un accident aérien est nécessairement un préjudice hors norme.

Il est aujourd'hui admis que les quantum doivent à juste titre être majorés dans des circonstances particulières liées à de graves dysfonctionnements notamment en terme de sécurité.

Les héritiers sont donc fondés à solliciter l'allocation d'un montant de 150.000 € par personne décédée.

Les héritiers légaux amenés à formuler cette demande déclarent faire leur affaire du partage des indemnités entrant dans la masse successorale en fonction des règles du droit de la succession.

**2.2.3 Modalités particulières des actions successorales**

Les indemnités dues à la succession seront allouées, comme actif de la succession, conjointement et solidairement aux héritiers ès qualité qui pourront les recouvrer à tout moment auprès des débiteurs sur justification de leur qualité et de leurs droits.

**2.2.4 Réserve d'actions**

Les ayants droit demandeurs aux présentes ayant vocation à la réparation de tous préjudices économiques sollicitent du Tribunal qu'il leur soient donné acte de ce qu'ils se réservent d'engager une nouvelle instance au titre de la réparation desdits préjudices, toute somme allouée le cas échéant en l'état n'ayant qu'un caractère provisionnel.

Il en sera exactement de même des actions aux fins de réparation des préjudices corporels et/ou psychologiques, pour les ayants droit y ayant pareillement vocation.

**2.2.5 Frais irrépétibles**

Les demandeurs ont été obligés d'engager de nombreux frais irrépétibles pour rémunérer les avocats, les experts privés en matière avionique et économique, les Conseils en Droit étranger, payer des frais de voyages, des traducteurs de nombreux documents en arabe ou en anglais.

Il serait inéquitable de les laisser à leur charge.

Il sera alloué aux demandeurs, en conséquence, la somme de 2.000 € PAR DEMANDEUR sur le fondement de l'article 700 NCPC.

Il convient de donner acte aux demandeurs qu'ils se réservent toutes autres actions contre tous tiers, non parties à la présente instance.



OFFICIAL TRANSLATOR(H)
P. BONNEFOUS
30 bis, rue Emile-Menier
75116 PARIS FRANCE
01 45 53 23 13
APPOINTED BY THE PARIS COURT OF APPEAL

**PAR CES MOTIFS,**

Sur le fondement des articles 17 et 3.2 de la Convention de Varsovie amendée par le Protocole de la Haye du 28 septembre 1955, ainsi que des articles 6.3, 3.1. a) et b), 3.2, 5.1, 5. 2 du Règlement (CE) n° 2027/97 du Conseil du 9 octobre 1997 relatif à la responsabilité des transporteurs aériens en cas d'accident,

Il est demandé au Tribunal de :

- DECLARER la Compagnie FLASH AIRLINES responsable, en qualité de transporteur, de l'accident aérien du Boeing 737/300 survenu le 3 janvier 2004 à Sharm El Sheik et ayant entraîné la mort de tous ses occupants ;
- CONSTATER que, n'ayant pas justifié d'avoir informé dûment chaque personne transportée de son éventuelle prétention à l'application d'une limitation de sa responsabilité, telle que ressortant d'une quelconque Convention Internationale ou réglementation communautaire, la Compagnie aérienne FLASH AIRLINES ne peut prétendre à aucune limitation de responsabilité, et sera tenue de réparer l'intégralité des préjudices objet de cette procédure ;
- Dire que sont indemnisables et devront être indemnisés les préjudices matériels, moraux et de la douleur des victimes mortelles elles-mêmes, prises en la personne de leurs héritiers légaux, et que ces sommes rentreront dans leurs respectives masses successorales ;
- Dire et juger que les indemnités dues à la succession seront allouées, comme actif de la succession, conjointement et solidairement aux héritiers ès qualité qui pourront les recouvrer à tout moment auprès des débiteurs sur justification de leur qualité et de leurs droits ;
- Dire que sont indemnisables les préjudices personnels des ayants droit pour perte d'assistance et d'affection, en proportion de l'espérance de vie du plus âgé d'entre la victime disparue ou de l'ayant droit, ainsi que, selon le cas, le préjudice de perte de lignage ;
- Dire que le préjudice moral personnel des ayants droit, compte tenu de la nature et des circonstances de la catastrophe et de ses conséquences, notammment médiatiques, a un caractère exceptionnel ;
- Dire que les préjudices économiques seront calculés sur la base de tables actualisées par rapport au taux de capitalisation ( soit au maximum de 3% ) et à l'espérance de vie, conformément à la jurisprudence actuelle ;
- Donner acte aux ayants droit demandeurs aux présentes ayant vocation à la réparation de tous préjudices économiques, de ce qu'ils se réservent d'engager une nouvelle instance au titre de la réparation desdits préjudices, toute somme allouée le cas échéant en l'état n'ayant qu'un caractère provisionnel ;
- Donner acte aux ayants droit demandeurs aux présentes ayant vocation à la réparation de préjudices corporels et/ou psychologiques de ce qu'ils se réservent d'engager une nouvelle instance au titre de la réparation desdits préjudices, toute somme allouée le cas échéant en l'état n'ayant qu'un caractère provisionnel ;



- En conséquence, CONDAMNER la compagnie aérienne FLASH AIRLINES et son assureur la Compagnie AL CHARK INSURANCE in solidum, à payer aux demandeurs, en réparation des préjudices invoqués, les sommes figurant sur la tableau joint au présent dispositif sauf à parfaire et compléter ;

PRONONCER L'EXECUTION PROVISOIRE DES CONDAMNATIONS AU PROFIT DES DEMANDEURS, NONOBSTANT L'EXERCICE DE TOUT RECOURS ET SANS CAUTION ;

- CONDAMNER la Compagnie FLASH AIRLINES et son assureur la Compagnie AL CHARK INSURANCE in solidum à 2.000 € par demandeur au titre des frais irrépétibles, sur le fondement de l'article 700 du NCPC;

- CONDAMNER la Compagnie FLASH AIRLINES et son assureur la Compagnie AL CHARK INSURANCE in solidum aux entiers dépens, au profit de Me Michel PITRON, avocat à la Cour de PARIS, en application de l'article 699 NCPC.

**SOUS TOUTES RESERVES**
**DONT ACTE**

**FAMILLE ET PROCHES de Nathalie ABONNEL née BOISEAU le 11 avril 1979**

**Madeleine SERSIRON**, née le 1er août 1932 à Clermont Ferrand (63), de nationalité française, retraitée, demeurant 39 rue Antoinette Begon 63000 CLERMONT FERRAND
*Tante*

**Catherine RAFFIER née BEAUVALLOT** le 31 août 1963 à Gerzat (63), de nationalité française, commerçante, demeurant 14 rue le Pré Naud 63510 MALINTRAT
*Cousine*

**Marcel RAFFIER**, né le 10 décembre 1926 à Clermont Ferrand (63), de nationalité française, retraité, demeurant 27 rue du Calozon 63270 LE CENDRE
*Oncle*

**Pierrette-Josette GUINOT-RAFFIER**, née le 10 juillet 1938 à Clermont Ferrand (63), de nationalité française, retraitée, demeurant 30 bis rue de la Rotonde 63000 CLERMONT FERRAND
*Tante*

**Philippe RAFFIER**, né le 2 août 1958 à GERZAT (63), de nationalité française, chauffagiste, demeurant 1 rue des Meuniers 63450 SAINT AMAND TALLENDE
*Cousin*

**FAMILLE ET PROCHES de Stéphane ALES, né le 18 mars 1950 et de Christiane ALES née VERDEIL le 4 février 1952**

**Jordan ALES**, né le 17 avril 1979 à LYON (69), de nationalité française, facteur, demeurant 16 rue des Amandiers 34970 LATTES
*Fils*

**Caroline BATIFOL née ALES** le 13 mai 1972 à SAINT PRIEST (69), de nationalité française, agent de constatation des impôts, demeurant Villa N°34, 6 rue Toscane 34970 LATTES
*Fille*

**Josiane Marie Marthe veuve ALES née THOURIGNY**, le 25 mai 1926 à TORCY (77), de nationalité française, retraitée, demeurant 17 Rue Fleming 81000 ALBI
*Mère de Stéphane, belle-mère de Christiane*

**Marthe Madeleine veuve VERDEIL née CALVET** le 14 juillet 1930 à LACAZE (81) de nationalité française, retraitée, demeurant Campagne Haute n° 18, 6 rue des Taillis 13013 MARSEILLE
*Mère de Christiane, belle-mère de Stéphane*

**Daniel André Jean VERDEIL**, né le 20 février 1953 à VIAS (34), de nationalité française, contrôleur Sécurité sociale, demeurant Campagne Haute n° 18, 6 rue des Taillis 13013 MARSEILLE
*Frère de Christiane et beau-frère de Stéphane*

**Mysiane Marie-France Ginette ALES**, née le 14 juillet 1946 à MONACO (Principauté), de nationalité française, gérante de société, demeurant 13 Bis rue Curial 75019 PARIS
*Sœur de Stéphane et belle-sœur de Christiane*

**Catherine Germaine Sylvaine ALES**, née le 4 mars 1952 à MEKNES (Maroc), de nationalité française, ethnologue CNRS, demeurant 11 bis rue Schoelcher 75014 PARIS
*Sœur de Stéphane et belle sœur de Christiane*

**Elizabeth Claudie Joëlle ALES**, née le 29 septembre 1958 à MEKNES (Maroc), de nationalité française, psychologue, demeurant 3 rue du Bac 81160 SAINT JUERY
*Sœur de Stéphane et belle-sœur de Christiane*

**Maxime BATIFOL**, né le 11 septembre 1996 à MONTPELLIER (34), de nationalité française représenté comme mineur par sa mère, Caroline BATIFOL précitée, agissant en qualité de son administratrice légale, demeurant Villa N°34, 6 rue Toscane 34970 LATTES
*Petit-fils*

**Morgane BATIFOL**, née le 20 novembre 1999 à MONTPELLIER (34), de nationalité française, représentée comme mineure par sa mère, Caroline BATIFOL précitée, agissant en qualité de son administratrice légale, demeurant Villa N°34, 6 rue Toscane 34970 LATTES
*Petite-fille*

**Diane PHILIPONET**, née le 23 Septembre 1986 à ALBI (81), de nationalité française, étudiante demeurant 3 Rue du Bac 81160 SAINT JUERY
*Nièce de Stéphane et Christiane*

**Gabrielle PHILIPONET**, née le 8 Octobre 1980 à Albi (81), de nationalité française, étudiante, demeurant 60 rue d'Anvers 59200 TOURCOING
*Nièce de Stéphane et Christiane*

**Patricia Armande VERDEIL née KARAKHANIAN** le 11 Novembre 1958 à MARSEILLE (13), de nationalité française, secrétaire de direction, demeurant Campagne Haute n° 18, 6 rue des Taillis 13013 MARSEILLE
*Belle-sœur de Christiane et de Stéphane*

**Michel Claude Hugues BATIFOL**, né le 30 mars  1964 à Narbonne (11), de nationalité française, demandeur d'emploi, demeurant Villa 34 - 6 Rue Toscane 34970 LATTES
*Gendre de Stéphane et Christiane*


**FAMILLE ET PROCHES de Eric ALPHAZAN né le 23 juillet 1973**

**Roger ALPHAZAN**, né le 29 juillet 1944 à St Priert, de nationalité française, demeurant "Les Terrasses de Bellevue" 9 Corniche Bellevue  06000 NICE
*Père*

**Michèle Marcelle MENARD née ALPAHZAN** le 3 avril 1943 à Rosny sous Bois, de nationalité française, demeurant  "Les Terrasses de Bellevue" 9 Corniche Bellevue 06000 NICE,
*Mère*

**Philippe ALPHAZAN**, né le 26 novembre1960 à LYON (69), de nationalité française, demeurant  90C cours de la Libération 38100 GRENOBLE
*Frère*


**FAMILLE ET PROCHES de Franck AMMERICH né le 30 juin 1956**

**Michel Emile Alexis AMMERICH**, né le 6 avril 1933 à Charenton (94), de nationalité française, demeurant 12 rue du Général Leclerc 94220 CHARENTON
*Père*

**Sandrine Marie-Louise AYMAIN née AMMERICH** le 15 janvier 1971 à Montreuil (93), de nationalité française, professeur de philosophie, demeurant "Le Bali", bâtiment M, chemin de l'Homme Rouge  13600 LA CIOTAT
*Sœur*

**Antony John AYMAIN**, né le 24 août 1988 à Saint-Tropez (83), de nationalité française, collégien, représenté comme mineur par sa mère, Sandrine AYMAIN précitée, agissant en qualité de son administratrice légale, demeurant  "Le Bali",  bâtiment M, chemin de l'Homme Rouge 13600 LA CIOTAT
*Neveu et filleul*

**Marine Micheline AYMAIN**, née le 11 août 2000 à Saint-Tropez, de nationalité française, représentée comme mineure par sa mère, Sandrine AYMAIN précitée, agissant en qualité de son administratrice légale, demeurant  "Le Bali", bâtiment M, chemin de l'Homme Rouge 13600 LA CIOTAT
*Nièce et filleule*

**Laurent Jean AYMAIN**, né le 9 août 1967 à Lyon (69), de nationalité française, demeurant "Le Bali", bâtiment M, chemin de l'Homme Rouge à 13600 LA CIOTAT
*Beau-frère*


**FAMILLE ET PROCHES de Jean-Claude ARZILE, né le 4 août 1944**

**Cédric ARZILE**, né le 26 décembre 1984 à Bruges (33), de nationalité française, apprenti plombier, demeurant  20 rue Ernest Renan 33000 BORDEAUX
*Fils*

**Claudine Marguerite OBRECHT**, née le 22 novembre 1956 à Bordeaux (33), de nationalité française, demeurant 20 rue Ernest Renan, 33000 BORDEAUX
*Ex-épouse*


**FAMILLE ET PROCHES  de Janine BABAULT née le 18 avril 1921 et de Carole BABAULT  née le 5 février 1950**

**Alain BABAULT**, né le 3 mars 1946 à Angerville (91), de nationalité française, brocanteur antiquaire, demeurant 36 rue Paltron  35130 GONDRECOURT
*Fils de Janine, frère de Carole*

**Catherine BRUNIAS née BABAULT** le 18 août 1953 à Lacsou (54), de nationalité française Commerciale, demeurant 3 rue des Marleines  95280 JOUY LE MOUTIER
*Fille de Janine, sœur de Carole*

**Raphaël BRUNIAS**, né le 18 décembre 1975 à Meulan (78), de nationalité française, éleveur, demeurant  251 B, rue Commerciale SAINT DAMIEN DE BECKLAND GORZYO – QUEBEC (Canada)
*Petit-fils de Janine, neveu de Carole*

**Candice BRUNIAS**, née le 14 mai 1985 à Pontoise (95), de nationalité française, demeurant 3 rue des Marleines 95280 JOUY LE MOUTIER
*Petite-fille de Janine, nièce de Carole*

**Murielle BABAULT**, née le 6 novembre 1975 à Laxou (54), de nationalité française, sans profession, demeurant 25 rue du Danseu  55130 GONDRECOURT LE CHATEAU
*Petite-fille de Janine, nièce de Carole*

**Nathalie BABAULT**, née le 18 avril 1967 à Laxou (54), de nationalité française, assistante relations publiques, demeurant 51 rue Planchat 75020 PARIS

*Petite-fille de Janine, nièce de Carole*

**Laurence LE MOIGNE née BABAULT** le 5 octobre 1965 à Laxou (54), de nationalité française, chargée de mission, demeurant 15 rue Planchat 75020 PARIS
*Petite-fille de Janine, nièce de Carole*

**Stéphanie LOUIS née BABAULT** le 7 février 1972 à Laxou (54), de nationalité française, assistante commerciale demeurant 6 place Albert Schweitzer 67400 ILLKIRSH
*Petite fille de Janine, nièce de Carole*

**Adrien CLEUET**, né le 30 octobre 1994 à Paris (75), de nationalité française, représenté comme mineur par sa mère Nathalie BABAULT précitée, agissant en qualité de son administratrice légale, demeurant 51 rue Planchat 75020 PARIS
*Arrière-petit-fils de Janine, petit-neveu de Carole*

**Emma LE MOIGNE**, née le 16 août 1996 à Paris XIX (75), de nationalité française, représentée comme mineure par sa mère Laurence LE MOIGNE précitée, agissant en qualité de son administratrice légale, demeurant 15 rue Planchat 75020 PARIS
*Arrière-petite-fille de Janine, arrière petite-nièce de Carole*

**Tristan LE MOIGNE**, né le 6 décembre 2000 à Paris XIX (75) , de nationalité française, représenté comme mineur par sa mère Laurence LE MOIGNE précitée, agissant en qualité de son administratrice légale, demeurant 15 rue Planchat 75020 PARIS
*Arrière petit-fis de Janine, arrière petit-neveu de Carole*

**Eliane BABAULT**, née le 21 janvier 1948 à Montceau Les Mines (71), de nationalité française, commercial, demeurant 21 place du Docteur Vogt 95170 DEUIL LA BARRE
*Belle-fille de Janine, belle-sœur de Carole*

**FAMILLE ET PROCHES de Patrice BALAVOINE né le 22 mars 1948 et de Annick BALAVOINE née GOUSSIN le 12 mars 1950**

**Armelle BALAVOINE,** née le 4 janvier 1978 à Senlis (60), de nationalité française, demandeur d'emploi, demeurant 3 Sente du Russet 60128 PLAILLY
*Fille de Patrice et de Françoise BALAVOINE née SIMARD, belle-fille d'Annick*

**Thomas BALAVOINE**, né le 6 janvier 1974 à Senlis (60), de nationalité française, technicien territorial, demeurant 5 allée Jacques Henri Lartigue 92400 COURBEVOIE
*Fils de Patrice et de Françoise BALAVOINE née SIMARD, beau-fils d'Annick*

**Rached BEN ABDALLAH,** né le 4 novembre 1970 au Mans (72), de nationalité française, consultant en organisation, demeurant 2 rue Leo Delibes 72200 LA FLECHE
*Fils d'Annick, beau-fils de Patrice*

**Jacqueline DEVOIR-BALAVOINE,** née le 15 avril 1923 à Louvres (95), de nationalité française, retraité, demeurant 24, Avenue Joseph d'Arbaud, Les Hauts de Boulouris 83700 St RAPHAËL
*Mère de Patrice et belle-mère d'Annick*

**Fernand BALAVOINE**, né le 22 juillet 1914 à Plailly (Oise), de nationalité française, retraité, demeurant chez Madame Josette Héron, 3 rue de la Gée, 72210 MAIGNE *Père de Patrice Balavoine, beau-père d'Annick Balavoine*

**Jean-Michel ROBERT**, né le 18 mars 1943 à Louvres (95), de nationalité française, agent technique d'exploitation, demeurant 7 rue Demaison 95380 Louvres
*Demi-Frère de Patrice et beau-frère d'Annick*

**Flora BEN ABDALLAH**, née le 3 février 2000 à Nantes (44), de nationalité française, représentée comme mineure par son père, Rached BEN ABDALLAH, agissant en qualité de son administrateur légal, demeurant 2 rue Leo Delibes 72200 LA FLECHE
*Petite-fille d'Annick et de Patrice*

**Françoise BALAVOINE née SIMARD** le 5 mars 1949 à Paris 18ème (75), de nationalité française, secrétaire de mairie, demeurant 3 sente du Russet, 60128 PLAILLY
*Ex-femme de Patrice*

**FAMILLE ET PROCHES de Jacqueline BAR née DELARUE le 1er mars 1940**

**Violette DELARUE**, née le 14 août 1926 à Joinville-le-Pont (94), de nationalité française, retraitée, demeurant 38 rue Saacy 77730 CITRY sur MARNE
*Sœur de Jacqueline*

**Céline-Emmanuelle ROTELLA-TOLEDO**, née le ... à ... demeurant 36 rue Pierre Thiers 94130 NOGENT SUR MARNE
*Petite-fille de cœur*

**FAMILLE ET PROCHES de Micheline BARBOU née MAROT le 2 janvier 1926**

**Alain BARBOU**, né le 8 octobre1946 à Poitiers (86), de nationalité française, cadre industriel, demeurant 8 rue du Dr Deux Després 16510 VERTEUIL SUR CHARENTE
*Fils*

**Sylvie MALTERRE née BARBOU** le 24 juin 1948 à Poitiers (86), de nationalité française, infirmière, demeurant 4 rue Charles Gounod 17100 LES GONDS
*Fille*

**Catherine CLERGEAUD née BARBOU** le 30 septembre 1950 à Poitiers (86), de nationalité française, directrice d'une société import export, demeurant 24 Fb St Cyprien 86000 POITIERS,
*Fille*

**Cécile BARBOU**, née le 5 septembre 1973 à Lorient (56), de nationalité française, professeur de voile, demeurant 18 rue louis Renard 86000 POITIERS
*Petite fille*

**Dorothée Micheline Anne-Marie BUTRUILLE née BARBOU**, née le 21 avril 1969 à Nantes (44), de nationalité française, sculpteur, demeurant 35 rue de l'Ouche Colin 44230 SAINT-SEBASTIEN sur LOIRE
*Petite fille*

**Marie Emmanuelle MOREL née BARBOU** le 7 septembre 1977 à Cognac (16), de nationalité française, chargée de mission service économique, demeurant 121 rue de Maréchal Leclerc 94410 SAINT-MAURICE,
*Petite- fille*

**Alice CLERGEAUD**, née le 24.06.1977 à Poitiers (86), de nationalité française, infographiste, demeurant 8 rue du Bas des Sables 86000 POITIERS
*Petite-fille.*

**François CLERGEAUD**, né le 14.02.1979 à Poitiers (86), de nationalité française, étudiant, demeurant 6 rue du bas des Sables 86 000 POITIERS,
*Petit-fils*

**Guillaume CLERGEAUD**, né le 18 novembre 1980 à Poitiers (86), de nationalité française, étudiant, demeurant 24 Fb St Cyprien 86000 POITIERS
*Petit- fils*

**Jérôme Michel Robert BARBOU**, né le 4 juillet 1970 à Parthenay (79), de nationalité française, représentant en vins, demeurant 2 route de l'Eglise Saint Pierre 1390 GREZ-DOICEAU
*Petit-fils*

**Fanck BARBOU** né le 21 novembre 1971 à Nantes (44), de nationalité française, médecin, demeurant 96 avenue des Roses 83000 TOULON
*Petit- fils*

**Antoine BARBOU**, né le 5 novembre 1987 à Poitiers (86), de nationalité française, représenté comme mineur par son père, Agathe BARBOU précitée, agissant en qualité de son administrateur légal,  demeurant 1 ruelle de la Cure 86280 SAINT BENOIT
*Petit-fils*

**Vincent BARBOU**, né le 7 septembre1989 à Poitiers (86), de nationalité française, représenté comme mineur par sa mère,  Agathe BARBOU précitée, agissant en qualité de son administrateur légal, demeurant 1 ruelle de la Cure 86280 SAINT BENOIT
*Petit-fils*

**Claire Stéphanie BARBOU** née le 20 juillet 1995 à MEXICO DF (Mexique), de nationalité française, demeurant ANAXAGORAS 712 Apt. 501 Colonia Navarte Mexico DF (Mexique), représentée comme mineure par son père, Jérôme BARBOU précité, agissant en qualité de son administrateur légal
*Arrière-petite-fille*

**Alexandra Danièle Anne-Colette BARBOU**, née le 15 mai 1999 à UCCLE ( Belgique), de nationalité française, représentée comme mineure par son père, Jérôme BARBOU précité, agissant en qualité de son administrateur légal, demeurant 2 Route de l'Eglise Saint Pierre 1390 GREZ-DOICEAU
*Arrière-petite-fille*

**Charles Edward Alain BARBOU**, né le 1er juin 2001 à UCCLE ( Belgique), de nationalité française, représenté comme mineure par son père, Jérôme BARBOU précité, agissant en qualité de son administrateur légal, demeurant 2 Route de l'Eglise Saint Pierre 1390 GREZ-DOICEAU,
*Arrière petit- fils*

**Aurélien BUTRUILLE**, né le 21 juin 2001 à Phnom Penh (Cambodge), de nationalité française, représentée comme mineur par sa mère, Dorothée BRUTRUILLE précitée, agissant en qualité de son administratrice légale, demeurant 35 rue de l'Ouche Colin 44230 SAINT SEBASTIEN sur LOIRE
*Arrière-petit- fils*

**Clément BUTRUILLE** né le 13.10.2003 à NANTES, de nationalité française, représenté comme mineur par sa mère, Dorothée BRUTRUILLE précitée, agissant en qualité de son administratrice légale, demeurant 35 rue de l'Ouche Colin 44230 SAINT-SEBASTIEN sur LOIRE
*Arrière-petit-fils*

**Léopold MOREL** né le 8 septembre 2003 à SAINT-MAURICE ( 94), représenté comme mineur par sa mère,  Marie-Emmanuelle BARBOU précitée, agissant en qualité de son administrateur légal, demeurant 121 rue de Maréchal Leclerc 94410 SAINT MAURICE
*Arrière petit-fils*

**Victor BARBOU,** né le 11 mars 2001 à La Seine Sur Mer (83) de nationalité française, représenté comme mineur par son père, Franck BARBOU précité, agissant en qualité de son administrateur légal, demeurant 96 avenue des Roses 83000 TOULON
*Arrière petit-fils*

**Amicie BARBOU**, née le 9 mai 2003 à La Seine Sur Mer (83) de nationalité française, représentée comme mineure par son père, Franck BARBOU précité, agissant en qualité de son administrateur légal, demeurant 96 avenue des Roses 83000 TOULON
*Arrière petite-fille*

**Alain MALTERRE**, né le 3 juillet 1948 à PONS (17), de nationalité française, médecin, demeurant 4 rue Charles Gounod 17100 LES GONDS
*Gendre*

**Danièle Marie Françoise BARBOU née PARMENTIER** le 13 octobre 1947 à Paris 16ème (75), de nationalité française, sans profession, demeurant 8 rue du Dr Deux Després 16510 VERTEUIL SUR CHARENTE
*Belle-fille*

**Jean CLERGEAUD**, né le 6 juillet 1949 à St Jean d'Angély (17), de nationalité française, pharmacien, demeurant 24 Fb St Cyprien 86000 POITIERS
*Gendre*

**Edith BARBOU née MARTIN,** le 15 mars 1943 à Chamalières (63), de nationalité française, sans profession, demeurant 18 rue louis Renard 86 000 POITIERS
*Belle-fille*

**Agathe BARBOU née MINSE** le 16 mars 1962 à St Mons la Taille ( 44), de nationalité française, sans profession, demeurant 1 ruelle de la Cure 86280 SAINT BENOIT
*Belle-fille*

**FAMILLE ET PROCHES de Patricia BAUDRY née le 19 novembre 1962 et de Sarah BAUDRY née le 22 avril 1989**

**Simone MATEOS** divorcée de Mr Jacques BAUDRY, née le 15 décembre 1940 à Paris Xe (75), de nationalité française, retraitée, demeurant 8/10 allée des Frères Lumières 77200 TORCY
*Mère de Patricia, grand-mère de Sarah*

**Jean-Jacques BAUDRY**, né le 2 août 1970 à Barcelone (Espagne), de nationalité française, voiturier, demeurant 10 rue Pablo Neruda 77200 TORCY
*Frère de Patricia, oncle de Sarah*

**FAMILLE ET PROCHES de Bernard BAUMIER né le 9 août 1950 et de Marie FLAMENT *(SA COMPAGNE)* née le 2 mars 1952**

**Mathieu BAUMIER**, né le 11 juillet 1979 à Orange (84), de nationalité française, étudiant, demeurant Le Villagé 84000 Buisson
*Fils de Bernard*

**Laurence BAUMIER**, née le 8 décembre 1976 à Orange (84), de nationalité française, institutrice, demeurant rue du Bourg 26400 GRANE
*Fille de Bernard*

**François-Xavier LIARD**, né le 7 juin 1972 à Amiens (80), de nationalité française, employé d'agent immobilier, demeurant chez Mr et Mme SELIN, 40 rue de la Libération 60530 DIEUDONNE
*Fils de Marie*

**Julien LEROY**, né le 23 juillet 1976 à Amiens (80), de nationalité française, stewart, demeurant 733 route des Taillades 84250 LE THOR
*Fils de Marie*

**Jeanne Henriette Andrée BAUMIER née REVEST** le 23 novembre 1925 à Saint Cyr sur Mer (83), de nationalité française, retraitée, demeurant 91 rue du 8 Mai 83740 LA CADIERE D'AZUR
*Mère de Bernard*

**Marie-Claude Jeanne BERZOLLA née BAUMIER** le 10 avril 1947 à La Cadière d'Azur (83), de nationalité française, demeurant 20 avenue Vincent Negrel 83740 LA CADIERE D'AZUR
*Sœur de Bernard*

**Jean-Marie Benjamin BERZOLLA**, né le 12 avril 1977 à Aubagne (13), de nationalité française, demeurant 20 avenue Vincent Negrel 83740 LA CADIERE D'AZUR
*Neveu de Bernard*

**Guillaume Dominique Raymond BERZOLLA**, né le 13 juillet 1972 à Marseille (13), de nationalité française, demeurant 16 allée des Clématites 83400 HYERES
*Neveu et filleul de Bernard*

**Jeannine Camille SILVESTRI née DESIRAT** le 7 juin 1952 à Saint-Cyr-sur-Mer (83) de nationalité française, assistante parlementaire, demeurant 866 chemin de la Begude 83270 SAINT-CYR-SUR MER
*Cousine de Bernard*

**Jacqueline Virginie Emilie GARNIER née DESIRAT** le 21 février 1942 à à Saint-Cyr-sur-Mer (83) de nationalité française, adjoint administratif, demeurant
*Cousine de Bernard*

**René SIMON BERZOLLA**, né le 27 octobre 1945 à Marseille (13), de nationalité française, informaticien, demeurant 20 avenue Vincent Negrel 83740 LA CADIERE D'AZUR
*Beau-frère de Bernard*

**Patrick Louis SUBRA**, né le 17 novembre 1953 à Avignon (13), de nationalité française, gérant de société, demeurant 20 rue des lavoirs 13870 ROGNONAS
*Ami de Bernard et de Marie*

**Germaine SUBRA née AUZEPI** le 7 avril 1956 à Salon de Provence (13), de nationalité française, demeurant 20 rue des Lavoirs 13870 ROGNONAS
*Amie de Bernard et de Marie*

**FAMILLE ET PROCHES de Marie-Danielle BISSON née ALARY le 17 septembre 1959, Daniel BISSON né le , Romain BISSON né le 13 septembre 1984, Antony BISSON né le 2 décembre 1987, Suzy BISSON née le 8 janvier 1989, Sarah BISSON née le 8 janvier 1989 et de Jean-Marie BISSON né le 15 août 1959**

**Marie-Reine ALARY**, née le 16 janvier 1927 à Cauce de Clérans (24), de nationalité française, sans profession, demeurant 12 rue du Peyrat 24100 CREYSSE
*Mère de Marie-Danielle, belle-mère de Daniel, grand-mère de Romain, Anthony, Suzy et Sarah*

**Roland BISSON**, né le 20 janvier 1930 à Bourré (41), de nationalité française, retraité, demeurant 11 chemin du Chêne Vert 41400 BOURRÉ-MONTRICHARD
*Père de Daniel et de Jean-Marie, beau-père de Marie-Danielle, grand-père de Romain, Anthony, Suzy et Sarah*

**Nicole PACALET née BISSON** le 19 décembre 1956 à Montrichard (41), de nationalité française, auxiliaire de vie, demeurant: 7ter rue Baboeuf 42300 ROANNE
*Sœur de Daniel et de Jean-Marie, belle-sœur de Marie-Danielle, tante de Romain, Anthony, Suzy et Sarah*

**Marie-Claude BISSON**, née le 13 septembre 1953 à Saint-Aignan (41), de nationalité française, sans profession (invalide), demeurant 4 rue Georges Litalien 41000 BLOIS
Sœur de Daniel et de Jean-Marie, belle-sœur de Marie-Danielle, tante de Romain, Anthony, *Suzy et Sarah*

**Marie-France ROCHE**, née ALARY le 27 janvier 1951 à LIORAC sur LOUYRE (24), de nationalité française, sans profession, demeurant 41 chemin des Feutres du Toulon - Appt n° 5 - 24000 PÉRIGUEUX
*Sœur de Marie-Danielle, belle-sœur de Daniel, tante de Romain, Anthony, Suzy et Sarah*

**Jean-Elie ALARY**, né le 20 décembre 1953 à BERGERAC (24, de nationalité française, magnétiseur, demeurant 24 rue Jean Micot 24100 BERGERAC
*Frère de Marie-Danielle, beau-frère de Daniel, tante de Romain, Anthony, Suzy et Sarah*

**Stéphanie PACALET**, née le 27 mai 1976 à FEURS (42), de nationalité française, agent de trafic aérien, demeurant 6 rue Malard 31700 BLAGNAC
*Nièce de Daniel, de Jean-Marie, de Marie-Danielle, cousine de Romain, Anthony, Suzy et Sarah*

**Christophe PACALET**, né le 20 décembre 1977 à Saint-Etienne (42), de nationalité française, employé de magasin, demeurant 16 rue Georges Plasse 42300 ROANNE
*Neveu de Daniel, de Jean-Marie, de Marie-Danielle, cousin de Romain, Anthony, Suzy et Sarah*

**Pierre PACALET**, né le 13 septembre 1954 à Saint-Chamond (Loire), de nationalité française, fonctionnaire au ministère de l'Environnement, demeurant 7ter rue Baboeuf 42300 ROANNE
*Beau-frère de Daniel, de Jean-Marie, de Marie-Danielle, oncle de Romain, Anthony, Suzy et Sarah*

**Delphine BLANCHET**, née le 23 novembre 1983 à Laval (53), de nationalité française, sans profession, demeurant 13 rue de Romme 53950 LOUVERNE
*Fiancée de Romain*

**Yvette BIGEON**, née le 9 février 1931 à Saint-Pierre la Vieille (14), de nationalité française, retraitée, demeurant 11 chemin du Chêne Vert 41400 BOURRÉ-MONTRICHARD
*Compagne de Mr Roland BISSON connaissant à ce titre des relations familiales régulières et suivies avec les membres de la famille de son concubin depuis 1989.*

**FAMILLE ET PROCHES de Francine BRUTIN née le 26 mai 1947**

**Geneviève CHOLLET**, 23 juin 1928 à MARLE (02), de nationalité française, retraitée, demeurant 39/4 rue Pierre Curtil 02000 LAON
*Mère*

**Claude CHOLLET**, né le 9 juillet 1952 à Laon (02), de nationalité française, chef des ventes, demeurant  20 avenue Parmentier 93600 AULNAY-SOUS-BOIS
*Frère*

**Jean-Pierre CHOLLET**, né le 27 juillet 1950 à Laon (02), de nationalité française, agent de contrôle, demeurant 6 rue des Ardennes 67460 SOUSSENWEYSHEIM
*Frère*

**José CHOLLET**, né le 19 septembre 1964 à Marle (02), de nationalité française, agent de service, demeurant 161 rue du Chanoine Pillons  62200 BOULOGNE-SUR-MER
*Frère*

**Lyliette CHOLLET**, née le 16 juillet 1949 à Laon (02), de nationalité française, employée commerciale, demeurant 30 rue de Panserot 91510 LARDY
*Sœur*

**Marc CHOLLET**, né le 11 juillet 1956 à Marle (02), de nationalité française, chef de ventes, demeurant 1 impasse du Chemin Vert  02840 ATHIES SOUS LAON
*Frère*

**Michel CHOLLET**, né le 8 janvier 1962 à Marle (02), de nationalité française, agent de maîtrise, demeurant 157 rue Belle Rade  59240 MALO LES BAINS
*Frère*

**Monique CHOLLET**, née le 14 octobre 1993 à Marle (02), de nationalité française, agent administratif, demeurant 7 chemin du Parc 02870 BESNY ET LOISY
*Sœur*


**FAMILLE ET PROCHES de Jean-Luc CHABLE, né le 5 avril 1958, Catherine CHABLE née CHEMIN le 9 mai 1957, Antoine CHABLE né le 5 juin 1988 et Chloé CHABLE née le 12 octobre 1989**

**Jean CHABLE**, né le 14 mars 1933 au Mans (72), de nationalité française, retraité, demeurant 11 rue Henri Bergson 72000 LE MANS
*Père de Jean-Luc, beau-père de Catherine, grand-père d'Antane et Chloé*

**Denise CHABLE**, née le  23 juin 1933 au Mans (72), de nationalité française, retraitée, demeurant 11 rue Henri Bergson 72000 LE MANS
*Mère de Jean-Luc, belle-mère de Catherine, grand-mère d'Antane et Chloé*

**Sylvie FROGER née CHABLE** le 30 janvier 1961 au Mans (72), de nationalité française, responsable administrative et comptable en entreprise, demeurant 2 square Pâtis 72190 SAINT-PAVACE
*Sœur de Jean-Luc, belle-sœur de Catherine et tante d'Antane et Chloé*

**Jean-Michel CHEMIN**, né le 07 mai 1967 à Ernée (35), de nationalité française, , ... (profession), demeurant 8 Chemin de la Fontaine 44471 CARQUEFOU
*Frère de Catherine, beau frère de Jean-Luc, oncle d'Antoine et Chloé*

**Thibaut FROGER**, né le 5 septembre 1988 au Mans (72), de nationalité française, élève, demeurant 2 square Pâtis 72190 SAINT-PAVACE représenté comme mineur par son père Patrick FROGER précité, agissant en qualité de son administrateur légal, demeurant 2 square Pâtis 72190 SAINT-PAVACE.
*Neveu de Jean-Luc et Catherine, cousin d'Antoine et Chloé*

**Patrick FROGER**, né le 9 juin 1958 au Mans (72), de nationalité française, expert comptable, demeurant 2 square Pâtis 72190 SAINT-PAVACE.
*Beau-frère de Jean-Luc et Catherine, oncle d'Antoine et Chloé*

**Isabelle BISSON épouse CHEMIN**, née le 7 décembre 1966 à Saint-Hilaire du Harcouet (50), de nationalité française, professeur, demeurant 8 Chemin de la Fontaine 44471 CARQUEFOU
*Belle-sœur de Jean-Luc et Catherine, tante d'Antoine et Chloé*

**Nicanor RICOTE**, né le 22 janvier 1951 à PERIGUEUX (24), de nationalité française, gérant majoritaire et président de sociétés, demeurant es-qualités 19, rue Paul Henri Spaak - BP 105 - 26904 VALENCE CEDEX 9 et à titre personnel La Bergeronne 07130 SOYONS
*Associé et meilleur ami de Monsieur Jean-Luc CHABLE*

**CR FINANCE**, société à responsabilité limitée au capital de 408.600 €uros, dont le siège social est 19, rue Paul Henri Spaak, BP 105, 26904 VALENCE Cedex 9, immatriculée au registre du commerce et des sociétés de ROMANS sous le numéro B 402 876 882 ;

**AUDITEA**, société à responsabilité limitée au capital de 7.500 €uros, dont les siège social est 58, Cours Becquart Castelbon, 38500 VOIRON, immatriculée au registre du commerce et des sociétés de GRENOBLE sous le numéro B 448 717 272 ;

**FORMAT PAYE**, société à responsabilité limitée au capital de 7.622 €uros dont les siège social est 19, rue Paul Henri Spaak, BP 105, 26904 VALENCE Cedex 9, immatriculée au registre du commerce et des sociétés de ROMANS sous le numéro B 415 111 780 ;

**RM CONSULTANTS ASSOCIES** société anonyme au capital de 550.000 €uros, dont le siège social est 19, rue Paul Henri Spaak, BP 105, 26904 VALENCE Cedex 9, immatriculée au registre du commerce et des sociétés de ROMANS sous le numéro B 352 224 687 ;

**FAMILLE ET PROCHES de Jean-Christophe CHABOY né le 24 février 1973**

**Christian Hilaire CHABOY**, né le 23 mai 1931 à Combloux (74), de nationalité française, retraité, demeurant 121 Allée des Thuyas 74300 THYEZ
*Père*

**Huguette Marie Marguerite CHABOY née AUBERT** le 24 février 1943 à La Bresse (88), de nationalité française, divorcée de Mr Michel GRIGNON le 22 novembre 1972, retraitée, demeurant 121 Allée des Thuyas 74300 THYEZ
*Mère*

**Corinne DUJOURD'HUI née GRIGNON**, le 18 décembre 1968 à St Jeoire (74), de nationalité française, coiffeuse, demeurant 137 rue du Marcelly 74460 MARNAZ
*Sœur*

**Estelle DUJOURD'HUI**, née le 1er avril 1993 à Cluses (74), de nationalité française, représentée comme mineure par sa mère, Corinne DUJOURD'HUI précitée, agissant en qualité de son administratrice légale, demeurant 137 rue du Marcelly 74460 MARNAZ
*Nièce et filleule*

**Mélanie DUJOURD'HUI**, née le 4 juin 1993 (date de naissance à vérifier ) à Cluses (74), de nationalité française, représentée comme mineure par sa mère, Corinne DUJOURD'HUI précitée, agissant en qualité de son administratrice légale, demeurant 137 rue du Marcelly 74460 MARNAZ

*Nièce et filleule*

**Frédéric DUJOURD'HUI**, né le 22 juin 1967 à Scionzier (74), de nationalité française, informaticien, demeurant 137 rue du Marcelly 74460 MARNAZ
*Beau-frère*

**FAMILLE ET PROCHES de Alain CHATAGNER né le 16 décembre 1949, Florence CHATAGNER née PETIT le 29 mai 1960, Adrien CHATAGNER né le 8 janvier 1988, Dorian CHATAGNER né le 25 juillet 1990 et Yann CHATAGNER né le 16 novembre 1994**

**Damien CHATAGNER**, né le 21 décembre 1976 à Mont Saint Aignan (76), de nationalité française, cadre technique, demeurant 15 rue des Eteules 31470 FONSORBES
*Fils d'Alain, beau-fils de Florence, demi-frère de Adrien, Dorian et Yann*

**Alexandra CHATAGNER**, née le 3 décembre 1975 à Rouen (76), de nationalité française, étudiante, demeurant 5 Saint Joseph Court CARDIFF CF 14 3BH WALES
*Fille d'Alain, belle-fille de Florence, demi-sœur de Adrien, Dorian et Yann*

**Jacques PETIT**, né le 26 février 1928 à Rouen (76), de nationalité française, retraité, demeurant Résidence Tivoli - 5 rue du Pérou 76000 ROUEN
*Père de Florence, beau-père de Alain, grand-père de Adrien, Dorian et Yann*

**Suzanne PETIT née BROHAN** le 18 septembre 1926 à Saint Nazaire (44), de nationalité française, retraitée, demeurant Résidence Tivoli - 5 rue du Pérou 76000 ROUEN
*Mère de Florence belle-mère d'Alain, grand-mère de Adrien, Dorian et Yann*

**Jean PETIT,** né le 6 janvier 1952 à Rouen (76), de nationalité française, médecin, demeurant 12 allée des Violettes 76420 BIHOREL
*Frère de Florence, beau-frère d'Alain, oncle de Adrien, Dorian et Yann*

**Michel CHATAGNER,** né le 13 mars 1952 à Rouen (76), de nationalité française, ingénieur, demeurant 21 rue Edouard Branly 78390 BOIS D'ARCY
*Frère d'Alain, beau-frère de Florence, oncle de Adrien, Dorian et Yann.*

**Pierre-Alexandre PETIT**, né le 28 mars 1986 à Paris (75), de nationalité française, étudiant, demeurant 12 allée des Violettes 76420 BIHOREL
*Neveu de Florence et Alain, cousin de Adrien, Dorian et Yann*

**Agnès PETIT**, née le 17 décembre 1988 à ...(), de nationalité française, représentée comme mineure par son père Jean PETIT précité, agissant en qualité de son administrateur légal, demeurant 12 allées des Violettes 76420 BIHOREL
*Nièce de Florence et Alain, cousine de Adrien, Dorian et Yann*

**Danièle PETIT née ROUGER** le 20 janvier 1953 à St Jean d'Angély (17), de nationalité française, médecin, demeurant 12 allée des Violettes 76420 BIHOREL
*Belle sœur de Florence et d'Alain, tante de Adrien, Dorian et Yann*

**FAMILLE ET PROCHES de Jeanne CHERIGUI née le 14 janvier 1954**

**Michaël TAHAR**, né le 13 août 1982 à La-Garenne-Colombes (92), de nationalité française, intérimaire, demeurant 83 boulevard de Valmy 92700 COLOMBES
*Fils*

**Barbara TAHAR**, née le 6 mai 1976 à Paris IVe (75), de nationalité française, assistance commerciale, demeurant 83 boulevard de Valmy 92700 COLOMBES
*Fille*

**Laurette BARGUIL née CHERIGUI** le 20 septembre 1958 à Clamart (92), de nationalité française, fonctionnaire, demeurant 22 rue Gabriel Péri 92700 COLOMBES
*Sœur*

**Olivier LENGLET**, né le 22 février 1973 à Montreuil (93), de nationalité française, fonctionnaire, demeurant 64 rue de l'Industrie 92700 COLOMBES
*Gendre*

**FAMILLE ET PROCHES de Colette Raymonde CHERNET née le 5 février 1945**
***(divorcée de Jacques ZINS )***

**Sébastien Geoffroy ZINS**, né le 18 mai 1973 à Paris XIVème (75), de nationalité française, directeur de société, demeurant 41 rue Dauphine 75006 PARIS
*Fils*

**Jeanne DONA,** née le 28 décembre 1921 à Ivry sur Seine (94), de nationalité française, retraitée, demeurant 7 rue Augusta 92160 ANTONY
*Mère*

**Marc CHERNET**, né le 13 août 1946 à Paris XVIIIème (75), de nationalité française, expert comptable et commissaire aux comptes, demeurant 7 allée du Ruisseau 92160 ANTONY
*Frère*

**Françoise, Sylvette LEPEUPLE née CHERNET** le 5 juin 1942 à Paris XVIIIème (75), de nationalité française, retraitée de l'inspection générale de l'Education Nationale, demeurant Maison Ossanussia 64120 GABAT
*Sœur*

**Arlette CAUDERLIET née CHERNET** le 11 mai 1962 à Barr (67) de nationalité française, ... (profession), demeurant 38 route de Giverny 27200 VERNON
*Demi-sœur*

**Matthieu CHERNET**, né le 17 avril 1971 à Suresnes (92), de nationalité française, avocat, demeurant 1 rue de Vaugirard 75006 PARIS
*Neveu*

**Albin CAUDERLIER**, né le 28 décembre 1986 à Chatenay Malabry (92), de nationalité française, sans profession, représenté comme mineur par sa mère, Arlette CAUDERLIER précitée, agissant en qualité de son administratrice légale, demeurant 38 route de Giverny 27200 VERNON
*Neveu et cousin*

**Raphaël CAUDERLIER**, né le 14 octobre 1989 à Paris XIème (75), de nationalité française, représenté comme mineur par sa mère, Arlette CAUDERLIER précitée, agissant en qualité de son administratrice légale demeurant 38 route de Giverny 27200 VERNON
*Neveu et cousin*

**Florian CAUDERLIER**, né le 28 février 1991 à Paris XIème (75), de nationalité française, représenté comme mineur par sa mère, Arlette CAUDERLIER précitée, agissant en qualité de son administratrice légale, demeurant 38 route de Giverny 27200 VERNON

*Neveu et cousin*

**Colin CAUDERLIER**, né le 18 décembre 1998 à Vernon (27) de nationalité française, représenté comme mineur par sa mère, Arlette CAUDERLIER précitée, agissant en qualité de son administratrice légale, demeurant 38 route de Giverny 27200 VERNON
*Neveu et cousin*

**René Pascal LEPEUPLE**, né le 19 janvier 1940 à Casablanca (Maroc), de nationalité française, retraité, demeurant Maison Ossanussia 64120 GABAT
*Beau-frère*

**Alain CAUDERLIER**, né le 24 Novembre 1959 à Vincennes (94), de nationalité française, demeurant 38 route de Giverny 27200 VERNON
*Epoux de sa demi-sœur*

**FAMILLE ET PROCHES de Yvon CHOTARD né le 14 janvier 1952 et de Pascale CHOTARD née ROUDIL le 24 août 1950**

**Mathieu CHOTARD**, né le 25 avril 1979 à Ivry sur Seine (94), de nationalité française, auditeur, demeurant 64 boulevard Malesherbes 75008 PARIS
*Fils*

**Thomas Georges Joseph CHOTARD**, né le 27 juillet 982 à Paris (75), de nationalité française, étudiant, demeurant 64 boulevard Malesherbes 75008 PARIS
*Fils*

**Colette Jacqueline ROUDIL**, né le 30 novembre1919 à Paris XIX$^{e}$ (75), de nationalité française, retraitée, demeurant 1 rue François Mouton 75015 PARIS
*Mère de Pascale, belle-mère de Yvon*

**Chantal ROUDIL**, née le 30 novembre 1943 à Paris XIV$^{e}$ (75), de nationalité française, financière, demeurant 1 rue François Mouton 75015 PARIS
*Sœur de Pascale, belle-sœur de Yvon*

**Laurence ROUDIL**, née le 28 janvier 1954 à Paris VIII$^{e}$ (75), de nationalité française, assistante de direction, demeurant 1 rue François Mouton 75015 PARIS
*Sœur de Pascale, belle-sœur de Yvon*

**Didier Bertrand Claude ROUDIL**, né le 16 octobre1947 à Paris III$^{e}$ (75), de nationalité française, préretraité, demeurant 32 rue d'Anjou 92100 BOULOGNE BILLANCOURT
*Frère de Pascale, beau-frère de Yvon*

**Alain ROUDIL**, né le 24 septembre 1942 à Paris XIV$^{e}$ (75), de nationalité française, retraité demeurant 120 rue de Javel75015 PARIS
*Frère de Pascale, beau-frère de Yvon*

**FAMILLE et PROCHES de Céline COHÜET née le 17 février 1975**

**Claude COHUET**, né le 20 janvier 1951 à Paris XIX$^{ème}$, (75), de nationalité française, demeurant à 35 route de harly 69230 St Genis Laval
*Père de Céline COHUET*

**Margaret COHUET**, né le 21 janvier 1951 à Levallois Perret (92), de nationalité française, demeurant à 35 route de Charly 69230 St Genis Laval
*Mère de Céline COHUET.*

**Grégory COHUET**, né le 11 août 1973 à Paris XIXème (75), de nationalité française, demeurant 8 rue Seguin 69002 LYON
*Frère de Céline COHUET.*

**FAMILLE ET PROCHES de Jean-Louis COQUIN né le 18 février 1944 et de Marie-Claude COQUIN née BELLOEIL le 16 mai 1944**

**Brigitte DELAMAIRE née COQUIN** le 30 janvier 1973 à Nantes (44), de nationalité française, pharmacienne, demeurant 143 boulevard Saint Denis 92400 COURBEVOIE
*Fille*

**Valérie MAURY née COQUIN** le 3 janvier 1969 à Nantes (44), de nationalité française, enseignante, (profession), demeurant 3 rue Paul Deroulède 92270 BOIS COLOMBES
*Fille*

**Hermine DELAMAIRE,** née le 17 mai 2001 à Levallois-Perret (92), de nationalité française, représentée comme mineure par sa mère Brigitte DELAMAIRE précitée, agissant en qualité de son administratrice légale, demeurant 143 boulevard Saint Denis 92400 COURBEVOIE
*Petite-fille*

**Camille DELAMAIRE,** née le 9 janvier 2004 à Neuilly sur Seine (75), de nationalité française, représentée comme mineure par sa mère Brigitte DELAMAIRE précitée, agissant en qualité de son administratrice légale, demeurant 143 boulevard Saint Denis 92400 COURBEVOIE
*Petite-fille*

**Clément MAURY,** né le 25 juin 1999 à Bois Colombes (92), de nationalité française, représenté comme mineur par sa mère Valérie MAURY précitée, agissant en qualité de son administratrice légale, demeurant 3 rue Paul Deroulède 92270 BOIS COLOMBE
*Petit-fils*

**Alix MAURY,** né le 2 juin 2001 à Bois Colombes (92), de nationalité française, représenté comme mineur par sa mère Valérie MAURY précitée, agissant en qualité de son administratrice légale, demeurant 3 rue Paul Deroulède 92270 BOIS COLOMBE
*Petit-fils*

**Charles MAURY,** né le 4 juin 2004 à Bois Colombes (92), de nationalité française, représenté comme mineur par sa mère Valérie MAURY précitée, agissant en qualité de son administratrice légale, demeurant 3 rue Paul Deroulède 92270 BOIS COLOMBE
*Petit-fils*

**Cédric MAURY,** né le 9 novembre 1969 à Paris (75), de nationalité française, Ingénieur, demeurant 3 rue Paul Deroulède 92270 BOIS COLOMBE
*Gendre*

**Matthieu DELAMAIRE,** né le 17 mai 1975 à Saint-Malo (35), de nationalité française, analyste financier, demeurant 143 boulevard Saint Denis 92400 COURBEVOIE
*Gendre*

**FAMILLE ET PROCHES de Lauren COURCHIA née le 6 juillet 1990 et de Annie COURCHIA née BABU le 8 mai 1948**

**Francis COURCHIA**, né le 30 octobre 1947 à Taza (Maroc), de nationalité française, chirurgien-dentiste, demeurant 24 rue Pierre Noguey 33000 BORDEAUX

*Père de Lauren et ex-mari de Annie*

**FAMILLE ET PROCHES de Sylviane DAILLEAU, née le 30 janvier 1953**

**Marie-Jeanne DAILLEAU née ROUMEGOUX** le 15 mai 1925 à Moustey (40), de nationalité française, retraitée, demeurant 5 Boulevard Yves Mainguy 40000 MONT-DE-MARSAN
*Mère*

**Dominique COUSI née DAILLEAU** le 7 avril 1949 à Montcornet (02), de nationalité française, professeur, demeurant 23 rue Lacaze 33000 BORDEAUX
*Sœur*

**Alex DAILLEAU**, né le 21 novembre 1959 à Cognac (16), de nationalité française, demeurant 41 rue du Docteur Decorse 94410 SAINT-MAURICE
*Frère*

**Coralie COUSI**, née le 5 mars 1975 à Troys (10), de nationalité française, ingénieur, demeurant 120 boulevard Diderot 75012 PARIS
*Nièce*

**Clémentine COUSI** née le 11 mai 1979 à Angoulême (16), de nationalité française, chercheur en Chimie, demeurant 1154 avenue Vigan Braquet 30200 BAGNOLS-SUR-SEZE
*Nièce*

**Ariane COUSI**, née le 7 mars 1984 à Saint-Michel (16), de nationalité française, régisseur de cinéma, demeurant 10 rue louis Vicat, 75015 PARIS
*Nièce*

**Maïté DAILLEAU**, née le 21 mars 1989 à Paris XIV[ème] (75), de nationalité française, demeurant 41 rue du Docteur Decorse 94410 SAINT-MAURICE, représentée comme mineure par son père Alex DAILLEAU sus-nommée, agissant en qualité de son représentant légal, demeurant même adresse
*Nièce*

**Catherine DAILLEAU**, née le 25 mars 1992 à Paris XIV[ème] (75), de nationalité française, demeurant 41 rue du Docteur Decorse 94410 SAINT-MAURICE, représentée comme mineure par son père Alex DAILLEAU sus-nommée, agissant en qualité de son représentant légal, demeurant même adresse
*Nièce*

**Aubrée DAILLEAU**, née le 10 février 1995 à Saint-Maurice (94), de nationalité française, demeurant 41 rue du Docteur Decorse 94410 SAINT-MAURICE, représentée comme mineure par son père Alex DAILLEAU sus-nommée, agissant en qualité de son représentant légal, demeurant même adresse
*Nièce*

**FAMILLE ET PROCHES de Philippe Marcel Eugène DECREUX, né le 9 octobre 1955, de Géraldine DECREUX née PIRON le 13 août 1965 et de Charline DECREUX née le 13 septembre 1991**

**Aurélie THIL née DECREUX** le 14 novembre 1979 à Besançon (25), de nationalité française, en arrêt maladie pour maladie professionnelle, demeurant 2 ter, rue Pasteur 34460 COURNONTERRAL
*Fille de Philippe, belle-fille de Géraldine, demi-sœur de Charline*

**Marguerite DECREUX**, née le 1er décembre 1921à Besançon (25), de nationalité française, retraitée, demeurant 16A avenue Denfert-Rochereau 25000 BESANÇON
*Mère de Philippe, belle-mère de Géraldine, grand-mère de Charline*

**Michèle PIRON**, née le 10 septembre 1941 à Louhans (71), de nationalité française, ... (profession), demeurant « Le Beaufort A », 19 rue de la Peupleraie 71500 CHATEAURENAUD
*Mère de Géraldine, belle-mère de Philippe, grand-mère de Charline*

**Annie GAUDILLERE-DECREUX**, née le 16 juillet 1948 à Champigny-sur-Marne (94), de nationalité française, retraitée artisan, demeurant La Malate  3 chemin des Buis 25660 MONTFAUCON
*Sœur de Philippe, belle-sœur de Géraldine, tante et marraine de Charline*

**Laurence LAGARDE née PIRON** le 30 novembre 1962 à Châteaurenaud (71), de nationalité française, infirmière, demeurant 11 Boulevard Einstein 21000 DIJON
*Sœur de Géraldine, belle-sœur de Philippe, tante et marraine de Charline*

**Jean-Michel PIRON**, né le 3 mai 1960 à Châteaurenaud (71), de nationalité française, directeur général de société, demeurant 75 impasse des Hauts de Challes 01000 BOURG EN BRESSE
*Frère de Géraldine, beau-frère de Philippe, oncle de Charline*

**Pierre CLERE**, né le 23 juillet 1913 à Lousange (39), de nationalité française, retraité, demeurant à la Maison de retraite PERNET 71500 LOUHANS
*Grand-père de Géraldine, arrière-grand-père de Charline*

**Suzanne BIAUDET**, née le 2 novembre 1924 à Besançon (25), de  nationalité  française, retraitée, demeurant 11 A rue Alexix Chopard 25000 BESANCON
*Tante et marraine de Philippe, grande-tante de Charline*

**Alexandre GAUDILLERE**, né le 26 mai 1977 à Besançon (25), de nationalité française, demandeur d'emploi (ingénieur), demeurant La Malate  3 chemin des Buis 25660 Montfaucon
*Neveu de Géraldine et de Philippe, cousin, parrain de Charline*

**Renaud GAUDILLERE**, né le 28 mai 1971 à Besançon (25), de nationalité française, ingénieur, demeurant 43 rue Thibert 26000 VALENCE
*Neveu de Géraldine, neveu et filleul de Philippe, cousin de Charline*

**Pierre-Marie LAGARDE**, né le 14 décembre 1991 à Dijon (21), de nationalité française, représenté comme mineur par sa mère, Laurence LAGARDE précitée, agissant en qualité de son administratrice légale, demeurant 11 boulevard Einstein 21000 DIJON
*Neveu de Géraldine et de Philippe, cousin de Charline*

**Anne-Claire LAGARDE**, née le 28 janvier 1994 à Dijon (21), de nationalité française, représentée comme mineure par sa mère, Laurence LAGARDE précitée, agissant en qualité de son administratrice légale, demeurant 11 boulevard Einstein 21000 DIJON
*Nièce et Filleule de Géraldine, nièce de Philippe, cousine de Charline*

**Dominique LAGARDE**, né le 28 mai 1962 à Dijon (21), de nationalité française, infirmier, demeurant 11 boulevard Einstein 21000 DIJON
*Beau-frère de Géraldine et de Philippe, oncle de Charline*

**Catherine FARGETTE**, née le 25 avril 1960 à Louhans (71), de nationalité française, directrice d'agence bancaire, demeurant 75 impasse des Hauts de Challes 01000 BOURG EN BRESSE
*Belle-sœur de Géraldine, belle-sœur de Philippe, tante de Charline Decreux*

**FAMILLE et PROCHES de Jack DEGOUT né le 22 avril 1953 et de Jonathan DEGOUT né le 1er décembre 1995**

**Dominique DEGOÛT**, née MURET le 4 avril 1954 à Paris 14ème (75), de nationalité française, demeurant 15 allée des Tilleuls 93 220 GAGNY
*Epouse de Jack, mère de Jonathan*

**Jérôme DEGOÛT**, né le 22 décembre 1978 à Bondy (93), de nationalité française, demeurant 15 allée des Tilleuls 93220 GAGNY
*Fils de Jack, frère de Jonathan*

**Karine DEGOUT**, née le 18 octobre 1981 à Bondy (93), de nationalité française, demeurant 15 allée des Tilleuls 93220 GAGNY
*Fille de Jack, sœur de Jonathan*

**André Charles DEGOÛT**, né le 12 mars 1928 à TOURS (37), de nationalité française, demeurant 20 rue Jean Jaurès 93 130 NOISY-LE-SEC
*Père de Jack, grand-père de Jonathan*

**Anna Angélique Marie DEGOÛT née BARBIER** le 13 mars 1928 à LANTILLAC (56), de nationalité française, retraité, demeurant 20, rue Jean Jaurès 93 130 NOISY-LE-SEC
*Mère de Jack, grand-mère de Jonathan*

**Annick Martine AUDIC** née **DEGOÛT** le 18 mars 1955 à Tours (37), de nationalité française, demeurant 13 rue Popincourt 75011 PARIS
*Sœur de Jack, tante de Jonathan*

**Yvonne MURET née LEVEQUE** le 25 décembre 1925 à LYON, retraitée, demeurant 2 rue Maurice Ravel 93110 Rosny sous Bois
*Grand-mère de Jonathan, belle-mère de Jack*

**Christelle AUDIC**, née le 12 mai 1981 à Paris 12ème (75), de nationalité française, demeurant 13 rue Popincourt 75011 PARIS
*Nièce de Jack, cousine de Jonathan*

**Virginie Maryse AUDIC**, née le 9 juin 1978 à Bondy (93), de nationalité française, demeurant 13 rue Popincourt 75011 PARIS
*Nièce de Jack, cousine de Jonathan*

**Didier AUDIC**, né le 26 novembre 1954 à Blanc Mesnil (93), de nationalité française, demeurant 13 rue Popincourt 75011 PARIS
*Beau-frère de Jack, oncle de Jonathan*

**Marc Jacques Alain MURET**, né le 17 août 1959 à Paris 14ème (75), de nationalité française, demeurant 13 ruelle Bayeux 02670 FOLEMBRAY
*Beau-frère de Jack, oncle de Jonathan*

**FAMILLE ET PROCHES de Francis DEMEESTERE, né le 18 septembre 1945**

**Béatrice DESPLANQUE née DEMEESTERE** le 26 septembre 1942 à Halluin (59), de nationalité française, assistante maternelle, demeurant 18 rue Fond de l'Hôpital 34430 SAINT JEAN DE VEDAS
*Sœur*

**Sabine COURTOIS née DEMEESTERE** le 26 avril 1944 à Halluin (59), de nationalité française, retraitée, demeurant 4 allée Baudelaire 59139 WATTIGNIES
*Sœur*

**Emmanuel COURTOIS**, né le 14 août 1975 à Lille (59), de nationalité française, assistant social, demeurant 7 avenue de Naffrie 34630 SAINT-THIBERY
*Neveu*

**Anne COURTOIS**, née le 22 juin 1969 à Lille (59), de nationalité française, responsable accueil et diffusion au Comité Départemental du Tourisme de l'Hérault, demeurant Bât. A – Appt. 1 – 291 quai Luis le Vau 34080 MONTPELLIER
*Nièce*
*Agit aussi comme proche de Jeanne CHERIGUI, compagne de son oncle Francis DEMEESTERE*

**Vincent COURTOIS**, né le 10 août 1971 à Lille (59), de nationalité française, ingénieur informaticien, demeurant 9 rue de la Lune 75002 PARIS
*Neveu*

**Pierre-Claude COURTOIS**, né le 22 juin 1942 à Lille (59), de nationalité française, retraité, demeurant 4 allée Baudelaire 59139 WATTIGNIES
*Beau-frère*

**FAMILLE ET PROCHES de Bruno DUCHATELLE né le 23 mai 1959, Marie-Christine DUCHATELLE née CROIZE le 11 septembre 1959, Jean DUCHATELLE né le 5 décembre 1993**

**Marie-Thérèse Andrée DUCHATELLE née BOURDOUZE** le 5 avril 1934 à Lille ( 59) de nationalité française, retraitée, demeurant 13 rue des Hêtres 92350 LE PLESSIS ROBINSON
*Mère de Bruno, belle-mère de Marie Christine, grand-mère de Jean*

**Jean-Claude Georges Marie DUCHATELLE**, né le 7 avril 1932 à Lille (59), de nationalité française, retraité, demeurant 13 rue des Hêtres 92350 LE PLESSIS ROBINSON
*Père de Bruno, beau-père de Marie Christine, grand-père de Jean*

**Marie-Christine Agnès MARGUET née DUCHATELLE** le 3 mai 1956 à Lille (59), de nationalité française, infirmière, demeurant Aichacher Strasse 1 81379 MUNICH (Allemagne)
*Sœur de Bruno, belle-sœur de Marie-Christine, tante de Jean*

**Isabelle Marie Thérèse MANSON née DUCHATELLE** le 2 décembre 1957 à Lille (59), de nationalité française, infirmière, demeurant 31 rue des Roses 92160 ANTONY
*Sœur de Bruno, belle-sœur de Marie-Christine, tante de Jean*

**Carine Marie Anne ZUFFERLI née DUCHATELLE** le 28 décembre 1963 à Lille (59), de nationalité française, orthophoniste, demeurant 3 chemin du Roi Tristan 35740 PACE
*Sœur de Bruno, belle-sœur de Marie-Christine, tante de Jean*

**François Paul Marie DUCHATELLE** né le 5 octobre 1967 à Lille (59), de nationalité française, docteur en chirurgie dentaire, demeurant 1 route de la Grande du Bois 78610 LES BREVIERES
*Frère de Bruno, beau-frère de Marie-Christine, oncle de Jean*

**Marc Bernard Marie DUCHATELLE** né le 19 septembre 1969 à Fontenay aux Roses ( 92), de nationalité française, expert comptable, demeurant 4 place Henri Barbusse Bât C 8 92350 LE PLESSIS ROBINSON
*Frère de Bruno, beau-frère de Marie-Christine, oncle de Jean*

**Stéphanie Marie Catherine DUCHATELLE,** née le 27 janvier 1973 à Fontenay aux Roses (92) de nationalité française, kinésithérapeute, demeurant 8 rue de la Louvière 78120 RAMBOUILLET

*Sœur de Bruno, belle-sœur de Marie-Christine, tante de Jean*

**Aude Marie Stéphanie MANSON,** née le 22 novembre 1984 à Fontenay aux Roses (92), de nationalité française, élève ingénieur demeurant 31 rue des Roses 92160 ANTONY
*Nièce de Bruno et de Marie-Christine, cousine de Jean*

**FAMILLE ET PROCHES de Dominique Norbert EVLAKHOFF né le 16 mars 1966 et de Nadia EVLAKHOFF née le 12 mai 1958**

**Colette PETAT-GODARD,** née le 26 août 1938 à Bourg-Fidèle (08), de nationalité française, retraitée, demeurant 564 rue du Bourg-Neuf 45470 LOURY
*Mère de Dominique et Nadia*

**Alexandre Jules EVLAKHOFF**, né le 30 juin 1930 à Proviseux-et-Plesnoy (02), de nationalité française, retraité, demeurant 90 rue Anatole France (RDC, pte. 126) 93120 LA COURNEUVE
*Père de Dominique et Nadia*

**Lydia LEVRIEN née EVLAKHOFF** le 10 août 1964 à Château-Thierry (02), de nationalité française, agent administratif, demeurant 17 impasse des Peupliers 94200 IVRY-sur-SEINE
*Sœur de Dominique et Nadia*

**FAMILLE et PROCHES de Danielle FERRIERE née PRIETO le ... et Marie FERRIERE née le**

**Céline-Emmanuelle ROTELLA-TOLEDO**, née .....le ... à ... demeurant 36 rue Pierre Thiers 94130 NOGENT SUR MARNE
*Fille de Danielle, sœur de Marie*

*▹Petite-fille de cœur de Jacqueline BAR née DELARUE (famille n°)*

**FAMILLE ET PROCHES de Philippe FOUCHARD né le 5 février 1937, Annie COTILLON née le 2 juillet 1936, Isabelle FOUCHARD née le 22 décembre 1959, Edward ZALAZNICK né le 9 mars 1961, David né le 14 octobre 1991, Paul né le 17 janvier 1995, Thomas né le 18 novembre 1997, Jean-Yves FOUCHARD né le 7 juillet 1958, Mégumi Chiya né le 14 août 1963, Ichiro né le 29 juillet 1998 et Natsuo né le 30 septembre 1999.**

**David FOUCHARD** né le 27 octobre 1968 à Abidjan (Cote d'Ivoire), de nationalité française, avocat, demeurant 5 rue de la Meuse 21 121 FONTAINE LES DIJONS.
*Fils de Philippe Fouchard et d'Annie Cotillon, frère d'Isabelle Fouchard, beau-frère d'Edward Zalaznick, oncle de David, Paul et Thomas, frère de Jean-Yves Fouchard, beau-frère de Mégumi Chiya et oncle de Ichiro et de Natsuo.*

**Denis FOUCHARD** né le 11 septembre 2000 à Dijon (21), de nationalité française, représenté comme mineur par son père David FOUCHARD, demeurant 5 rue de la Meuse 21121 FONTAINE LES DIJONS
*Petit-fils de Philippe Fouchard et d'Annie Cotillon, neveu d'Isabelle Fouchard, neveu d'Edward Zalaznick, cousin de David, Paul et Thomas, neveu de Jean-Yves Fouchard, neveu de Mégumi Chiya et cousin de Ichiro et de Natsuo.*

**Claude FOUCHARD** né le 11 août 1935 à Besançon, de nationalité française, retraité, demeurant 3 avenue Alfred de Musset, 78110 LE VESINEY.
*Frère de Philippe Fouchard, beau-frère d'Annie Cotillon , oncle d'Isabelle Fouchard, oncle par alliance d'Edward Zalaznick, grand-oncle de David, Paul et Thomas, oncle de Jean-Yves Fouchard, oncle par alliance de Mégumi Chiya et grand-oncle de Ichiro et de Natsuo.*

**FAMILLE ET PROCHES DE Stéphanie GAMBRA 23 novembre 1976**

**Alain GAMBRA**, né le 28 novembre 1954 à Marseille (13), de nationalité française, demeurant 1477 route de la Frasse 74170 LES CONTAMINES MONTJOIE
*Père*

**Madeleine GAMBRA née DECHAUMES** le 28 novembre 1950 à Sallanches (74), de nationalité française, demeurant 1477 route de la Frasse 74170 LES CONTAMINES MONTJOIE
*Mère*

**Laetitia GAMBRA,** née le 18 septembre 1972 à Sallanches (74), de nationalité française, demeurant 29 rue Thubanneau 13001 MARSEILLE
*Sœur*

**Laurent GAMBRA**, né le 30 juillet 1979 à Sallanches (74), de nationalité française, demeurant 1477 route de la Frasse 74170 LES CONTAMINES MONTJOIE
*Frère*

**FAMILLE ET PROCHES de Alain GARRIGUE, né le 31 mars 1960, Christine Joëlle GARRIGUE née LAURURIE le 6 mars 1963, Simon GARRIGUE né le 15 avril 1992 et de Marjorie GARRIGUE née le 1er mars 1995**

**Yves Jean LAURURIE,** née le 6 août 1931 à Royan (17), de nationalité française, retraité des Postes, demeurant 8 rue de Provence 33700 MERIGNAC
*Père de Christine Joëlle, grand-père de Simon et de Marjorie, beau-Père de Alain*

**Danielle PANAIOTA,** née le 9 septembre 1937 à Brive (19), de nationalité française, retraitée, demeurant 36 rue du Professeur Arnozan, 33140 VILLENAVE-D'ORNON
*Mère de Christine Joëlle, grand-mère de Simon et de Marjorie, belle-mère de Alain*

**Henri GARRIGUE,** né le 18 janvier 1934 à Beaumont (24), de nationalité française, retraité, demeurant 28 avenue Louis Ters 24440 BEAUMONT
*Père de Alain, grand-père de Simon et de Marjorie, beau-père de Christine Joëlle*

**Jacqueline GARRIGUE née LORAND** le 7 novembre 1935 à La Trinité Porhet (56), de nationalité française, retraitée, demeurant 28 avenue Louis Ters 24440 BEAUMONT
*Mère de Alain, grand-mère de Simon et de Marjorie, belle-mère de Christine Joëlle*

**Christophe GARRIGUE,** né le 28 août 1961 à Paris XVIIème (75), de nationalité française, ... (profession), demeurant 98 rue de Nezenel 56570 LOCMIQUELIC
*Frère de Alain, beau- frère de Christine Joëlle, oncle de Simon et Marjorie*

**Muriel LAURURIE,** née le 8 mai 1969 à Talence (33), de nationalité française, demeurant 12 rue du Bourbonnais 33510 ANDERNOS
*Sœur de Christine Joëlle, belle-sœur de Alain, tante de Simon et de Marjorie*

**Patricia GARRIGUE née CAQUET,** née le 15 février 1967, de nationalité française, ... (profession), demeurant 98 rue de Nezenel 56570 LOCMIQUELIC

*Belle-sœur de Christine Joëlle et Alain, tante de Simon et Marjorie*

**Lucile GARRIGUE**, née le 15 janvier 2000 à Lorient (56), de nationalité française, représentée comme mineure par père Christophe GARRIGUE précité, agissant en qualité de son administrateur légal, demeurant 98 rue de Nezenel 56570 LOCMIQUELIC
*Nièce de Christine Joëlle et Alain, cousine de Simon et Marjorie*

**Ulysse GARRIGUE**, né le 7 janvier 2002 à Lorient (56), de nationalité française, représentée comme mineur par Christophe GARRIGUE précité, agissant en qualité de son administrateur légal, demeurant 98 rue de Nezenel 56570 LOCMIQUELIC
*Neveu de Christine Joëlle et Alain, cousin de Simon et Marjorie*

**L'Institut LAUE-LANGEVIN**, société civile de droit français, ayant son siège 6 rue Jules Horowitz, BP 156, 38042 GRENOBLE Cédex 9, SIRET 779 555 887, agissant poursuites et diligences de son Directeur, représentant légal aux termes de la Convention inter-gouvernementale du 19 janvier 1967, demeurant ès-qualité audit siège
*Employeur de Alain GARRIGUE*

**FAMILLE et PROCHES de Philippe GOILLANDEAU, né le 19 juin 1951 et de Martine GOILLANDEAU née JAMOIS le 24 mai 1948**

**Caroline DUBOIS née GOILLANDEAU** le 28 avril 1974 à Nantes (44), de nationalité française, sans profession, demeurant 248 avenue Becquart, 59130 LAMBERSART
*Fille*

**Emmanuelle WALLAERT née GOILLANDEAU** le 21 septembre 1975 à Nantes (44), de nationalité française, directrice marketing, demeurant 7 rue Gustave Delory 59170 CROIX
*Fille*

**Jeanne JAMOIS**, né le 11 avril 1924 à Nantes (44), de nationalité française, retraitée, demeurant 70 rue d'Aligre 17230 MARANS
*Mère de Martine, belle-mère de Philippe*

**Paul JAMOIS**, né le 4 avril 1920 à Marans (17 ), de nationalité française, retraité, demeurant 70 rue d'Aligre 17230 MARANS
*Père de Martine, beau-père de Philippe*

**Jeanne GOILLANDEAU**, née le 6 février 1925 à Verton (44), de nationalité française, retraitée, demeurant 19 avenue des Saphirs 44500 LA BAULE ESCOUBLAC
*Mère de Philippe, belle-mère de Martine*

**Laurence PELOTEAU née JAMOIS** le 7 septembre 1951 à MARANS (17), de nationalité française, médecin, demeurant 12 route Pré de la Cure 85110 LA JAUDONNIERE
*Sœur de Martine, belle-sœur de Philippe*

**Jean-Paul JAMOIS**, né le 2 octobre 1950 à Marans (17), de nationalité française, représentant, demeurant 20 bis rue Ernest Legouve 44000 NANTES
*Frère de Martine, beau-frère de Philippe*

**Luc GOILLANDEAU**, né le 14 octobre 1948 à Nantes (44), de nationalité française, expert comptable, demeurant 8bis rue Hanneloup 49000 ANGERS
*Frère de Philippe, beau-frère de Martine*

**Jacques GOILLANDEAU**, né le 21 septembre 1949 à Nantes (44), de nationalité française, assureur, demeurant 16 avenue Sergent Maginot 44000 NANTES
*Frère de Philippe, beau-frère de Martine*

**Pierre GOILLANDEAU**, né le 9 mai 1947 à Nantes (44), de nationalité française, chef d'entreprise, demeurant 24bis rue Noire 44000 NANTES
*Frère de Philippe, beau-frère de Martine*

**Manon DUBOIS** née le 5 août 2001 à Saint Nazaire (44), de nationalité française, représentée comme mineure par sa mère, Caroline DUBOIS précitée, agissant en qualité de son administratrice légale, demeurant 248 avenue Becquart, 59130 LAMBERSART
*Petite-fille*

**Mathis DUBOIS** né le 30 janvier 2004 à Lille (59), de nationalité française, représenté comme mineur par sa mère, Caroline DUBOIS précitée, agissant en qualité de son administratrice légale, demeurant 248 avenue Becquart, 59130 LAMBERSART
*Petit-fils*

**Léo WALLAERT**, né le 28 janvier 2003 à Lille (59), de nationalité française, représenté comme mineur par sa mère Emmanuelle WALLAERT précitée, agissant en qualité de son administratrice légale, demeurant 7 rue Gustave Delory 59170 CROIX
*Petit-fils*

**Suzanne ROCH**, née le 13 juillet 1921 à Nantes (44), de nationalité française, retraitée, demeurant 20 rue Ernest Legouve 44000 NANTES
*Tante de Martine*

**Vincent DUBOIS**, né le 21 janvier 1973 à Tours (37), de nationalité française, directeur commercial, demeurant 248 avenue Becquart, 59130 LAMBERSART
*Gendre*

**Nicolas WALLAERT**, né le 19 juillet 1972 à Dunkerque (59), de nationalité française, directeur financier, demeurant 7 rue Gustave Delory 59170 CROIX
*Gendre*


**FAMILLE ET PROCHES de Etienne HALLEY né le 6 octobre 1946 et de Nicole HALLEY née BEAUGRAND le 14 juillet 1947**

**Sébastien HALLEY**, né le 6 novembre 1968 à Villejuif (94), de nationalité française, gérant et chef d'entreprise, demeurant Torcey, 27390 VERNEUSSES.
*Fils*

**Arnaud HALLEY**, né le 8 octobre 1973 à Vitry sur Seine (94), de nationalité française, gérante et chef d'entreprise, demeurant 83, rue du Pré de la Bataille, 76000 ROUEN.
*Fils*

**Renée Emma Lucienne BEAUGRAND née GRAVELLE** le 13 septembre 1922 à Neaufles sur Risle (27), de nationalité française, retraitée, demeurant 18 rue Etienne Dolet 94550 CHEVILLY-LARUE
*Mère de Nicole et belle-mère d'Etienne*

**Annick Louisette Eugénie CHARDEL née BEAUGRAND** le 3 juillet 1952 à Chevilly Larue (94), de nationalité française, commerçante, demeurant 30 rue Charles Perrault 91170 VIRY-CHATILLON
*Sœur de Nicole et belle-sœur d'Etienne*

**FAMILLE ET PROCHES de Fatima HJIJAJ née le 4 novembre 1956**

**Benhamed MHAMDI**, né le 25 décembre 1968 à Benidrar (Maroc), de nationalité marocaine, demeurant 226 boulevard Jean Jaurès 92100 BOULOGNE BILLANCOURT
*Epoux*

**Ahmed EL BEY** né en 1951 à Bénidrar (Maroc), de nationalité marocaine,demeurant 4 rue Laennec - 77500 CHELLES
*Beau-frère*

**Nouzha EL BEY**, née le 3 juin 1963 à Taza (Maroc), de nationalité marocaine, demeurant 4 rue Laennec 77500 CHELLES
*Soeur*

**Ferase EL BEY**, né le 23 mars 1989 à Montfermeil (Seine Saint Denis), représenté comme mineur par son père Ahmed ELBEY précité, agissant en qualité d'administrateur légal, demeurant 4 rue Laennec 77500 CHELLES
*Neveu*

**Walid EL BEY**, né le 20 novembre 1991 à Montfermeil (Seine Saint Denis), représenté comme mineur par son père Ahmed ELBEY précité, agissant en qualité d'administrateur légal, demeurant 4 rue Laennec -77500 CHELLES
*Neveu*

**Awatif EL BEY**, née le 3 août 1993 à Montfermeil (Seine Saint Denis), représentée comme mineure par son père Ahmed ELBEY précité, agissant en qualité d'adminstrateur légal, demeurant 4 rue Laennec 77500 CHELLES
*Nièce*

**Boujemâa EL BEY**, né le 5 septembre 1997 à Montfermeil (Seine Saint Denis), représenté comme mineur par son père Ahmed ELBEY précité, agissant en qualité d'adminstrateur légal, demeurant 4 rue Laennec 77500 CHELLES
*Neveu*

**FAMILLE ET PROCHES de Lubka IORDANOVA née le 12 janvier 1959**

**Gueorgui STOÏTCHKOV**, né à SOFIA (Bulgarie) le 9 juillet 1979, de nationalité bulgare, carte de séjour n° 0403004520 délivrée par le Préfet des Alpes de Haute Provence en date du 28 janvier 2004, étudiant, demeurant La Bergerie, 1 rue de l'Industrie 04150 BANON
*Fils*

**Plamen STOÏTCHKOV**, né à SOFIA (Bulgarie) le 27 novembre 1985, de nationalité française, étudiant, demeurant La Bergerie, 1 rue de l'Industrie 04150 BANON
*Fils*

**FAMILLE ET PROCHES de Bernadette ISELER née le 8 février 1957**

**Claudine FERRET épouse HAVERBEKE**, née le 27 novembre 1944 à Les Lilas (93), de nationalité française, demeurant 7 rue Henri Jumelais 56000 VANNES,
*Demi-sœur*

**Hélène DELAHOUSSE née HAVERBEKE**, née le 11 mars 1969 à Montreuil (93), de nationalité française, demeurant 9 rue Capitaine Ferber 92130 ISSY LES MOULINEAUX,
*Nièce et légataire universel*

**Matthieu HAVERBEKE**, né le 24 juillet 1979 à Quimper (29), de nationalité française, 7 rue Henri Jumelais 56000 VANNES
*Neveu*

**Marie HAVERBEKE**, née le 11 mars 1969 à Montreuil (93), de nationalité française, 50 Rue Corvisart 75013 PARIS
*Nièce et légataire universel*

**Pierre DELAHOUSSE**, né le 1er mai 1963 à PARIS XVème (75), de nationalité française, demeurant 9 rue Capitaine Ferber 92130 ISSY LES MOULINEAUX
*Neveu par alliance*

**Marion DELAHOUSSE**, née le 24 janvier 2000 de nationalité française, représentée comme mineure par son père Pierre DELAHOUSSE précité, agissant en qualité de son administrateur légal, demeurant 9 rue Capitaine Ferber 92130 ISSY LES MOULINEAUX
*Petite nièce*

**Adrien DELAHOUSSE**, né le 20 septembre 2001, de nationalité française, représentée comme mineure par son père Pierre DELAHOUSSE précité, agissant en qualité de son administrateur légal, demeurant 9 rue Capitaine Ferber 92130 ISSY LES MOULINEAUX
*Petit neveu*

**Alexis FERRAN**, né le 20 juillet 1999 à Paris XIVème (75), de nationalité française, représentée comme mineure par sa mère Marie HAVERBEKE précitée, agissant en qualité de son administrateur légal, demeurant 50 Rue Corvisart 75013 PARIS,
*Petit neveu*

**Romane FERRAN**, née le 12 avril 2001 à Paris (75), de nationalité française, représentée comme mineure par sa mère Marie HAVERBEKE précitée, agissant en qualité de son administrateur légal, demeurant 50 Rue Corvisart 75013 PARIS
*Petite nièce*

**Jean-Paul HAVERBEKE**, né le 16 février 1946 à Paris XIVème (75), de nationalité française, demeurant 7 rue Henri Jumelais 56000 VANNES
*Beau frère*

**FAMILLE ET PROCHES de Philippe JOLICOEUR né le 9 juin 1937 et Julie JOLICOEUR née ROMANOFF le 5 avril 1937**

**William Georges Marc JOLICOEUR**, né le 27 octobre 1956 à Caen (14) de nationalité française, demandeur d'emploi, demeurant 26 Impasse Auguste Blanqui à 85000 LA ROCHE SUR YON
*Fils*

**Colette HUGUET née JOLICOEUR** le 26 juillet 1964 à Paris Xème (75), de nationalité française, secrétaire, demeurant 5 rue des Myosotis 44330 MOUZILLON
*Fille*

**Catherine BATY-JOLICOEUR**, née le 11 février 1968 à Périgueux (24), de nationalité française, assistante de direction, demeurant 76 Rue Hubert Cailler 85000 LA ROCHE SUR YON
*Fille*

**Agnès Audrey Estelle JOLICOEUR**, née le 1er avril 1997 à La Roche sur Yon (85), de nationalité française, représentée comme mineure par son père William JOLICOEUR précité,

agissant en qualité de son administrateur légal, demeurant 26 impasse Auguste Blanqui 85000 LA ROCHE SUR YON
*Petite-fille*

**Johanna BATY**, née le 19 juin 1994 à La Roche sur Yon (85), de nationalité française, représentée comme mineure par sa mère Catherine BATY-JOLICOEUR précitée, agissant en qualité de son administratrice légale, demeurant 76 Rue Hubert Cailler 85000 LA ROCHE SUR YON
*Petite fille*

**Victoria BATY**, née le 13 juin 1996 à La Roche sur Yon (85), de nationalité française, représentée comme mineure par sa mère Catherine BATY-JOLICOEUR précitée, agissant en qualité de son administratrice légale, demeurant 76 Rue Hubert Cailler 85000 LA ROCHE SUR YON
*Petite fille*

**Sébastien HUGUET** né le 3 Novembre 1990 à Toulouse (31), de nationalité française, représentée comme mineur par sa mère Colette HUGUET précitée, agissant en qualité de son administratrice légale, demeurant 5 rue des Myosotis 44330 MOUZILLON
*Petit fils*

**Stéphanie HUGUET**, née le 30 août 1986 à La Roche sur Yon (85), de nationalité française, sans profession, demeurant 76 rue Hubert Caillet 85000 LA ROCHE SUR YON
*Petite fille*

**Brigitte DEMONGEOT née LAMY** née le 18 décembre 1960 à Lille (59), de nationalité française, employée de bureau, demeurant 14 rue du Bois 92600 ASNIERES
*Nièce de Julie, filleule de Philippe*

**Michelle JOLICOEUR née BOISDRON** le 29 Juin 1956 à Aiznay (85), de nationalité française, employée de bureau, 26 impasse Auguste Blanqui 85000 LA ROCHE SUR YON
*Belle-fille*

**Philippe BATY**, né le 29 août 1967 à Châteauroux (36), de nationalité française, cordonnier, demeurant 76 Rue Hubert Cailler 85000 LA ROCHE SUR YON
*Gendre*

**Marc HUGUET**, né le 1er mars 1961 à Téhéran (Iran), de nationalité française, officier de gendarmerie, demeurant 5 Rue des Myosotis 44330 MOUZILLON
*Gendre*

**FAMILLE ET PROCHES de Danielle Gabrielle JULIEN** née le 23 octobre 1945

**Caroline Marie-Danielle MASSON** née le 28 septembre 1981 à Orléans, de nationalité française, étudiante demeurant chez Mr et Mme ALANCHE 16 rue des Marnes 92410 VILLE D'AURAY
*Fille de Danielle*

**FAMILLE ET PROCHES de Jean-Marc KERN** né le 5 octobre 1944

**Sébastien Lionel KERN**, né le 8 avril 1973 à Strasbourg (67), de nationalité française, demeurant 1 rue Matthieu 55210 VIGNEULLES LES HATTONCHTEL
*Fils*

**Matthieu KERN**, né le 11 avril 1976 à Strasbourg (67), de nationalité française, demeurant 7 rue du Parc 67300 SCHILTIGHEIM
*Fils*

**Gaëlle DJOURI née KERN** le13 octobre 1970 à Colmar (68), de nationalité française, demeurant 24 rue du Petit Pré 67800 HOENHEIM
*Fille*


**FAMILLE ET PROCHES de Michel LAMY né le 13 mars 1960, Françoise LAMY née LEDEVIN le 10 février 1962, Maud LAMY née le 5 avril 1985, Claire LAMY née 24 mai 1986 et Pierre-Louis LAMY né le 7 février 1990**

**Antoinette LAMY**, née le 13 juin 1928 à RUSSY (14710), retraitée, demeurant à FORMIGNY 14710.
*Mère de Michel, belle-mère de Françoise, grand-mère de Maud, Claire et Pierre-Louis*

**Marie-Agnès HARIVEL**, née le 6 mai 1954 à BAYEUX 14400, Agricultrice demeurant à BUCEELS 14250 Lieudit « la Croix »
*Sœur de Michel, belle-sœur de Françoise, tante de Maud, Claire et Pierre-Louis*

**Louis LE DEVIN**,né le 2 novembre 1931, de nationalité française, retraité, demeurant Cricqueville en Bessin 14450 GRANDCAMP MAISY
*Père de Françoise, beau-père de Michel, grand-père de Maud, Claire et Pierre-Louis*

**Jacqueline LE DEVIN**, née le 22 janvier 1936, de nationalité française, retraitée, demeurant Cricqueville en Bessin 14450 GRANDCAMP MAISY
*Mère de Françoise, belle-mère de Michel, grand-mère de Maud, Claire et Pierre-Louis*

**Pascale VIBET née LE DEVIN** le 11 octobre 1959 à  Bayeux (14), de nationalité française, graphiste designer, demeurant 21 avenue Pierre Curie 78210 SAINT CYR L'ECOLE
*Sœur de Françoise, belle-sœur de Michel, tante de Maud, Claire et Pierre-Louis*

**Erick VIBET**, né le 10 avril 1958 à Saint Lo (50), de nationalité française, technicien en électronique, demeurant 21 avenue Pierre Curie 78210 SAINT CYR L'ECOLE
*Beau-frère de Michel et de Françoise, oncle de Maud, Claire et Pierre-Louis*

**Jacqueline VIBET**, née le 12 Mars 1991 à Caen (14), de nationalité française, représentée comme mineure par son père Erick VIBET précité, agissant en qualité de son administrateur légal, demeurant 21 avenue Pierre Curie 78210 SAINT CYR L'ECOLE
*Nièce de Michel et de Françoise, cousine de Maud, Claire et Pierre Louis*

**Eléonore VIBET**, née le 12 Mars 1991 à Caen (14), de nationalité française, représentée comme mineure par son père Erick VIBET précité, agissant en qualité de son administrateur légal, demeurant 21 avenue Pierre Curie 78210 SAINT CYR L'ECOLE
*Nièce de Michel et de Françoise, cousine de Maud, Claire et Pierre Louis*

**Jean-Pierre LANGLAIS**, de nationalité française, demeurant rue de la Mare aux Chevaux Guichainville  27000 EVREUX
*Cousin de Françoise*

**Madame LANGLAIS**, de nationalité française, demeurant rue de la Mare aux Chevaux Guichainville  27000 EVREUX
*Cousine de Françoise*

**Michel VIALETTE**, de nationalité française, demeurant Perception de Roquefort 40120 ROQUEFORT

**Madame VIALETTE**, de nationalité française, demeurant Perception de Roquefort 40120 ROQUEFORT
*Cousine de Françoise*

**Michel BERTIN,** de nationalité française, demeurant rue St Loup 14400 BAYEUX
*Cousin de Françoise*

**Madame BERTIN,** de nationalité française, demeurant rue St Loup 14400 BAYEUX
*Cousine de Françoise*

**Jacques LE DEVIN**, de nationalité française, demeurant Ferme de Savigny 14230 LA CAMBE
*Cousin de Françoise*

**Madame LE DEVIN**, de nationalité française, demeurant Ferme de Savigny 14230 LA CAMBE
*Cousine de Françoise*

**Dominique LE DEVIN**, de nationalité française, demeurant La Faisanderie 14450 GRANCAMP MAISY
*Cousin de Françoise*

**Philippe LE DEVIN**, de nationalité française, demeurant 14450 GRANDCAMP MAISY
*Cousin de Françoise*

**Jean-Marc BACHELEY**, de nationalité française, demeurant Les Rouges Terres 14450 GRANDCAMP MAISY
*Cousin de Françoise*

**Madame BACHELEY**, de nationalité française, demeurant Les Rouges Terres 14450 GRANDCAMP MAISY
*Cousine de Françoise*

**Damien LEVALLOIS**, de nationalité française, demeurant 50230 COUTAINVILLE
*Cousin de Françoise*

**Madame LEVALLOIS**, de nationalité française, demeurant 50230 COUTAINVILLE
*Cousine de Françoise*

**Emmanuel LESVEQUES**, de nationalité française, demeurant 50000 SAINT LO
*Cousin de Françoise*

**Madame LESVEQUES**, de nationalité française, demeurant 50000 SAINT LO
*Cousine de Françoise*

**Patrick BLET**, de nationalité française, demeurant 14000 CAEN
*Cousin de Françoise*

**Madame BLET**, de nationalité française, demeurant 14000 CAEN
*Cousine de Françoise*

**Frédéric BLET,** de nationalité française, demeurant 14000 CAEN
*Cousin*

**Philippe LEFRANCOIS**, de nationalité française, demeurant 75 PARIS
*Cousin de Françoise*

**Madame LEFRANCOIS,** de nationalité française, demeurant 75 PARIS

*Cousine de Françoise*

**Olivier LEFRANCOIS**, de nationalité française, demeurant 14000 CAEN
*Cousin de Françoise*

**Laurent LEFRANCOIS**, de nationalité française, demeurant 75 PARIS
*Cousin de Françoise*

**Jean-Louis VAUSSY**, de nationalité française, demeurant 50260 NEGREVILLE
*Cousin de Françoise*

**Madame VAUSSY**, de nationalité française, demeurant 50260 NEGREVILLE
*Cousine de Françoise*

**Jacques VAUSSY**, de nationalité française, demeurant 14250 JUAYE MONDAYE
*Cousin de Françoise*

**Monsieur CALLOUEY**, de nationalité française, demeurant 14250 CRICQUEVILLE EN
BESSIN
*Cousin de Françoise*

**Madame CALLOUEY**, de nationalité française, demeurant 14450 CRICQUEVILLE EN BESSIN
*Cousine de Françoise*

**Françoise VAUSSY**, de nationalité française, demeurant 14450 CRICQUEVILLE EN BESSIN
*Cousine de Françoise*

**Jean LERUYER**, de nationalité française, demeurant rue Aristide Briand 14450 GRANDCAMP
MAISY
*Oncle de Françoise*

**Madame LERUYER**, de nationalité française, demeurant rue Aristide Briand 14450
GRANDCAMP MAISY
*Tante de Françoise*

**Hélène BACHELEY**, de nationalité française, demeurant avenue Colonel Courson 14450
GRANDCAMP MAISY
*Tante*

**Maurice LE DEVIN**, de nationalité française, demeurant avenue Colonel Courson 14450
GRANDCAMP MAISY
*Oncle de Françoise*

**Madame LE DEVIN**, de nationalité française, demeurant avenue Colonel Courson 14450
GRANDCAMP MAISY
*Tante de Françoise*

**Alain BLET**, de nationalité française, demeurant 52 rue des Rossignols 50000 SAINT LO
*Oncle de Françoise*

**Madame BLET**, de nationalité française, demeurant 52 rue des Rossignols 50000 SAINT LO
*Tante de Françoise*

**Etienne LEFRANCOIS**, de nationalité française, demeurant 14000 CAEN
*Oncle de Françoise*

**Madame LEFRANCOIS**, de nationalité française, demeurant 14000 CAEN

*Tante de Françoise*

**Pierre VAUSSY**, de nationalité française, demeurant... 14450 CRICQUEVILLE EN BESSIN
*Oncle de Françoise*

**Madame VAUSSY**, de nationalité française, demeurant 14450 CRICQUEVILLE EN BESSIN
*Tante de Françoise*

**FAMILLE ET PROCHES de Daniel LEGROS né le 17 août 1950 et de Geneviève LEGROS née SABARTHES le 5 août 1951**

**Georgette LEGROS**, née le décembre 1928 à Vitry sur Seine (94), de nationalité française, retraitée, demeurant 12 rue Rembrandt 81000 ALBI
*Mère de Daniel, belle-mère de Geneviève*

**Eric LEGROS**, né le 2 septembre 1978 à Albi (81), de nationalité française, gérant d'entreprise, demeurant Lieu dit Montsalvy 81990 PUYGOUZON
*Fils de Daniel*

**Yann LEGROS**, né le 20 août 1979 à Albi (81), de nationalité française, responsable de secteur grande distribution, demeurant 3 place de la Gare - Bâtiment F - 63400 CHAMALLIERES
*Fils de Daniel*

**Jordan LEGROS**, né le 10 décembre 1985 à Albi (81), de nationalité française, étudiant, demeurant Lieu dit Montsalvy 81990 PUYGOUZON
*Fils de Daniel*

**Mathieu Benoît Fabien ROUX**, né le 15 Juillet 1982 à Albi (81), de nationalité française, étudiant, demeurant 4 rue des Prêtres 81000 ALBI
*Fils de Mme SABARTHES épouse LEGROS*

**Claude GIROZ née LEGROS**, née le 10 juillet 1952 à Rehon (54), de nationalité française, analyste patrimonial et fiscal, demeurant Route de Monnaz, BP 18, 74970 MARIGNIER
*Sœur de Daniel, belle-sœur de Geneviève*

**Maryvonne LEGROS née LAPORTE** le 17 janvier 1950 à Perregaux (Algérie), de nationalité française, sans profession, demeurant Lieu dit Montsalvy 81990 PUYGOUZON 81990
*Ex-épouse de Daniel*

**Famille et Proches de Michel LOMBARD, né le 22 avril 1948 et de Martine LOMBARD née MACQUOY le 13 octobre 1944**

**Virgine LOMBARD**, née le 3 novembre 1963 à Paris XII (75), de nationalité française, ingénieur, demeurant 7 rue Jean Arp 75013 PARIS
*Fille*

**Sophie LOMBARD**, née le 21 avril 1966 à Dunkerque (59), de nationalité française, secrétaire médicale, demeurant 116 bd de Charonne 75020 PARIS
*Fille*

**Nicolas LOMBARD**, né le 19 janvier 1972 à Vincennes (94), de nationalité française, géophysicien, demeurant 2843 avenue d'Uriage 38410 URIAGE
*Fils*

**Jacques MACQUOY**, né le 6 novembre 1930 à Bois-Colombes (92), de nationalité française, retraité, demeurant 1 rue des Cafés Champêtres 76130 MONT SAINT-AIGNAN
*Frère de Martine et beau-frère de Michel*

**Annabelle ROCHARD**, née le 19 février 1999 à Paris XX (75), de nationalité française, représentée comme mineure par sa mère, Virginie LOMBARD, précitée agissant en qualité de son administratrice légale, demeurant 7 rue Jean Arp 75013 PARIS
*Petite-fille*

**Nils ROCHARD**, né le 10 avril 2000 à Paris XII, de nationalité française, représenté comme mineur par sa mère, Virginie LOMBARD précitée, agissant en qualité de son administratrice légale, demeurant 7 rue Jean Arp 75013 PARIS
*Petit-fils*

**Gaëtan LOMBARD**, né le 3 février 2002 à St Martin d'Hères (38), de nationalité française, représenté comme mineur par son père, Nicolas LOMBARD précitée, agissant en qualité de son administrateur légal, demeurant 2843 avenue d'Uriage 38410 URIAGE
*Petit-fils*

**Ninon LOMBARD**, née le 20 mars 2004 à Saint Martin d'Hères (38), de nationalité française, représentée comme mineure par son père, Nicolas LOMBARD précitée, agissant en qualité de son administrateur légal, demeurant 2843 avenue d'Uriage 38410 URIAGE
*Petit-fils*

**Jean-Luc MACQUOY**, né le 29 octobre 1953 à Paris XX, de nationalité française, responsable transitaire, demeurant 98 quai Sainte Catherine 14600 HONFLEUR
*Neveu*

**Christian MACQUOY**, né le 1 juillet 1958 à Anthony (92), de nationalité française, responsable bureautique, demeurant 692 rue de la Marre Capelle 76480 St PIERRE-DE-VARENGILLE
*Neveu*

**Laurence MACQUOY née VEBER** le 30 août 1958 à Paris (75), de nationalité française, employée de banque, demeurant 692 rue de la marre Capelle 76480 St PIERRE-DE-VARENGILLE (épouse de Christian MACQUOY)
*Nièce*

**Alexis MACQUOY Alexis**, né le 20 novembre 1979 à Honfleur (14), de nationalité française, ingénieur, demeurant 30 rue Marie Magner 31300 TOULOUSE
*Petit-neveu*

**Anaïs MACQUOY**, née le 6 janvier 1982 à Honfleur (14), de nationalité française, assistante sociale, demeurant 2 rue Gambard, Résidence Rose de l'Hers - Bâtiment A, appartement 007 - 31200 Toulouse
*Petite-nièce*

**Nelly MACQUOY**, née le 22 janvier 1984 à Rouen (76), de nationalité française, étudiante (fille de Christian et Laurence MACQUOY), demeurant 692 rue de la Marre Capelle 76480 St PIERRE-DE-VARENGILLE
*Petite-nièce*

**Charlotte MACQUOY**, née le 5 avril 1986 à Rouen (76), de nationalité française, étudiante (fille de Christian et Laurence MACQUOY), demeurant 692 rue de la Marre Capelle 76480 St PIERRE-DE-VARENGILLE

*Petite-nièce*

**Steven MACQUOY**, né le 3 mars 1990 à Rouen (76), de nationalité française, lycéen, représenté comme mineur par ses parents Christian et Laurence MACQUOY précités, agissant en qualité de ses administrateurs légaux demeurant 692 rue de la Marre Capelle 76480 St PIERRE-DE-VARENGILLE
*Petit-neveu*

**Raymonde MACQUOY née COULAUD**, le 18 avril 1930 à Paris IV, de nationalité française, retraitée, demeurant 1 rue des Cafés Champêtres 76130 MONT SAINT AIGNAN
*Belle-sœur*

**FAMILLE ET PROCHES de Didier LORCET né le 14 janvier 1959 et de Noura LORCET née KALLAS le 13 novembre 1968**

**Armelle LORCET**, née le 13 février 1985 à PARIS XX^ème (75), de nationalité française, étudiante en alternance coiffure, demeurant 19 rue du Bourdon Blanc 45000 ORLEANS
*Fille de Didier, belle-fille de Noura*

**Jeanine LORCET née SAGOT** le 7 mai 1935 à Paris XIV^ème (75), de nationalité française, retraitée, demeurant 19 rue de Cels 75019 PARIS
*Mère de Didier, belle-mère de Noura*

**Richard LORCET**, né le 10 octobre 1928 à Reims (51), de nationalité française, retraité, demeurant 19 rue des Cels 75019 PARIS
*Père de Didier, beau-père de Noura*

**Watfa KALLAS née AL HAJ** en 1930 à Al Klaia (Liban), de nationalité libanaise, sans profession, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Mère de Noura, belle-mère de Didier*

**Patrick LORCET**, né le 23 janvier 1956 à Paris XIV^ème (75), de nationalité française, agent de la poste, demeurant 6 allée du Meil 78340 LES CLAYES SOUS BOIS
*Frère de Didier, beau-frère de Noura*

**Atae ALOSIUS née KALLAS** le 23 novembre 1965 à El Fakiha (Liban), de nationalité libanaise et française, employée de banque, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur de Didier*

**Elham HAYEK née KALLAS** le 12 octobre 1955 à El Fakiha (Liban), de nationalité libanaise, sans profession, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur de Didier*

**Mirna KALLAS née KALLAS** le 9 février 1972 à El Fakiha (Liban), de nationalité libanaise, sans profession, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur de Didier*

**Rita KALLAS née KALLAS** le 18 novembre 1961 à El Fakiha (Liban), de nationalité libanaise, assistante de direction, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur de Didier*

**Amale NEHME née KALLAS** le 26 février 1960 à El Fakiha (Liban), de nationalité libanaise, assistante de facturation, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur de Didier*

**Thérèse SAAD née KALLAS** le 25 novembre 1964 à Baalbek (Liban), de nationalité libanaise, sans profession, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur Didier*

**Emile KALLAS**, né 13 octobre 1958 à El Fakiha (Liban), de nationalité libanaise et française, agent commercial d'assurance, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Frère de Noura, beau-frère de Didier*

**Noëlle HASSWANY née KALLAS** le 11 décembre 1953 à El Fakiha (Liban), de nationalité française, sans profession, demeurant 46 rue Paul Astor 66370 PESILLA LA RIVIERE
*Sœur de Noura, belle-sœur de Didier*

**Marie DESCOMBES née KALLAS** le 29 mars 1963 à Beyrouth (Liban), de nationalité française, sans profession, demeurant 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur de Didier*

**Aouni KALLAS**, née le 26 février 1967 à Djeide (Liban), de nationalité libanaise, trade marketing manager, demeurant au Liban et élisant domicile chez Madame Marie DESCOMBES 18 rue de la République 94220 CHARENTON LE PONT
*Sœur de Noura, belle-sœur de Didier*

**Anwar KALLAS**, né le 29 octobre 1970 à El Fakiha (Liban), de nationalité française, sans profession, demeurant 6 avenue du Trayas  06590 THEOULE SUR MER
*Sœur de Noura, belle-sœur de Didier*

**Nawaf KALLAS**, né 15 mai 1952 à El Fakiha (Liban), de nationalité française, chauffeur, demeurant 65 rue Pauline Borghese  92200 NEUILLY SUR SEINE
*Frère de Noura, beau-frère de Didier*

**Fatima LORCET née BOULO** le  1 février 1962 à Tizi Ouzou (Algérie), de nationalité française, coiffeuse, demeurant 19 rue du Bourdon Blanc 45000 ORLEANS
*Ex-conjoint de Didier*


**FAMILLE ET PROCHES de Raymond OZERAI né le 15 mars 1933 et de Colette OZERAI née LHOMME le 13 février 1937**

**François OZERAI**, né le 22 avril 1973 à Amfreville La Campagne (27), de nationalité française, ingénieur, demeurant 113 rue de la Hêtraie 27370 AMFREVILLE LA CAMPAGNE
*Fils de Raymond et de Colette*

**Jeannine Lucienne Fernande MOUCHEL née LHOMME** le 10 octobre 1931 à Elbeuf (76), de nationalité française, retraitée, demeurant 659 route du Mont Coquet 76500 ELBEUF
*Sœur de Colette, belle-sœur de Raymond*

**Monique Ghyslaine GREGOIRE née LHOMME** le 5 avril 1948 à Elbeuf (76), de nationalité française, comptable (préretraitée), demeurant 1 lotissement Bassin Lavoir 11560 FLEURY d'AUDE
*Sœur de Colette, belle-sœur de Raymond*

**Annie Yvette CHERI née LHOMME** le 30 mars 1958 à LeThuit Anger (27), de nationalité française, sans emploi, demeurant 24 rue Philippe Charles Drouet 76350 OISSEL
*Sœur de Colette, belle-sœur de Raymond*

**Dominique LHOMME**, né le 12 juillet 1953 à Elbeuf (76) de nationalité française, salarié (en invalidité), demeurant 16 rue de l'Eglise 27370 LE THUIT ANGER
*Frère de Colette, beau-frère de Raymond*

**Tristan OZERAI,** né le 17 avril 2000 à Saint-Aubin les Elbeuf (76), de nationalité française, élève, demeurant 113, rue de la Hêtraie, 27370 AMFREVILLE LA CAMPAGNE représenté comme mineur par son père, François OZERAI précité, agissant en qualité de son administrateur légal, demeurant 113 rue de la Hêtraie 27370 AMFREVILLE LA CAMPAGNE
*Petit-fils de Raymond et Colette*

**Mauricette Marie Suzanne FOUET née LHOMME** le 4 août 1933 à Elbeuf (76), de nationalité française, retraitée, demeurant 6 rue Saint-Exupéry 27640 BREUILPONT
*Sœur de Colette, belle-sœur de Raymond*

**FAMILLE ET PROCHES de Michel PENTECOTE, né le 4 mars 1951 et de Evelyne PENTECOTE née DURET le 14 mars 1954 ...**

**Odette Georgette Emile Adrienne DURET née AUGUIN** le 21 mai 1923 à Thouarsais Bouildroux (85), de nationalité française, retraitée, demeurant 72 rue de Bourgneuf 85420 OULMES
*Mère d'Evelyne, belle-mère de Michel*

**Yves Eugène Emile DURET,** le 29 mai 1947 à Thouarsais Bouildroux (85 ), de nationalité française, pâtissier, demeurant 22 bis rue des Pavillons 93100 MONTREUIL SOUS BOIS
*Frère d'Evelyne, beau-frère de Michel*

**Jacques Eugène Yves DURET**, né le 1er décembre 1952 à Fontenay le Comte (85), de nationalité française, ... (profession), demeurant 201 Faubourg Saint Denis 75010 PARIS
*Frère d'Evelyne, beau-frère de Michel*

**Dominique Paul Michel DURET**, né le 21 décembre 1949 à Thouarsais Bouildroux (85), de nationalité française, retraité, demeurant 72 rue de Bourgneuf 85420 OULMES
*Frère d'Evelyne, beau-frère de Michel*

**Catherine Dominique Nicole DURET,** née le 2 septembre 1956 à Fontenay Le Comte (85), de nationalité française, auxiliaire de soins, demeurant 72 rue de Bourgneuf 85420 OULMES
*Sœur d'Evelyne, belle-sœur de Michel*

**Chantal Madeleine Georgette DURET née VASNIER** le 22 août 1950 à PARIS 19ème (75), de nationalité française, en incapacité de travail, demeurant 22bis rue des Pavillons 93100 MONTREUIL SOUS BOIS
*Belle-sœur d'Evelyne et de Michel*

**FAMILLE ET PROCHES de Patrice Jean-Marie RANNOU** né le 20 février 1961, **Laurence Thérèse Marguerite RANNOU née VAVASSEUR** le 12 mars 1960, **Antoine**

**Louis André RANNOU** né le 18 octobre 1993 et **Julia Camille Esther RANNOU** née le 29 octobre 1997

**Jacqueline Lucienne FREVILLE épouse RANNOU**, née le 21 mai 1941 à Brunoy sur Sauldre (18), de nationalité française, retraitée, demeurant 65 quai de Loire – Saint Thibault 18300 SAINT SATUR
*Mère de Patrice, belle-mère de Laurence et grand-mère*

**Didier RANNOU**, né le 26 mars 1964 à Sancerre (18), de nationalité française, consultant, demeurant 33 bis Route de la Reine 92100 BOULOGNE BILLANCOURT
*Frère de Patrice, beau-frère de Laurence et oncle*

**Christine BOURSIN-RANNOU**, née le 2 mai 1963 à Cosne sur Loire (03), de nationalité française, assistante de gestion, demeurant 32 rue Philippe de Girard 75010 PARIS
*Sœur de Patrice, belle-sœur de Laurence et tante*

**Giovanni RANNOU**, né le 14 mai 1996 à Sèvres (92), de nationalité française, représenté comme mineur par son père, Didier RANNOU précité, agissant en qualité de son administrateur légal, demeurant 33 bis route de la Reine 92100 BOULOGNE BILLANCOURT
*Neveu de Patrice et Laurence et cousin*

**Filippo RANNOU**, né le 29 novembre 1999 à Paris XIV$^{ème}$ (75), de nationalité française, représenté comme mineur par son père, Didier RANNOU précité, agissant en qualité de son administrateur légal, demeurant 33 bis route de la Reine 92100 BOULOGNE BILLANCOURT
*Neveu de Patrice et Laurence et cousin*

**Pier Luigi RANNOU**, né le 4 janvier 2004 à Sèvres (92), de nationalité française, représenté comme mineur par son père, Didier RANNOU précité, agissant en qualité de son administrateur légal, demeurant 33 bis route de la Reine 92100 BOULOGNE BILLANCOURT
*Neveu de Patrice et Laurence et cousin*

**Simon Jules BOURSIN**, né le 20 octobre 1961 à Paris XIV$^{ème}$ (75), de nationalité française, cadre administratif, demeurant 32 Rue Philippe de Girard 75010 PARIS
*Beau-frère et oncle*

**Elisabetta MARCUCCI épouse RANNOU**, née le 8 juillet 1965 à Grosseto (Italie), de nationalité française, interprète indépendant, demeurant 33 bis route de la Reine 92100 BOULOGNE BILLANCOURT
*Belle-sœur et tante*

**FAMILLE ET PROCHES de Lucien ROLLET né le 12 décembre 1926, de Monique ROLLET née PECHART le 29 novembre 1931 et de Catherine ROLLET née le 2 décembre 1963**

**André ROLLET**, né le 31 décembre 1930 à Macon (71), nationalité française, retraité, demeurant Résidence Les Fontaines, 6 rue Gustave Desplaces, 13100 AIX-EN-PROVENCE
*Frère de Lucien, beau-frère de Monique , oncle de Catherine*

**Geneviève ETHEVENIN née PECHART** le 19 mai 1927 à REIMS (71), de nationalité française, retraitée, demeurant 55 chemin des Balmes 69110 SAINTE FOY LES LYON
*Sœur de Monique, belle-sœur de Lucien, tante de Catherine*

**Liliane GERELLE née PECHART** le 31 mars 1924 à REIMS, de nationalité française, retraitée, demeurant 20 chemin E. Charlet 1228 Plan Les Ouates GENEVE (Suisse)
Sœur de Monique, belle-sœur de Lucien, tante de Catherine

**FAMILLE ET PROCHES de Ernest SIDDI né le ...et Renée SIDDI née le ...**

Jacqueline SIDDI (mandat à régulariser car elle figure sur celui de Edouard)
*Mère de Ernest, belle-mère de Renée*

Edouard SIDDI, né ...
*Frère de Ernest, beau-frère de Renée*

Pascal SIDDI, né ...
*Frère de Ernest, beau-frère de Renée*

**FAMILLE ET PROCHES de Michel THECHI né le 29 septembre 1946**

**Olivier THECHI,** né le 4 avril 1972 à Fort de France (Martinique), de nationalité française, demeurant 10 rue Louise Bonne 45000 ORLEANS
*Frère*

**Joël Laurent COLETA,** né le 10 août 1951 à Fort de France (Martinique), de nationalité française, postier, demeurant 13 rue des Maraîchers 95330 DOMONT
*Demi-frère*

**Axel THECHI,** né le 12 novembre 1996 à Orléans (45), de nationalité française, représenté comme mineur par son père, Olivier THECI précité, agissant en qualité de son administrateur légal demeurant 10 rue Louis Bonne 45000 ORLEANS
*Neveu*

**Laura THECHI,** née le 13 septembre 1999 à Orléans (45), de nationalité française, représentée comme mineure par son père, Olivier THECI précité, agissant en qualité de son administrateur légal demeurant 10 rue Louis Bonne 45000 ORLEANS
*Nièce*

**Thierry COLETA,** né le 15 avril 1976 à Epinay Sur Seine (93), de nationalité française, demeurant 27 rue Pasteur 60540 BORNEL
*Neveu*

**Sandrine COLETA,** née le 27 mars 1983 à Epinay Sur Seine (93), de nationalité française, étudiante, demeurant 54 rue Gioffredo 06000 NICE
*Nièce et filleule*

**Valérie Joëlle COLETA,** née le 26 juillet 1987 à Epinay Sur Seine (93), de nationalité française, représentée comme mineure par ses parents Joël et Marlène COLETA précités, agissant en qualité de ses administrateurs légaux, demeurant 13 rue des Maraîchers 95330 DOMONT
*Nièce*

**Marlène Etiennise COLETA née BEAUDRY** le 2 août 1956 à Fort de France (Martinique), de nationalité française, responsable d'unité de gestion aux AGF, demeurant 13 rue des Maraîchers 95330 DOMONT
*Belle-sœur*

**FAMILLE ET PROCHES de Francis THUILLIER né le 20 février 1962, Véronique Jeanne-Marie Augustine THUILLIER née TURPAULT le 22 juin 1961, William THUILLIER** né le 23 janvier 1989 et **Raphaël THUILLIER** né le 13 mars 1986 et Micheline THUILLIER

**Raymond TURPAULT**, né le 24 avril 1933 à Saint-Paul du Bois (49), de nationalité française, retraité, demeurant 147 Boulevard Heurteloup 37000 TOURS
*Père de Jeanne-Marie, beau-père de Francis, grand-père de William et Raphaël*

**Huguette TURPAULT née BAUDON** le 28 octobre 1930 à Cholet (49), de nationalité française, retraitée, demeurant 147 Boulevard Heurteloup 37000 TOURS
*Mère de Jeanne-Marie, belle-mère de Francis, grand-mère de William et Raphaël*

**Sandrine JOUAULT née TURPAULT** le 26 Août 1966 à Nantes (44), de nationalité française, hotelière, demeurant 11 rue de Pommerel 27350 BRESTOT
*Sœur de Jeanne-Marie, belle-sœur de Francis, tante de William et Raphaël*

**Laurent JOUAULT**, né le 1er mai 1968 à PARIS XIVème (75), de nationalité française, hôtelier, demeurant 11 rue de Pommerel 27350 BRESTOT
*Beau-frère de Francis et Jeanne-Marie, oncle de William et Raphaël*

**Cloé JOUAULT**, née le 16 Septembre 1990 à Mont Saint Aignan (76), de nationalité française, représentée comme mineure par son père Laurent JOUAULT précitée, agissant en qualité de son administrateur légal, demeurant 11 rue de Pommerel 27350 BRESTOT
*Nièce de Francis et Jeanne-Marie, cousine de William et Raphaël*

**Léa JOUAULT**, née le 25 Octobre 1993, à Orléans (45), de nationalité française, représentée comme mineure par son père Laurent JOUAULT précitée, agissant en qualité de son administrateur légal, demeurant 11 rue de Pommerel 27350 BRESTOT
*Nièce de Francis et Jeanne-Marie, cousine de William et Raphaël*

**Josiane Georgette Simone COQUIN**, divorcée de Mr Patrick LECLERC, née le 24 Janvier 1943 à Torcy le Petit (76), de nationalité française, ... (profession), demeurant 11 immeuble Le Rançon Le Montréal 76710 MONTVILLE
*Cousine de Francis, petite cousine de William et Raphaël*

**Michèle Angèle Claudine COQUIN**, séparée de Mr Michel MANSON, née le 25 Mars 1949 à Torcy le Petit (76), de nationalité française, ... (profession), demeurant 6 rue du 8 Mai 76710 LE HOULME
*Cousine de Francis, proche de de William et Raphaël*

**Laurent THUILLIER**, né le ... à ... (..), de nationalité française, ... (profession), demeurant 13 allée de la Méditerranée 66250 SAINT LAURENT DE LA SALANQUE
*Cousin de Francis, proche de de William et Raphaël*

**Christèle Michèle Nicole HUE née MANSON** le 31 Juillet 1972 à Rouen (76), de nationalité française, ... (profession), demeurant 1 rue Paul Painlevé 76150 MAROMME
*Petite cousine de Francis, grand-tante de William et Raphaël*

**Carole Peggy Isabelle THERY née MANSON** le 22 Janvier 1974 à Rouen (76), de nationalité française, ... (profession), demeurant 52 bis route de Paris 76240 BONSECOURS
*Petite cousine de Francis, grand-tante de William et Raphaël*

**Maryline Aurélia Marlène MANSON**, née le 23 Janvier 1981 à Rouen (76), de nationalité française, ... (profession), demeurant 53 rue de Buffon 76000 ROUEN
*Petite cousine de Francis, grand-tante de William et Raphaël*

**FAMILLE ET PROCHES de Christian 12 mars 1950 et de Nicole TURCAN née GUILLOT le 17 avril 1947**

**Henri GUILLOT**, né le 2 mars 1922 à Buxières sous Montaigut (03), de nationalité française retraité, demeurant à Le Bourg 63700 LAPEYROUSE

*Père de Nicole, beau-père de Christian.*

**Marie Louise GUILLOT**, née le 9 août 1927 à Virlet (63), de nationalité française, ... (profession), demeurant Le Bourg 63700 LAPEYROUSE
*Mère de Nicole, belle-mère de Christian.*

**Louis TURCAN**, né le 1er mai 1925 à Lille (59), de nationalité française, ... (profession), demeurant 28 avenue du Général Leclerc 03300 CUSSET
*Père de Christian, beau-père de Nicole.*

**Colette TURCAN**, née le 29 avril 1929, de nationalité française, demeurant 28 avenue du Général Leclerc 03300 CUSSET
*Mère de Christian, belle-mère de Nicole.*

**Christiane BUVAT**, née le 4 décembre 1948 à La Peyrouse (63), de nationalité française, demeurant 4 résidence Font St Georges 03700 BELLERIVE S/ ALLIER
*Soeur de Nicole, belle-sœur de Christian*

**Yvette JAMES**, née le 1er juillet 1955 à Desertines (03), de nationalité française, demeurant 11 rue Guillemette Faussart 92150 SURESNES
*Sœur de Nicole, belle-sœur de Christian*

**Isabelle GUILLOT**, née le 3 mai 1966 à Desertines (03), de nationalité française, demeurant Le Bourg 63700 LAPEYROUSE
*Sœur de Nicole, belle-sœur de Christian*

**Dominique PETIT**, né le 7 juillet 1960 à Vichy (03), de nationalité française, employée de bureau, demeurant 3 passage des Saules Les Cornillons 03300 CREUZIER LE VIEUX,
*Sœur de Christian, belle sœur de Nicole*

**Catherine SAMTMANN**, née le 22 décembre 1955 à Bellerive sur Allier, de nationalité française, demeurant à 9 chemin des Dionnets 03300 CREUZIER LE NEUF
*Sœur de Christian, belle sœur de Nicole*

**Michel TURCAN**, né le 5 octobre 195 à Vichy (03), de nationalité française, demeurant 10 rue Gandhi 77176 SAVIGNY LE TEMPLE
*Frère de Christian, beau frère de Nicole*

**Gérard TURCAN**, né le 17 avril 1959 à Creuzier le Neus (03), de nationalité française, demeurant 13 rue des Etelles 03300 CREUZIER LE NEUS
*Frère de Christian, beau frère de Nicole*

**Patrick TURCAN**, né le 22 octobre 1954 à Vichy (03), de nationalité française, ... (profession), demeurant à Chemin de la Prat 03700 BELLERIVE SUR ALLIER
*Frère de Christian, beau frère de Nicole.*

**Cyrille BUVAT**, né le 29 juillet 1967 à Clermond Ferrand (63), de nationalité française, demeurant 6 rue Robert LYON 6ème
*Neveu de Nicole*

**Xavière BUVAT**, né le 9 octobre 1970 à Vichy (03), de nationalité française, demeurant à 8 rue Cote Saint Amand 03200 VICHY
*Nièce de Nicole*

**Boris BUVAT**, né le 27 juin 1973 à Vichy (03), de nationalité française, demeurant à 42 rue Antoine Charial LYON 03

*Neveu de Nicole*

**Yvanne BUVAT**, né le 8 janvier 1976 à Vichy (03), de nationalité française, demeurant à 6 rue Tilleul 68000 MULHOUSE
*Neveu de Nicole*

**Karine PETIT**, née le 28 mars 1982 à Vichy (03), de nationalité française, employée, demeurant 3 passage des Saules Les Cornillons 03300 CREUZIER LE VIEUX
*Nièce de Christian*

**Stéphanie PETIT**, née le 10 mars 1986 à Vichy (03), de nationalité française, étudiante, demeurant 3 passage des Saules Les Cornillons 03300 CREUZIER LE VIEUX
*Nièce de Christian*

**Julie SAMTMANN**, née le 10 mars 1984 à Vichy (03), de nationalité française, étudiante, demeurant à 9, chemin des Dionnets 03300 CREUZIER LE NEUF
*Nièce de Christian*

**Céline SAMTMANN**, née le 14 septembre 1980 à Vichy (03),de nationalité française, infirmière demeurant à 1, rue Emile Bonnet 34090 MONTPELLIER
*Nièce de Christian*

**Grégory TURCAN**, né le 15 octobre 1981 à Vichy (03), de nationalité française, demeurant 10 rue Gandhi 77176 SAVIGNY LE TEMPLE
*Neveu de Christian*

**Julien TURCAN**, né le 6 mars 1984 à Vichy (03), de nationalité française, étudiant, demeurant Chemin de la Prat 03700 BELLERIVE SUR ALLIER
*Neveu de Christian*

**Jennyfer TURCAN**, né le 22 mars 1985 à Vichy (03), de nationalité française, étudiante, agissant en qualité de son administrateur légal, demeurant Chemin de la Prat 03700 BELLERIVE SUR ALLIER
*Nièce de Christian*

**Laura TURCAN**, née le 19 avril 1988 à Vichy (03), de nationalité française, représentée comme mineure par son père Gérard TURCAN précité, agissant en qualité de son administrateur légal demeurant 13 rue des Etelles 03300 CREUZIER LE NEUS
*Nièce de Christian*

**Romain TURCAN**, née le 30 septembre 1991 à Vichy (03), de nationalité française, représenté comme mineur par son père Gérard TURCAN précité, agissant en qualité de son administrateur légal demeurant 13 rue des Etelles 03300 CREUZIER LE NEUS
*Neveu de Christian*

**Jean Luc PETIT**, né le 7 mars 1957 à Vichy (03), de nationalité française, agent technique, demeurant 3 Passage des Saules Les Cornillons 03300 CREUZIER LE VIEUX
*Beau- frère de Christian*

**Gilles SAMTMANN**, né le 29 juin 1956 à Cusset (03) de nationalité française, électromécanicien, demeurant 9 chemin des Dionnets 03300 CREUZIER LE NEUF
*Beau frère de Christian*

**Martine TURCAN**, née le 9 novembre 1952 à Bellerive sur Allier (03), de nationalité française, demeurant 10 rue Gandhi 77176 SAVIGNY LE TEMPLE
*Belle sœur de Christian*

**Christine TURCAN**, née le 28 janvier 1955 à Vichy (03), de nationalité française, éducatrice sportive, demeurant Chemin de la Prat 03700 BELLERIVE SUR ALLIER
*Belle sœur de Christian.*

**Jean Marie BUVAT**, né le 16 juillet 1946 à Buxières sous Montagut (63), de nationalité française, demeurant 4 résidence Font St Georges 03700 BELLERIVE S/ ALLIER
*Beau frère de Christian*


**FAMILLE ET PROCHES de Eric VIALET né le 7 juin 1962, Valérie VIALET née DOUAY le 6 août 1964, Pauline née le 11 décembre 1991, Antoine né le 12 mai 1995 et Laura VIALET née le 12 mai 1995**

**Georges VIALET**, né le 15 janvier 1923 à Paris XIV (75), de nationalité française, retraité, demeurant 3 rue Leneveu 75014 PARIS
*Père d'Eric, beau-père de Valérie, grand-père de Pauline, Antoine et Laura*

**Antoinette VIALET née WURTZ** le 2 avril 1928 à St Mihiel (55), de nationalité française, retraitée, demeurant 3 rue Leneveu 75014 PARIS
*Mère d'Eric, belle-mère de Valérie, grand-mère de Pauline, Antoine et Laura*

**Claudette DOUAY**, née le 14 novembre 1940 à Athies s/Laon (02), de nationalité française, retraitée, demeurant 110 rue Haxo 75020 PARIS
*Mère de Valérie, belle-mère d'Eric, grand-mère de Pauline, Antoine et Laura*

**Josselyne RENARD**, née le 31 janvier 1951 à Paris XIV, de nationalité française, garde d'enfants, demeurant 17 av Foch, 91600 MEREVILLE
*Sœur d'Eric, belle-sœur de Valérie, tante de Pauline, Antoine et Laura*

**Daniel VIALET**, né le 24 Janvier 1953 à Paris XIV (75), de nationalité française, ingénieur électricien, demeurant 30 avenue de la République 77450 ESBLY
*Frère d'Eric, beau-frère de Valérie, oncle de Pauline, Antoine et Laura*

**Christian VIALET**, né le 6 avril 1949 à Paris XIV (75), de nationalité française, ingénieur du contrôle de la navigation aérienne, demeurant 16 rue de la Plaine 91700 SAINTE GENEVIEVE DES BOIS
*Frère d'Eric, beau-frère de Valérie, oncle de Pauline, Antoine et Laura*

**Françoise CORNEAU**, née le 24 juillet 1958 à Paris XIV (75), de nationalité française, assistante sociale, demeurant 3 rue Pierre Françoise Nicaise 91120 PALAISEAU
*Sœur d'Eric, belle-sœur de Valérie et tante de Pauline, Antoine et Laura*

**David VIALET**, né le 31 mai 1977 à Biarritz (64), de nationalité française, gestionnaire, demeurant 11 rue du Chemin Vert 75011 PARIS
*Neveu d'Eric et de Valérie, cousin de Pauline, Antoine et Laura*

**Patricia PONCE née VIALET** le 18 novembre 1975 à Biarritz (64), de nationalité française, opticienne, demeurant Solea n° 3 -Edificio Ganivet n°1- Yelez Malaga, 29700 MALAGA (Espagne)
*Nièce d'Eric et de Valérie, cousine de Pauline, Antoine et Laura*

**Franck RENARD**, né le 13 décembre 1983 à Courcouronnes (91), de nationalité française, étudiant, demeurant 17 av Foch 91600 MEREVILLE
*Neveu d'Eric et Valérie, cousin de Pauline, Antoine et Laura*

**Muriel RENARD**, née le 5 septembre 1978 à Migennes (89), de nationalité française, conseillère familiale, demeurant 42 rue de Strasbourg 94300 VINCENNES
*Nièce d'Eric et Valérie, cousine de Pauline, Antoine et Laura*

**Sandrine RENARD**, née le 17 avril 1975 à Le Puy en Velay (43), de nationalité française, institutrice, demeurant 8 place Maurice Sheman 93360 NEUILLY-PLAISANCE
*Nièce d'Eric et Valérie, cousine de Pauline, Antoine et Laura*

**François VIALET**, né le 6 janvier 1981 à Nouméa (Nouvelle-Calédonie), de nationalité française, étudiant, demeurant 30 avenue de la République 77450 ESBLY
*Neveu d'Eric et Valérie, cousin de Pauline, Antoine et Laura*

**Rémi VIALET**, né le 17 Avril 1986 à Meaux (77), de nationalité française, étudiant, demeurant 30 avenue de la République 77450 ESBLY
*Neveu d'Eric et Valérie, cousin de Pauline, Antoine et Laura*

**Marion CORNEAU**, née le 27 août 1987 à Paris XIV, de nationalité française, étudiante, représentée comme mineure par sa mère Françoise CORNEAU précitée, agissant en qualité de son administratrice légale, demeurant 3 rue Pierre Françoise Nicaise 91120 PALAISEAU
Nièce *d'Eric et Valérie, cousine de Pauline, Antoine et Laura*

**Adoration VIALET, née GAMEZ GAMEZ** le 22 août 1953 à Malaga (Espagne), de nationalité espagnole, demeurant 16 rue de la Plaine 91700 SAINTE GENEVIEVE DES BOIS
*Belle-sœur d'Eric et de Valérie, tante de Pauline, Antoine et Laura*

**Alain RENARD**, né le 2 juin 1951 à XIV (75), de nationalité française, menuisier-salarié, demeurant 17 av Foch 91600 MEREVILLE
*Beau-frère d'Eric et Valérie, oncle de Pauline, Antoine et Laura et oncle*

**Marie-Christine VIALET née THERON** le 3 juin 1956 à Aubin (12), de nationalité française, sans profession, demeurant 30 avenue de la République 77450 ESBLY
*Belle-sœur d'Eric et de Valérie, tante de Pauline, Antoine et Laura*

**Flora BOUAMAR**, née le 26 août 2003 à Tremblay-en-France (93), de nationalité française, représentée comme mineure par sa mère Sandrine RENARD précitée, agissant en qualité de son administratrice légale, demeurant 8 place Maurice Sheman 93360 NEUILLY-PLAISANCE
*Petite-nièce d'Eric et Valérie, petite cousine de Pauline, Antoine et Laura*

**Maxence RAEDECKER**, né le 6 mars 1989 à Paris 14e (75), de nationalité française, étudiant, représenté comme mineur par sa mère Monique RAEDECKER, née le ... à ... agissant en qualité de son administratrice légale, demeurant 106 avenue Henri Ginoux 92129 MONTROUGE
*Filleul de Eric*

**Roger BRONDEL**, né le 26 mai 1932 à Tarnac (19), de nationalité française, retraité, demeurant 5 avenue Charles Floquet 93150 BLANC-MESNIL
*Ami intime de Madame DOUAY*

| | | Préjudice moral (1) | Préjudice de perte d'assistance (2) | Préjudice corporel (3) | Préjudice de perte de ressources (4) | Préjudices économiques divers (5) | Préjudice de perte de lignage (6) | Frais de commémorations (7) | Préjudice successoral Préjudice d'angoisse (8) | Préjudice successoral Frais d'obsèques (9) | Préjudice successoral Frais du voyage (10) | Préjudice successoral Perte effets personnels (11) | Préjudice successoral Frais matériels divers (12) | Préjudice successoral Préjudice d'appauvrissement du patrimoine (13) | Préjudice successoral Frais de succession (14) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 150 000.00 € | | 1 000.00 € | 4 000.00 € | 20 000.00 € | | |
| Madeleine SERSIRON | Tante | 53 350.00 € | 24 978.05 € | | | | | | | | | | | | |
| Catherine RAFFIER | Cousine | 53 350.00 € | 69 945.09 € | | | | | | | | | | | | |
| Marcel RAFFIER | Oncle | 53 350.00 € | 13 854.88 € | | | | | | | | | | | | |
| Pierrette-Josette GUINOT-RAFFIER | Tante | 53 350.00 € | 33 009.63 € | | | | | | | | | | | | |
| Philippe RAFFIER | Cousin | 53 350.00 € | 51 788.16 € | | | | | | | | | | | | |
| | | | | | | | | | 300 000.00 € | | 2 000.00 € | 8 000.00 € | 40 000.00 € | | |
| Jordan ALES | Fils de Stéphane | 168 000.00 € | 168 547.68 € | | | | | 50 000.00 € | | | | | | | |
| | Fils de Christiane | 168 000.00 € | 218 928.78 € | | | | | | | | | | | | |
| Caroline BATIFOL née ALES | Fille de Stéphane | 168 000.00 € | 252 823.06 € | | 63 354.38 € | | | 50 000.00 € | | | | | | | |
| | Fille de Christiane | 168 000.00 € | 328 395.17 € | | | | | | | | | | | | |
| Josiane Marie Marthe veuve ALES née THOURIGNY | Mère de Stéphane | 168 000.00 € | 75 309.93 € | | | | | 50 000.00 € | | | | | | | |
| | Belle-mère de Christiane | 53 350.00 € | 18 827.60 € | | | | | | | | | | | | |
| Marthe Madeleine veuve VERDEIL née CALVET | Mère de Christiane | 168 000.00 € | 94 808.07 € | | | | | 50 000.00 € | | | | | | | |
| | Belle mère de Stéphane | 53 350.00 € | 23 702.16 € | | | | | | | | | | | | |
| Mysiane Marie-France Ginette ALES | Sœur de Stéphane | 115 000.00 € | 84 274.61 € | | | | | 50 000.00 € | | | | | | | |
| | Belle-sœur de Christiane | 53 350.00 € | 45 866.71 € | | | | | | | | | | | | |

| | | Préjudice moral | Préjudice de perte d'assistance | Préjudice corporel | Préjudice de perte de ressources | Préjudices économiques divers | Préjudice de perte de lignage | Frais de commémo-rations | Préjudice successoral Préjudice d'angoisse | Préjudice successoral Frais d'obsèques | Préjudice successoral Frais du voyage | Préjudice successoral Perte effets personnels | Préjudice successoral Frais matériels divers | Préjudice successoral Préjudice d'appau-vrissement du patrimoine | Préjudice successoral Frais de succession |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Catherine Germaine Sylvaine ALES | *Sœur de Stéphane* | 115 000,00 € | 84 274.61 € | | | | | 50 000,00 € | | | | | | | |
| | *Belle sœur de Christiane* | 53 350.00 € | 54 732.53 € | | | | | | | | | | | | |
| Elizabeth Claudie Joëlle ALES | *Sœur de Stéphane* | 115 000.00 € | 84 274.61 € | | | | | 50 000.00 € | | | | | | | |
| | *Belle-sœur de Christiane* | 53 350.00 € | 54 732.53 € | | | | | | | | | | | | |
| Daniel André Jean VERDEIL | *Frère de Christiane* | 115 000.00 € | 218 928.78 € | | | | | 50 000.00 € | | | | | | | |
| | *Beau-frère de Stéphane* | 53 350.00 € | 42 137.18 € | | | | | | | | | | | | |
| Maxime BATIFOL | *Petit-fils de Stéphane* | 115 000,00 € | 168 547.68 € | | | | | | | | | | | | |
| | *Petit-fils de Christiane* | 115 000,00 € | 218 928.78 € | | | | | | | | | | | | |
| Morgane BATIFOL | *Petite-fille de Stéphane* | 115 000,00 € | 168 547.68 € | | | | | | | | | | | | |
| | *Petite-fille de Christiane* | 115 000,00 € | 218 928.78 € | | | | | | | | | | | | |
| Diane PHILIPONET | *Nièce de Stéphane* | 53 350.00 € | 42 137.18 € | | | | | | | | | | | | |
| | *Nièce de Christiane* | 53 350.00 € | 54 732.53 € | | | | | | | | | | | | |
| Gabrielle PHILIPONET | *Nièce de Stéphane* | 53 350.00 € | 42 137.18 € | | | | | | | | | | | | |
| | *Nièce de Christiane* | 53 350,00 € | 54 732.53 € | | | | | | | | | | | | |
| Michel Claude Hugues BATIFOL | *Gendre de Stéphane* | 53 350.00 € | 42 137.18 € | | | | | | | | | | | | |
| | *Gendre de Christiane* | 53 350.00 € | 54 732.53 € | | | | | | | | | | | | |
| Patricia Armande VERDEIL née KARAKHANIAN | *Belle-sœur Christiane* | 53 350.00 € | 54 732.53 € | | | | | | | | | | | | |
| | *Belle sœur de Stéphane* | 53 350.00 € | 72 737.18 € | | | | | | | | | | | | |

| | | Préjudice moral | Préjudice de perte d'assistance | Préjudice corporel | Préjudice de perte de ressources | Préjudices économiques divers | Préjudice de perte de lignage | Frais de commémorations | Préjudice successoral Préjudice d'angoisse | Préjudice successoral Frais d'obsèques | Préjudice successoral Frais du voyage | Préjudice successoral Perte effets personnels | Préjudice successoral Frais matériels divers | Préjudice successoral Préjudice d'appauvrissement du patrimoine | Préjudice successoral Frais de succession |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | | | | | | | | | 150 000.00 € | | 1 000.00 € | 4 000.00 € | 20 000.00 € | | |
| Roger ALPHAZAN | *Père* | 168 000.00 € | 132 168.60 € | | | | | 50 000.00 € | | | | | | | |
| Michèle Marcelle MENARD née ALPAHZAN | *Mère* | 168 000.00 € | 160 303.50 € | | | | | 50 000.00 € | | | | | | | |
| Philippe ALPHAZAN | *Frère* | 115 000.00 € | 218 601.00 € | | | | | 50 000.00 € | | | | | | | |
| [illegible] | | | | | | | | | 150 000.00 € | | 1 000.00 € | 4 000.00 € | 20 000.00 € | | |
| Michel Emile Alexis AMMERICH | *Père* | 168 000.00 € | 81 918.36 € | | | | | 50 000.00 € | | | | | | | |
| Sandrine Marie-Louise AYMAIN née AMMERICH | *Sœur* | 115 000.00 € | 195 897.42 € | | | | | 50 000.00 € | | | | | | | |
| Antony John AYMAIN | *Neveu et filleul* | 53 350.00 € | 48 973.15 € | | | | | | | | | | | | |
| Marine Micheline AYMAIN | *Nièce et filleule* | 53 350.00 € | 48 973.15 € | | | | | | | | | | | | |
| Laurent Jean AYMAIN | *Beau-frère* | 53 350.00 € | 48 973.15 € | | | | | | | | | | | | |
| [illegible] | | | | | | | | | 150 000.00 € | | 1 000.00 € | 4 000.00 € | 2 000.00 € | | |
| Cédric ARZILE | *Fils* | 168 000.00 € | 132 168.00 € | | 19 658.58 € | | | 50 000.00 € | | | | | | | |
| Claudine Marguerite OBRECHT | *Ex-épouse* | 53 350.00 € | 33 041.34 € | | | | | | | | | | | | |
| [illegible] | | | | | | | | | 300 000.00 € | | 2 000.00 € | 8 000.00 € | 40 000.00 € | | |

| | | Préjudice moral | Préjudice de perte d'assistance | Préjudice corporel | Préjudice de perte de ressources | Préjudices économiques divers | Préjudice de perte de lignage | Frais de commémo-rations | Préjudice successoral Préjudice d'angoisse | Préjudice successoral Frais d'obsèques | Préjudice successoral Frais du voyage | Préjudice successoral Perte effets personnels | Préjudice successoral Frais matériels divers | Préjudice successoral Préjudice d'appau-vrissement du patrimoine | Préjudice successoral Frais de succession |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alain BABAULT | *Fils de Janine* | 168 000,00 € | 50 250,24 € | | | | | 50 000,00 € | | | | | | | |
| | *Frère de Carole* | 168 000,00 € | 68 603,98 € | | | | | | | | | | | | |
| Catherine BRUNIAS née BABAULT | *Fille de Janine* | 168 000,00 € | 50 250,24 € | | | | | 50 000,00 € | | | | | | | |
| | *Sœur de Carole* | 168 000,00 € | 100 531,04 € | | | | | | | | | | | | |
| Raphaël BRUNIAS | *Petit-fils de Janine* | 115 000,00 € | 25 125,35 € | | | | | | | | | | | | |
| | *Neveu de Carole* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| Candice BRUNIAS | *Petite-fille de Janine* | 115 000,00 € | 25 125,35 € | | | | | | | | | | | | |
| | *Nièce de Carole* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| Murielle BABAULT | *Nièce de Carole* | 53 350,00 € | 25 125,35 € | | | | | | | | | | | | |
| | *Petite-fille de Janine* | 115 000,00 € | | | | | | | | | | | | | |
| Nathalie BABAULT | *Petite-fille de Janine* | 115 000,00 € | 25 125,35 € | | | | | | | | | | | | |
| | *Nièce de Carole* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| Laurence LE MOIGNE née BABAULT | *Petite-fille de Janine* | 115 000,00 € | 25 125,35 € | | | | | | | | | | | | |
| | *Nièce de Carole* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| Adrien CLEUET | *Arrière-petit-fils de Janine* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| | *Petit-neveu de Carole* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| Emma LE MOIGNE | *Arrière-petite-fille de Janine* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| | *Arrière petite-nièce de Carole* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |
| Tristan LE MOIGNE | *Arrière-petite-fille de Janine* | 53 350,00 € | 50 266,90 € | | | | | | | | | | | | |

| | | Préjudice moral | Préjudice de perte d'assistance | Préjudice corporel | Préjudice de perte de ressources | Préjudices économiques divers | Préjudice de perte de lignage | Frais de commémo-rations | Préjudice successoral Préjudice d'angoisse | Préjudice successoral Frais d'obsèques | Préjudice successoral Frais du voyage | Préjudice successoral Perte effets personnels | Préjudice successoral Frais matériels divers | Préjudice successoral Préjudice d'appau-vrissement du patrimoine | Préjudice successoral Frais de succession |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | *Arrière petite-nièce de Carole* | 53 350.00 € | 50 266.90 € | | | | | | | | | | | | |
| Eliane BABAULT | *Belle-fille de Janine* | 53 350.00 € | 50 266.90 € | | | | | | | | | | | | |
| | *Belle-sœur de Carole* | 53 350.00 € | 50 266.90 € | | | | | | | | | | | | |
| Stéphanie LOUIS née BABAULT | *Petite-fille de Janine* | 115 000.00 € | 25 125.35 € | | | | | | | | | | | | |
| | *Nièce de Carole* | 53 350.00 € | 50 266.90 € | | | | | | | | | | | | |
| [redacted] | | | | | | | | | 300 000.00 € | | 2 000.00 € | 8 000.00 € | 40 000.00 € | | |
| Armelle BALAVOINE | *Fille de Patrice* | 168 000.00 € | 157 943.00 € | | | | | 50 000.00 € | | | | | | | |
| | *Belle-fille de Françoise* | 53 350.00 € | 51 755.00 € | | | | | | | | | | | | |
| Thomas BALAVOINE | *Fils de Patrice* | 168 000.00 € | 157 943.00 € | | | | | 50 000.00 € | | | | | | | |
| | *Beau-fils de Françoise* | 53 350.00 € | 51 755.00 € | | | | | | | | | | | | |
| Rached BEN ABDALLAH | *Fils d'Annick* | 168 000.00 € | 207 020.00 € | | | | | 50 000.00 € | | | | | | | |
| | *Beau-fils de Patrice* | 53 350.00 € | 39 487.00 € | | | | | | | | | | | | |
| Jacqueline DEVOIR-BALAVOINE | *Mère de Patrice* | 168 000.00 € | 61 962.00 € | | | | | 50 000.00 € | | | | | | | |
| | *Belle-mère d'Annick* | 53 350.00 € | 15 490.00 € | | | | | | | | | | | | |
| Fernand BALAVOINE | *Père de Patrice* | 168 000.00 € | 24 470.82 € | | 78 846.47 € | | | 50 000.00 € | | | | | | | |
| | *Beau-père d'Annick* | 53 350.00 € | 6 117.55 € | | | | | | | | | | | | |
| Jean-Michel ROBERT | *Demi-Frère de Patrice* | 168 000.00 € | 132 168.00 € | | | | | 50 000.00 € | | | | | | | |
| | *Beau-frère d'Annick* | 53 350.00 € | 33 042.00 € | | | | | | | | | | | | |

| | | Préjudice moral | Préjudice de perte d'assistance | Préjudice corporel | Préjudice de perte de ressources | Préjudices économiques divers | Préjudice de perte de lignage | Frais de commémo-rations | Préjudice successoral Préjudice d'angoisse | Préjudice successoral Frais d'obsèques | Préjudice successoral Frais du voyage | Préjudice successoral Perte effets personnels | Préjudice successoral Frais matériels divers | Préjudice successoral Préjudice d'appau-vrissement du patrimoine | Préjudice successoral Frais de succession |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Françoise BALAVOINE née SIMARD I | Ex-femme de Patrice | 53 350.00 € | 39 487.00 € | | | | | | | | | | | | |
| Flora BEN ABDALLAH | Petite-fille d'Annick | 168 000.00 € | 103 511.00 € | | | | | | | | | | | | |
| | Petite-fille de Patrice | 168 000.00 € | 78 974.00 € | | | | | | | | | | | | |
| [illegible] | | | | | | | | | 150 000.00 € | | 1 000.00 € | 4 000.00 € | 20 000.00 € | | |
| Violette DELARUE | Soeur | 115 000.00 € | 70 729.83 € | | | | | 50 000.00 € | | | | | | | |
| Céline-Emmanuelle ROTELLA-TOLEDO | Petite-fille de cœur | 53 350.00 € | | | | | | | | | | | | | |
| [illegible] | | | | | | | | | 150 000.00 € | | 1 000.00 € | 4 000.00 € | 20 000.00 € | | |
| Alain BARBOU | Fils | 168 000.00 € | 70 729.83 € | | | | | 50 000.00 € | | | | | | | |
| Catherine CLERGEAUD née BARBOU | Fille | 168 000.00 € | 70 729.83 € | | | | | 50 000.00 € | | | | | | | |
| Sylvie MALTERRE née BARBOU | Fille | 168 000.00 € | 70 729.83 € | | | | | 50 000.00 € | | | | | | | |
| Antoine BARBOU | Petit-fils | 168 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Vincent BARBOU | Petit-fils | 168 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Jérôme Michel Robert BARBOU | Petit-fils | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Alice CLERGEAUD | Petite-fille. | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| François CLERGEAUD | Petit-fils | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Guillaume CLERGEAUD | Petit- fils | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Fanck BARBOU | Petit- fils | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |

| | | Préjudice moral | Préjudice de perte d'assistance | Préjudice corporel | Préjudice de perte de ressources | Préjudices économiques divers | Préjudice de perte de lignage | Frais de commémo-rations | Préjudice successoral Préjudice d'angoisse | Préjudice successoral Frais d'obsèques | Préjudice successoral Frais du voyage | Préjudice successoral Perte effets personnels | Préjudice successoral Frais matériels divers | Préjudice successoral Préjudice d'appau-vrissement du patrimoine | Préjudice successoral Frais de succession |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Marie Emmanuelle MOREL née BARBOU | *Petite- fille* | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Cécile BARBOU | *Petite fille* | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Dorothée Micheline Anne-Marie BUTRUILLE née BARBOU | *Petite fille* | 115 000.00 € | 17 682.56 € | | | | | | | | | | | | |
| Claire Stéphanie | *Arrière petite-fille* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Alexandra Danièle Anne-Colette BARBOU | *Arrière petite-fille* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Charles Edward Alain BARBOU | *Arrière petit-fils* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Aurélien BUTRUILLE | *Arrière petit-fils* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Clément BUTRUILLE | *Arrière petit-fils* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Danièle Marie Françoise BARBOU née PARMENTIER | *Belle-fille* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Alain MALTERRE | *Beau-fils* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Léopold MOREL | *Arrière petit-fils* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Jean CLERGEAUD | *Beau-fils* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Edith BARBOU née MARTIN | *Belle-fille* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Victor BARBOU | *Arrière petit-fils* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Amicie BARBOU | *Arrière petite-fille* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |
| Agathe BARBOU née MINSE | *Belle-fille* | 53 350.00 € | 17 682.56 € | | | | | | | | | | | | |

| | | Préjudice moral | Préjudice de perte d'assistance | Préjudice corporel | Préjudice de perte de ressources | Préjudices économiques divers | Préjudice de perte de lignage | Frais de commémorations | Préjudice successoral Préjudice d'angoisse | Préjudice successoral Frais d'obsèques | Préjudice successoral Frais du voyage | Préjudice successoral Perte effets personnels | Préjudice successoral Frais matériels divers | Préjudice successoral Préjudice d'appauvrissement du patrimoine | Préjudice successoral Frais de succession |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | 300 000.00 € | | 2 000.00 € | 8 000.00 € | 40 000.00 € | | |
| Simone MATEOS divorcée de Mr Jacques BAUDRY | *Mère de Patricia* | 168 000.00 € | 148 853.25 € | | | | | 50 000.00 € | | | | | | | |
| | *Grand-mère de Sarah* | 168 000.00 € | 74 427.31 € | | | | | | | | | | | | |
| Jean-Jacques BAUDRY | *Frère de Patricia* | 115 000.00 € | 139 890.62 € | | | | | 50 000.00 € | | | | | | | |
| | *Oncle de Sarah* | 33 350.00 € | 69 617.94 € | | | | | | | | | | | | |
| | | | | | | | | | 300 000.00 € | | 2 000.00 € | 8 000.00 € | 40 000.00 € | | |
| Laurence BAUMIER | *Fille de Bernard* | 168 000.00 € | 189 092.70 € | | | | | 50 000.00 € | | | | | | | |
| | *Pour le décès de Marie* | 168 000.00 € | 212 909.22 € | | | | | | | | | | | | |
| Mathieu BAUMIER | *Fils de Bernard* | 168 000.00 € | 189 092.70 € | | 21 658.03 € | | | 50 000.00 € | | | | | | | |
| | *Pour le décès de Marie* | 168 000.00 € | 212 909.22 € | | | | | | | | | | | | |
| Fraçois-Xavier LIARD | *Fils de Marie* | 168 000.00 € | 212 909.22 € | | | | | 50 000.00 € | | | | | | | |
| | *Pour le décès de Bernard* | 168 000.00 € | 189 092.70 € | | | | | | | | | | | | |
| Julien LEROY | *Fils de Marie* | 168 000.00 € | 212 909.22 € | | | | | 50 000.00 € | | | | | | | |
| | *Pour le décès de Bernard* | 168 000.00 € | 189 092.70 € | | | | | | | | | | | | |
| Jeanne Henriette Andrée BAUMIER née REYEST | *Mère de Bernard* | 168 000.00 € | 88 330.50 € | | | | | 50 000.00 € | | | | | | | |
| Marie-Claude Jeanne BERZOLLA née BAUMIER | *Sœur de Bernard* | 115 000.00 € | 198 907.20 € | | | | | 50 000.00 € | | | | | | | |